Brett M. Godfrey
Wyoming Bar No. 5-2513
GODFREY | JOHNSON, P.C.
9557 S. Kingston Court
Englewood, CO 80112
303-228-0700
godfrey@gojolaw.com
*Attorneys for Defendants The Jackson Hole*
*Airport and The Jackson Hole Airport Board*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

Civil Action No. 19-CV-50-NDF

WILLIAM FREY,

       Plaintiff,

v.

THE TOWN OF JACKSON, WYOMING;
TETON COUNTY, WYOMING;
THE JACKSON HOLE AIRPORT;
THE JACKSON HOLE AIRPORT BOARD;
NATHAN KARNES;
JAMES WHALEN; and,
JOHN DOES

       Defendants.

---

### MOTION TO DISMISS ALL OR, ALTERNATIVELY, SOME CLAIMS AGAINST DEFENDANTS JACKSON HOLE AIRPORT AND JACKSON HOLE AIRPORT BOARD

---

Defendants, The Jackson Hole Airport (the "Airport") and The Jackson Hole Airport Board (the "Board") (hereinafter collectively the "Airport Defendants"), by and through undersigned counsel, hereby submit their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for want of subject matter jurisdiction or, alternatively, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants respectfully request a hearing on their Motion.

## I.   INTRODUCTION & STATEMENT OF FACTS

Plaintiff William A. Frey filed this suit on March 11, 2019, based on Federal Question Jurisdiction.[1] The Complaint, ECF 1, sets forth claims under Federal and Wyoming law against the Airport Defendants as well as: the Town of Jackson, Wyoming (the "Town"); Teton County, Wyoming (the "County"); Teton County Sheriff James Whalen (in his individual and official capacities); Town of Jackson Police Officer Nathan Karnes (in his individual and official capacities); and a number of unnamed "John Doe" defendants (all in their individual capacities, and some in their official capacities).[2] Plaintiff refers to the Airport Defendants, the Town, and the County collectively as the "Municipal Defendants," and we do so herein when applicable.

Mr. Frey is a Connecticut resident who owns a vacation home in the County. Complaint, ¶

---

[1] The Complaint asserts *only* Federal Question Jurisdiction under 28 U.S.C. §§ 1341 and 1343, but the Cover Sheet, ECF 1-1, asserts *only* Diversity Jurisdiction. However, as discussed below, the State of Wyoming is a required party to this action under Wyo. Stat. § 1-37-113 (requiring that the Wyoming Attorney General be served). Therefore, diversity jurisdiction cannot exist because the presence of a state as a party destroys diversity. *Moor v. Alameda Cnty.*, 411 U.S. 693 (1973). Moreover, the United States (through the "John Does" alleged in the Complaint to be TSA employees) is also a required party to this proceeding. The presence of the United States as a party destroys diversity. *See, e.g., Frey v. E.P.A.*, 270 F.3d 1129, 1137 (7th Cir. 2001). Given this contradiction and the fact that a complaint generally controls over a cover sheet, we presume that Plaintiff is asserting *only* Federal Question Jurisdiction and *not* Diversity Jurisdiction.

[2] The Complaint states that these individual defendants include both airport screening personnel (who Plaintiff speculates may be employees of the Transportation Security Administration or "TSA"), Complaint, ¶¶ 14, 18, 116–20, 121–24, and employees of the Teton County Sheriff's Office, ¶¶ 15, 45–46, 114–15. Although Plaintiff conflates these two groups of unidentified individuals throughout the Complaint, they are situated so differently that the Airport Defendants cannot properly respond to the Complaint without differentiating between them. For example, Plaintiff sued the Airport screening personnel in their individual capacities only, while he sued the Sheriff's Office personnel in both their individual *and* official capacities. The events involving each group also occurred in different geographic locations (i.e. the County Jail versus the Airport). To differentiate herein between these two different groups of unnamed defendants, the alleged screening personnel are referred to as the "Screening Roes" and the alleged employees of the County Sheriff are referred to as the "Sheriff Roes." Where there are no differences between the two, they, along with Officer Karnes and Sheriff Whalen, are referred to as the "Individual Defendants."

19. On March 12, 2018, Mr. Frey traveled to the Airport to board a flight. ¶ 24. Mr. Frey *voluntarily* entered the scanner at the Airport's TSA-mandated security checkpoint, ¶ 25, which flagged the area from Mr. Frey's upper thigh to his groin for further screening,[3] ¶ 26. A Screening Roe purportedly informed Mr. Frey that pursuant to TSA procedures, he was subject to a pat-down search of the indicated area. ¶ 26–27. Mr. Frey refused to submit to the pat-down. ¶ 28. One or more Screening Roes purportedly informed Mr. Frey that Federal law and TSA regulations obliged him to submit to additional screening. ¶¶ 30, 32. Mr. Frey demanded that he, and *only* he, dictate those additional screening procedures—such as a re-screening through the machine or a portable metal detector 'wanding' of his person. ¶¶ 28, 33. Although Mr. Frey claims that TSA policy permits such rescreening, ¶ 29, the Screening Roes purportedly stated that TSA procedures required a pat-down. ¶ 32. Mr. Frey again refused to cooperate with the Screening Roes. ¶ 34. As Mr. Frey became belligerent, the Screening Roes (who are not law enforcement officers) purportedly requested the assistance of the Town Police, and Officer Karnes responded. ¶ 35. Mr. Frey alleges that he demanded to leave the Airport. *Id.* He claims that Officer Karnes and/or the Screening Roes refused this request. *Id.* Mr. Frey, by his own admission, threatened Officer Karnes and the Screening Roes with litigation if they refused to give in to his demands. ¶ 36. Officer Karnes then arrested Mr. Frey for interfering with screening operations by refusing to cooperate with screening procedures and being in a restricted area without having been screened,[4] conducted a search incident to that arrest,

---

[3] The screening officers at checkpoint are under the ultimate supervision of the TSA regardless of whether they are Airport or Federal employees. *See* 49 U.S.C. § 44920(e) (requiring that Federal supervisors "oversee all screening" at airports).

[4] Officer Karnes stated in his original affidavit that he "arrested Frey for being in a restricted area at the airport and failing to comply with the screening being applied to that area." Exh. A., p. 2, Probable Cause Affidavit in Support of Warrantless Arrest by Officer Nathan Karnes (Mar. 12, 2018). His final affidavit stated that "Officer Karnes arrested Frey for interfering with the security procedure implemented at the airport as Frey refused to be searched and thus compromised a security

and detained Mr. Frey at the airport until he could be transported to the County Jail for processing. ¶ 37–39.[5] The County promptly released Frey on a $500 bond. Exh. A., p. 3.

The Town brought a criminal complaint against Mr. Frey docketed as *Town of Jackson v. William Frey,* No. 18-03-0226 (Jack. Muni. Crt. 2019),[6] and charged Mr. Frey with interference with security operations in violation of Jackson Municipal Code ("JMC") § 12.16.170. Exh. A, p. 2. Mr. Johnson, who represents Mr. Frey here as lead counsel, also represented him in municipal court (pp. 14–15). Mr. Frey waived his appearance (pp. 4–10) and pled not guilty, (pp. 11–12). He then filed motion to dismiss the criminal charge (pp. 73–74), and in a lengthy memorandum of law supporting that motion (pp. 38–65), made numerous claims including all of the *same* constitutional argument he makes *again* in this suit (such as challenging JMC § 12.16.170 as unconstitutional under the Federal and Wyoming constitutions). The Town opposed the motion and included considerable evidence in support of its opposition (pp. 110–147). Mr. Frey replied, asserting his constitutional arguments once again (pp. 155–171). The matter was then set for adjudication on November 1, 2018 (p. 178), whereupon the municipal court (The Hon. Judge Melissa Owens) ruled against Mr. Frey on all his constitutional claims and issues, but reserved judgment on Office Karnes' jurisdiction to make the arrest and set that matter for further briefing and argument (p. 235). After briefing, Judge

---

procedure implemented at the airport." Exh. A, p. 94, [Corrected] Probable Cause Affidavit of Nathan Karnes (Aug. 28, 2018). In either case, it is clear that Officer Karnes arrested Mr. Frey for failing to comply with TSA screening procedures and thereby interfering with screening operations.

[5] Although the Complaint asserts additional facts regarding what occurred after Officer Karnes removed Mr. Frey from the Airport, those facts are irrelevant to this Motion because the Airport Defendants have no responsibility for action by the Town Police or County Sherriff after Mr. Frey physically left the Airport, and the Court should disregard those facts for purposes of this Motion.

[6] Plaintiff incorporates the case by reference, and it is also a judicial (public) record of the State of Wyoming; therefore, the Airport Defendants request that this Court take judicial notice of the case and all filings in the same, which are attached hereto and referenced herein as Exhibit A. All page references herein are to the PDF Exhibit, not to the page number stamp at the bottom of each page.

Owens heard oral argument on the jurisdictional issues on January 30, 2019, and then issued an order

(pp. 261–264, corrected at pp. 291–296) on both sets of issues:

- The court found the underlying facts of the events at the Airport and the jail were beyond dispute due to the availability of video and audio establishing *precisely* what occurred.

- The court found that the Airport Roes "followed the necessary policies and procedures with regard to screening" and "Defendant was not entitled to, as he asserts, his alternative suggested screening procedures."

- The court found that Officer Karnes had probable cause to arrest Mr. Frey because "he believed he had the authority to arrest the Defendant for a violation of 12.16.170(A) as he had a good faith belief that he could enforce all applicable municipal ordinances at the Jackson Hole Airport" and "[i]t is clear that the Defendant did, in fact violate 12.16.170(A) by refusing to undergo further screening pursuant to TSA personnel requests."

Thus, the municipal court *substantiated* the charge against Mr. Frey, found that Officer Karnes had

probable cause to arrest Mr. Frey, *and* implicitly[7] confirmed her prior ruling that no constitutional

violation had occurred during the screening process or subsequent arrest. The municipal court then

dismissed the criminal charge *solely* due to Officer Karnes' lack of jurisdiction (p. 263).[8]

Nevertheless, Mr. Frey claims in this suit that his treatment was unconstitutional under Wyoming

and Federal law.

## II.  ARGUMENT

A motion under Rule 12(b) tests the sufficiency of a complaint—this Complaint fails that

---

[7] In light of the substantial constitutional arguments made by both parties, Judge Owens' findings against Mr. Frey notwithstanding those arguments can only reasonably be interpreted to mean that she found against him on the constitutional issues.

[8] "However, unbeknownst to Officer Nate Karnes, 12.16.030 limited his ability to enforce this ordinance as it is not contained in Titles 7, 9 or 10 of the Town of Jackson Municipal Code." (p. 294). "Despite the Plaintiff proving Defendant committed the allegations as set forth above in 12.16.170, the Jackson Police Department did not have the authority to enforce a violation of 12.16.170 or any other ordinances in Title 12 of the Town of Jackson Municipal Code at the Jackson Hole Airport as the Town of Jackson Municipal Code did not authorize enforcement of this particular ordinance by a Jackson Police Officer." *Id.* (emphasis added).

test. The Court need only accept *plausible* factual allegations in the complaint as true, though it must construe all such facts in favor of the Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (emphasizing, in a Section 1983 case, that the trial court need not accept as true "conclusory allegations"). The Court may not ordinarily consider extrinsic evidence; however, the Court *may* consider extrinsic evidence properly attached to or incorporated into the Complaint. Fed. R. Civ. P. 10(c). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 321 (2007). The Court may also consider anything of which it may take judicial notice. *Tellabs,* 551 U.S. at 322. If a complaint makes allegations about extrinsic evidence and that extrinsic evidence is then incorporated under Rule 10(c) (or proper judicial notice is taken by a court), the contents of that extrinsic evidence then 'trumps' any allegations in the complaint that are inconsistent (or outright conflict) with the extrinsic evidence.[9] *Slater v. A.G. Edwards & Sons, Inc.,* 719 F.3d 1190, 1196 (10th Cir. 2013).

Plaintiff incorporates the municipal court record. Complaint, ¶¶ 42, 47. As set forth above, the Airport Defendants request that the Court consider that record, attached hereto as Exhibit A, pursuant to Rule 10(c). Plaintiff also incorporates the audio/video footage of the incident by reference and, indeed, by *quoting* directly from it in the Complaint. ¶ 36. Moreover, Plaintiff also incorporated the audio/video into the record of the municipal court case, Exh. A, p. 43, and the municipal court judge viewed that evidence in reaching her decision, Exh. A, pp. 261–264 ("The parties are not in dispute with regard to the facts since they were recorded via a combination of video and audio recordings."). This Court should defer to the factual findings of Judge Owens because she has seen/listened to the audio/video and made findings of fact based upon that *direct* knowledge.

---

[9] Accordingly, if a party alleges that evidence shows "X," but the evidence is incorporated and it clearly shows "Z," the "Z" controls for evaluating the applicable motion to dismiss.

### A.  This Court Should Dismiss Plaintiff's Claims for Want of Subject Matter Jurisdiction

A defendant may challenge the court's subject-matter jurisdiction by way of pre-answer motion under Fed. R. Civ. P. 12(b)(1*). Arbaugh v. Y&H Corp.,* 546 U.S. 500, 506 (2006). The Airport Defendants assert grounds herein for dismissal for want of subject matter jurisdiction on both a facial and a factual basis. One the former ground, the Court must take all *plausible* averments in the Complaint as true. However, where the Court is presented with a factual attack on the complaint, "a district court may not presume the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Instead, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* Judge Owens' ruling serves that purpose here because she was fully apprised of the indisputable facts when entering her order—so no evidentiary hearing is required.

### 1.  The Airport is not a proper defendant because it is not a legal entity.

"The Jackson Hole Airport" is not a legal entity—it is nothing more than a leasehold interest in land owned by the Federal Government and upon which the physical airport sits; the <u>Board</u> is the legal entity. Wyo. Stat. § 10-5-101. As such, the Airport is not subject to suit *in personam*. Yet Plaintiff asserts claims against the Airport only *in personam* as if it were an entity*,* not *in rem* against the Airport *property*. This Court should dismiss all claims against the "Airport" because the Airport is not subject to suit *in personam* and Plaintiff makes no claims *in rem*.

### 2.  All Plaintiff's claims are barred by claim preclusion (res judicata) and/or issue preclusion (collateral estoppel), depriving this Court of jurisdiction.

Both claim preclusion (*res judicata*) and issue preclusion (collateral estoppel) are a jurisdictional bar in the Federal Courts where there was a properly executed state municipal court decision below, the party at issue had a "full and fair opportunity" to litigate the issue in the municipal court, and the claim or issue was actually decided by the municipal court. *See, e.g., Bell v. Dillard*

*Dep't Stores, Inc.,* 85 F.3d 1451, 1452 (10th Cir. 1996) (finding no preclusion because there was insufficient evidence in the record of a full and fair opportunity to litigate *and* there was no signed order by the municipal court establishing that it decided the issue).

Here, Plaintiff had the opportunity in the municipal court to fairly and fully litigate *all* the relevant underlying legal and factual claims and issues he re-asserts here. With the assistance of counsel, Mr. Frey submitted dozens of pages of argument to the municipal court on *precisely* the same constitutional claims raised in the instant case. The Town responded with argument of its own, and both parties had opportunities for rebuttal, including two hearings. Judge Owens ultimately rejected Mr. Frey's arguments and accepted those of the Town; to wit, that both the TSA and Officer Karnes had acted properly and no constitutional violations (and, thus, no torts) occurred. Judge Owens issued a signed Order to that effect (Exh. A., pp. 261–264). Therefore, Plaintiff's claims under the United States and Wyoming Constitutions are barred by *res judicata* because he already had a full and fair opportunity to litigate these claims as defenses in his criminal proceedings, he lost on those claims, and he now improperly seeks to relitigate them *collaterally* before this Court while an appeal of Judge Owens' ruling is pending in Wyoming District Court. He may not do so. *See Allen v. McCurry*, 449 U.S. 90, 96–105 (1980).

Moreover, because the municipal court decided the constitutional issues, collateral estoppel (issue preclusion) bars Plaintiff from relitigating those *issues* in this case as the foundation of his 42 U.S.C. §§ 1983 and 1985 claims, his Wyoming constitutional claims, and his tort claims. Collateral estoppel bars a party from relitigating an *issue* once it has suffered an adverse determination on the <u>issue</u>, even if the issue arises when the party is pursuing or defending against a different <u>claim</u>.[10]

---

[10] In this circuit, application of issue preclusion requires four elements: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been

*Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006). Thus, even if the municipal court decision is not *res judicata* on these <u>claims</u>, the fact that Plaintiff suffered the adverse determination on all the constitutional <u>issues</u> while defending the criminal claim against him has no effect on his being collaterally estopped from re-litigating those <u>issues</u> here.

In summary, Plaintiff lost on his constitutional claims (and all the issues related to the same) when he used them as defenses in his criminal trial and Judge Owens rejected them. Thus, there are no claims or issues left for this Court to adjudicate—Plaintiff instead effectively seeks collateral *appellate* review of the municipal court's findings against him in this Court. Under the *Rooker-Feldman* Doctrine,[11] the United States Supreme Court—not this Federal District Court—has Federal appellate jurisdiction over the municipal court's decision and these claims/issues. Therefore, the *only* proper forum for any disagreement with the municipal court's decision on those claims and/or issues is the ongoing appeal to Wyoming District Court,[12] then to the Wyoming Supreme Court, and finally to the United States Supreme Court—this Court has *no* involvement in that process.[13] Therefore, this

---

finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000). All four elements are facially satisfied here.

[11] The doctrine derives its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

[12] Indeed, the Town has already appealed the dismissal of the criminal charge to the district court, and that appeal is pending. A copy of the Notice of Appeal and related documents are attached hereto as Exhibit B. The fact the Town, and not Frey, appealed is irrelevant as Frey could have appealed the findings against him *and* can still do so in response to the Town's appeal.

[13] Should Mr. Frey ultimately *prevail* in overturning the municipal court decision and receive a judgment that his constitutional rights were violated, he would then *potentially* have a civil action justiciable in this Court. He could also potentially have a claim for collateral review in this Court under a writ of *habeas corpus* after the termination of the state criminal proceedings should the municipal court's jurisdictional finding be reversed, and he ultimately is convicted. But until then, the decision of the municipal court controls these claims and issues.

Court should dismiss the Complaint entirely for want of subject matter jurisdiction.[14]

### 3.    This Court lacks jurisdiction to enter a _Wyoming_ declaratory judgment.

Plaintiff asks for declaratory judgment under _Wyoming_ law as to his Wyoming constitutional claims. Complaint, ¶ 1. However, declaratory relief is a procedural issue. _Cent. Wyoming Law Assocs., P.C. v. Denhardt,_ 836 F. Supp. 793, 799 (D. Wyo. 1993), _vacated on other grounds_, 60 F.3d 684 (10th Cir. 1995), _vacated on other grounds sub nom. Cent. Wyoming Law Assocs., P.C. v. Flagg,_ 61 F.3d 915 (10th Cir. 1995). Declaratory judgment statutes do not expand the jurisdiction of the Federal Courts because they are only a procedural device and do not affect any substantive rights. _Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,_ 300 U.S. 227, 240 (1937). Thus, the Federal Courts apply Federal procedural rules when one is on point. _See Erie R. Co. v. Tompkins,_ 304 U.S. 64, 78 (1938). Therefore, Federal law obliges this Court to apply the _Federal_ procedural rules, Fed. R. Civ. P. 57, regarding declaratory relief. _See_ 28 U.S.C. §§ 2201–2202. As Plaintiff failed to properly request relief under the Federal Rules, this Court should dismiss his Wyoming claims for relief because the Court cannot use Wyoming's procedural rules to provide that relief.

### B.  This Court Should Alternatively Dismiss Plaintiff's Claims Against the Airport Defendants for Failure to State a Claim Upon Which Relief Can Be Granted.

Rule 12(b)(6) allows the defendant to seek dismissal—before answering—on the basis that the plaintiff's complaint fails to state a claim upon which relief may be granted. Again, Plaintiff must 'show' an entitlement to relief through plausible inferential allegations in order to overcome a motion to dismiss. _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 556 (2007). A complaint containing

---

[14] Moreover, a municipality may not be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's _constitutional_ rights. _Livsey v. Salt Lake Cty_., 275 F.3d 952, 958 (10th Cir. 2001). Therefore, because the municipal court found against Plaintiff on his claims against the Screening Roes and Officer Karnes and those findings are now _res judicata_ here (and re-litigation of the issues barred by collateral estoppel as well), his claims against the Airport Defendants, all of which except the tort of negligence sound in vicarious liability, fail here as well.

allegations that do not sufficiently "show" a claim for relief—either directly or through plausible inference—may not avoid dismissal by positing the mere possibility of unpled allegations that might do so or be making facially implausible claims. *Id.* "[M]ere labels and conclusions," "formulaic recitations of the elements of a cause of action," and "naked assertions devoid of further factual development" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 667.

But *Iqbal* went considerably further than *Twombly* in two respects. First, it established a new two-step process for deciding motions to dismiss for failure to state a claim. In step one, the trial court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 678. In step two, the trial court then looks to the "proper" allegations to determine the sufficiency of the complaint. The *Iqbal* Court stated that, in step two, "only a complaint that states a *plausible* claim for relief survives a motion to dismiss. (emphasis added). *Id.* at 679. Whereas *Twombly* could fairly be read to speak only to the plausibility of <u>inferences</u>,[15] *Iqbal* focuses on the plausibility of <u>claims</u>. Thus, Rule 12(b)(6) can be used to dismiss claims based on merits defects when those defects are clear from the face of the complaint.

Again, the Court must accept the Plaintiff's *plausible* factual allegations as true and grant the Plaintiff the benefit of all *reasonable* inferences. But, if the Plaintiff's own allegations, even liberally construed, reveal insuperable legal shortcomings or barriers, then the Plaintiff has failed to state a claim upon which relief may be granted. *See, e.g., Slade v. Hampton Roads Reg'l Jail,* 407 F.3d 243, 250 (4th Cir. 2005) (dismissing civil rights suit because the government policy at issue did not violate the Constitution as a matter of law). For example, a complaint fails to state a claim if the Plaintiff's allegations, even when accepted as true, fail to meet the required elements of any possible claim.

---

[15] *See, e.g., Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 17 (D.C. Cir. 2008) (". . . *Twombly* was concerned with the plausibility of an inference . . . not with the plausibility of a claim.").

*See, e.g., Segal v. Geisha NYC LLC,* 517 F.3d 501, 505 (7th Cir. 2008) ("[I]t is equally clear that a complaint that satisfies Rule 8(a)'s pleading requirements might still warrant dismissal if the facts pled cannot result in any plausible relief."). Or, the Plaintiff may allege facts that negate liability. This can occur if the Plaintiff would have to contradict his own allegations to prevail,[16] or if the Plaintiff's allegations establish a defense that negates liability.[17] Here, there are several overarching defects[18] in the Complaint that justify dismissal of Plaintiff's claims against the Airport Defendants.

### 1.  *Plaintiff failed to adequately plead his Wyoming constitutional claims.*

Plaintiff brings numerous claims for ostensible violations of the Wyoming Constitution. However, the only grounds for *relief* Plaintiff asserts against the Airport Defendants are 42 U.S.C. §§ 1983 and 1985, and a single section of the Wyoming Uniform Declaratory Judgments Act, Wyo. Stat. § 1-37-113. Critically, "by the plain terms of § 1983 . . . the plaintiff must allege that some

---

[16] *See, e.g., Moranski v. General Motors Corp.,* 433 F.3d 537, 540 (7th Cir. 2005) (Title VII plaintiff who affirmatively alleged employer treated everybody the same could not prevail without contradicting his own pleadings).

[17] *See, e.g., Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005) (holding that it is permissible to grant a motion to dismiss based on an affirmative defense, such as the statute of limitations, where the facts required to establish such defense are beyond reproach);

[18] As an initial matter, the Complaint is facially defective *in toto* because it fails to give adequate notice of the precise allegations against specific Defendants. The Complaint begins by grouping the Airport Defendants, the Town of Jackson, and Teton County as "municipal defendants." However, each of these defendants has radically different legal authority and is subject to substantially different liability. For example, the Town and County both have the authority to promulgate law (e.g. municipal or county ordinances), while the Airport Defendants do not. Moreover, the Town and the County both employ peace officers (the Town of Jackson Police Department and the Teton County Sherriff respectively)—including the two named officers (Officer Karnes and Sheriff Whalen) and all of the unnamed Sheriff Roes whose conduct is at issue here. Conversely, the Airport Defendants have no authority to employ peace officers and do not in fact do so. Similarly, the Town and County have no direct property interest in the airport, but the Airport Defendants do have a property interest as the Board manages the airport and leases the land from the Federal Government. Therefore, the Court may dismiss Claims 1 through 4 of the Complaint as a 'shotgun pleading' for failure to adequately plead which claims are being made against which Defendants and which facts apply to each claim—to the prejudice of all of the Municipal Defendants' right to notice and due process.

person has deprived him of a <u>federal</u> right." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (emphasis added). Plaintiff cannot ask this Court for relief under 42 U.S.C. §§ 1983 and 1985 based upon alleged violations of the Wyoming <u>State</u> Constitution. Therefore, this Court should dismiss any Wyoming claims Plaintiff purports to assert under Sections 1983 and/or 1985.[19]

> ### 2. All the Individual Defendants are immune from this suit and, therefore, there can be no liability imputed from them to the Municipal Defendants.

A principal's vicarious liability for the tortious acts of his agent is limited, and vicarious liability for the principal is extinguished when the agent himself is exonerated for or immune from the actions giving rise to the liability. *See D.B. Loveman Co. v. Bayless,* 160 S.W. 841, 843 (Tenn. 1913) (citing *New Orleans & N. E. R. Co. v. Jopes,* 142 U.S. 18, 27 (1891)). Thus, qualified immunity may preclude imposition of *any* municipal liability for conduct of an employee if that employee is entitled to qualified immunity on basis that his or her conduct did not violate law. *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996).

All of the Individual Defendants alleged to have engaged in unconstitutional actions are protected by one or more forms of immunity. The Screening Roes, whether Federal or Airport

---

[19] Moreover, Wyo. Stat. § 1-37-113 deals only with determining the parties to a declaratory action, including those parties required to be joined before a court declares a municipal ordinance unconstitutional. Therefore, Plaintiff failed to request *any* relief associated with his Wyoming constitutional claims because Wyo. Stat. § 1-37-113 is merely procedural. This Court should dismiss all the Wyoming constitutional claims because Plaintiff failed to cite a *substantive* Wyoming statutory ground for relief against the Airport Defendants.

And even reading Plaintiff's citation to Section 113 *very* generously as requesting invalidation of the ordinance under Wyoming's Uniform Declaratory Relief Act as a whole, Plaintiff's *only* claim under the Wyoming Constitution is then that the municipal ordinance *itself*—not the actions of the Defendants—violates the Wyoming Constitution. The Court should keep this in mind hereafter.

Finally, the Airport Defendants note that Plaintiff appears to have neglected to serve the Wyoming Attorney General a copy of the Complaint when seeking to invalidate the ordinance on Wyoming constitutional grounds, and this Court should dismiss the Section 113 claims for that failure too.

employees, are protected by Federal sovereign immunity.[20] The Screening Roes and Officer Karnes all have qualified immunity because their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[21] *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Finally, even if the Screening Roes or Officer Karnes acted unlawfully, the Airport Defendants are airport "operators" and therefore also have statutory immunity under 49 U.S.C. § 44920(g)(2).[22] This Court should confirm that Officer Karnes, the Screening Roes, and the Airport Defendants are all immune from suit, and dismiss Plaintiff's claims accordingly.

---

[20] Transportation Security Officers (TSOs) of the Transportation Security Authority (TSA) are not "criminal law enforcement officers," and are entitled to sovereign immunity because they are not subject to Federal Tort Claims Act ("FTCA") waiver of immunity for "investigative or law enforcement officers." *See, e.g., Corbett v. Transportation Sec. Admin.*, 568 Fed. App'x 690, 701 (11th Cir. 2014). Airport employees performing duties under the supervision of the TSA are deputized agents of the TSA and, therefore, also protected by Federal sovereign immunity.

[21] There is no controlling case law in this Circuit deeming the screening procedures used/demanded by the Screening Roes unconstitutional (quite the contrary), nor deeming a law like either JMC § 12-16.170 or §49 U.S.C. § 44901 unconstitutional. Lacking such, qualified immunity applies.

[22] "Notwithstanding any other provision of law, an operator of an airport shall not be liable for any claims for damages filed in State or Federal court (including a claim for compensatory, punitive, contributory, or indemnity damages) relating to—

   (1) such airport operator's decision to submit an application to the Secretary of Homeland Security under subsection (a) or such airport operator's decision not to submit an application; and

   (2) any act of negligence, gross negligence, or intentional wrongdoing by—

      (A) a qualified private screening company [here, the Airport Board] or any of its employees in any case in which the qualified private screening company is acting under a contract entered into with the Secretary of Homeland Security or the Secretary's designee; or

      (B) employees of the Federal Government providing passenger and property security screening services at the airport."

The Airport Board has a contract with the Department to provide the screening personnel to the Airport.

### 3. *Plaintiff failed to plead claims under the Fifth and Sixth Amendments entirely.*

Plaintiff purported to bring "an action for relief from violations of the Plaintiff's constitutional rights including the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution." Complaint, ¶ 1. However, Plaintiff never mentions the Fifth or the Sixth Amendments again in the Complaint. To the extent that Plaintiff is attempting to assert claims under either of these Amendments (and given the repeated discussion of an alleged denial of access to counsel throughout the Complaint it certainly appears that he is attempting to do so), this Court should dismiss such claims as inadequately pled.[23] The Court should also ignore (or strike) any allegations related to a denial of access to counsel as irrelevant to the claims Plaintiff actually pled.

### 4. *Plaintiff failed to adequately plead any claims under 42 U.S.C. § 1985.*

Section 1985 is somewhat misleadingly titled: "Conspiracy to interfere with civil rights." The various clauses of § 1985 address several broad categories of conduct and prohibits conspiracies: to interfere with the performance of duties by federal officers, Section 1985(1); with the administration of federal courts, Section 1985(2) (first part); with the administration of state courts Section 1985(2) (second part); with the duties of a state officer, Section 1985(3) (second clause); and with the right to support candidates in a federal election, Section 1985(3) (third clause). *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 839 n.1 (1983) (Blackmun, J., dissenting). *See also Kush v. Rutledge,* 460 U.S. 719, 724–25 (1983) (majority opinion) (discussing some of these same categories). "None of these five categories of conduct are present in this case. The only plausible basis for plaintiffs' § 1985 claim is the remaining category of

---

[23] This Court should also dismiss the Sixth Amendment claims because Plaintiff did not allege that any of the purported denials of access to counsel occurred *after* his first appearance before a magistrate. *See Rothgery v. Gillespie County*, 554 U.S. 191 (2008).

conduct which is addressed by the first part of § 1985(3)." *Home Quest Mortg. LLC v. Am. Family Mut. Ins. Co.,* 340 F. Supp. 2d 1177, 1188 (D. Kan. 2004).

The first part of Section 1985(3) prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection under the laws." 42 U.S.C. § 1985(3). The elements of a claim under Section 1985(3) are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03 (1971)). The courts have clarified (and narrowed) these elements. Thus, a Section 1985(3) does not "apply to all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* at 101–02. The other "class-based animus" language of this requirement has been very narrowly construed. *See Carpenters,* 463 U.S. at 837. In fact, the Supreme Court has held that "it is a close question whether § 1985(3) was intended to reach *any* class-based animus other than animus against [African Americans] and those who championed their cause." *Id.* at 836 (emphasis added). Thirdly, and most importantly here, Section 1985(3) covers only conspiracies "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Id.* at 833.[24] Because Section 1985(3) is not intended to serve as a "general federal tort law," *Griffin,* 403 U.S. at 101, it does not create *any* substantive rights but rather merely serves as a vehicle for vindicating some *other*

---

[24] This last requirement was affirmed by the Supreme Court in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263. In that case, the Court made stated: "In *Carpenters*, we rejected a claim that an alleged private conspiracy to infringe First Amendment rights violated § 1985(3). The statute does not apply, we said, to private conspiracies that are aimed at a right that is by definition a right only against state interference, but applies only to such conspiracies as are "aimed at interfering with rights . . . protected against private, as well as official, encroachment." *Bray*, 506 U.S. at 278 (internal quotation marks and citation omitted).

Federal right, *Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 376 (1979). To date, the Supreme Court has recognized only <u>two</u> rights that are protected against private action under Section 1985(3): first, the right to be free from involuntary servitude; and, second, the right of interstate travel in the context of the Thirteenth Amendment. *Bray,* 506 U.S. at 278; *Tilton,* 6 F.3d at 686–87. Thus, in order to state a claim for a private conspiracy under this part of Section 1985(3), Plaintiff must allege that the conspiracy was: (a) motivated by a class-based, invidiously discriminatory animus; and (b) "'aimed at interfering with rights that are 'protected against private, as well as official, encroachment.'" *Bray*, 506 U.S. at 267–68 (quoting *Carpenters,* 463 U.S. at 833) *accord Tilton*, 6 F.3d at 686. Again, a right *must* be protected against *both* public <u>and</u> private infringement to qualify under Section 1985(3). *Tilton,* 6 F.3d at 687.

Here, however, Plaintiff only asserts violations of his *public* rights under the First, Fourth, and (the due process clause of the) Fourteenth Amendments—*none* of which are protected against *private* encroachment. Therefore, this Court should dismiss all of Plaintiff's claims under Section 1985 for failure to state a claim upon which relief may be granted because he did not (and could not) plead facts establishing a *private* conspiracy subject to Section 1985.

> **5.      *This Court should also dismiss all claims against the Airport Defendants because they cannot be liable for the Individual Defendants' actions.***

In addition to the constitutional claims in Claims 1–3, the fourth claim encompasses five intentional torts: false imprisonment, assault, battery, malicious prosecution, and abuse of process—as well as the tort of negligence. All six common law tort claims necessarily arise under Wyoming law; and this Court applies the substantive law of Wyoming to such claims. *See Erie,* 304 U.S. at 78. Like the bulk of the constitutional claims, the five intentional torts are all pled against the Municipal Defendants under a theory of vicarious liability for the alleged intentional torts of the Individual

Defendants.[25] This Court should dismiss these vicarious liability claims.

First, government officials—such as the Airport Board members—cannot be held liable for the unconstitutional conduct of their <u>subordinates</u> under *respondeat superior* in the first place. *Iqbal*, 556 U.S. at 675. Moreover, the entire concept of vicarious liability is inapplicable to *Bivens* and Section 1983 suits. *Id.* Instead, a plaintiff must plead that each government-official defendant, through the official's *own* individual actions, has violated the Constitution. *Id.*[26] Therefore, this Court should dismiss all of the vicarious claims asserted against the Airport Defendants—especially those under Section 1983 and *Bivens* which are categorically impermissible.[27]

Second, the Airport Defendants did not *employ* Defendant Karnes or any other law enforcement officer and, therefore cannot be vicariously liable for their actions. The Airport Defendants *contracted* with the Town of Jackson to provide law enforcement for the Airport. *See* Exhibit C, Memorandum of Understanding Between Town of Jackson and Jackson Hole Airport Board for Provision of Law Enforcement Services to the Jackson Hole Airport."[28] It is well established under Wyoming law that an entity which hires an independent contractor is not subject

---

[25] See, e.g., Complaint ¶ 89 ("Defendant Karnes, acting as an agent of the municipal defendants . . ."); ¶ 90 (The Municipal Defendants, through their agent Officer Karnes . . ."); ¶ 91 ("The Municipal Defendants, through peace officers employed by [them] . . ."); ¶ 92 (same in substance as ¶ 91).

[26] *See also Robertson v. Sichel,* 127 U.S. 507, 515–16 ("A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").

[27] *Viz.*, all constitutional claims other than the policy/procedure-related claims (which are made directly against the Municipal Defendants rather than their agents), and all tort claims except the tort of negligence (which, again, is made directly against the Municipal Defendants).

[28] The Airport Defendants request that the Court take judicial notice of this public record, which is also incorporated in the Complaint by Plaintiff in his repeated references to the alleged policies and procedures between the Municipal Defendants related to the operation of the Airport, and is incorporated into the municipal court record, Exh. A., pp. 138–138, as well.

to vicarious liability for harm caused by the tortious conduct of the contractor. *See, e.g., Singer v. New Tech Eng'g L.P.,* 227 P.3d 305, 312 (Wyo. 2010); *accord* Restatement (Third) of Torts: Phys. & Emot. Harm § 57 (2012). Therefore, this Court should dismiss all vicarious liability claims against the Airport Defendants based on actions of Officer Karnes, Sheriff Whalen, and/or the Sheriff Roes.

Third, while some or all of the Screening Roes may have been Airport employees, they were nevertheless under the *statutorily* mandated supervision and control of the TSA. *See* 49 U.S.C. § 44920(e).[29] Moreover, Airport-employed security screeners are *required* to hold themselves out to the public as being under the supervision and control of the TSA—primarily by wearing a TSA-approved uniform. 49 U.S.C. § 44935(j) ("The Administrator shall require any individual who screens passengers and property pursuant to section 44901 to be attired while on duty in a uniform approved by the Administrator.") (emphasis added).[30] Therefore, the Airport Defendants can have no liability in tort for the actions of the Screening Roes during the performance of their screening duties because the TSA controlled them—and this Court should dismiss all claims brought against the Airport Defendants that Plaintiff grounds in the actions of any of the Screening Roes.

### a. *Plaintiff failed to plead a tort claim for malicious prosecution.*

Plaintiff failed to plead this claim *entirely*. There are <u>six</u> sub-claims under the Fourth Claim for Relief (the five intentional torts plus negligence), but only <u>five</u> paragraphs supporting them. There is simply no pleading for malicious prosecution anywhere under the Fourth Claim. Moreover, the only malicious prosecution averments set forth *anywhere* in the Complaint are that:

---

[29] "The [TSA] Administrator shall . . . (1) provide Federal Government supervisors to oversee all screening at each airport at which screening services are provided under this section and provide Federal Government law enforcement officers at the airport pursuant to this chapter . . ."

[30] *See also* 49 U.S.C. § 44901(b). ("All screening of passengers and property at airports in the United States where screening is required under this section <u>shall</u> be supervised by uniformed Federal personnel of the Transportation Security Administration who <u>shall</u> have the power to order the dismissal of any individual performing such screening.") (emphasis added).

> The Defendants acted together to prosecute the Plaintiff for violating the secret "standard operating procedures" based on provisions of the Jackson Municipal Code making it a crime to violate "airport procedures." The Charges against the Plaintiff were dismissed because Defendant Karnes lacked enforcement jurisdiction under the relevant ordinances.

Complaint, ¶ 47. However, Officer Karnes had probable cause to make the arrest under Jackson Municipal Code 12-16-170(A), as discussed above and below; he merely lacked the *jurisdiction* to make the arrest. An arrest made by an officer who has probable cause to believe that the arrestee has committed a crime, even a minor one, satisfies the Fourth Amendment's reasonableness requirement. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). That precept applies even when the arrest is carried out in *violation* of state law. *Virginia v. Moore*, 553 U.S. 164 (2008). Therefore, this Court should also dismiss the claim for malicious prosecution against the Airport Defendants because Officer Karnes' probable cause—confirmed by Judge Owens—forecloses this claim.

### b.   *Plaintiff failed to adequately plead a tort claim for abuse of process.*

"One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682 (1977); *accord Toltec Watershed Imp. Dist. v. Johnston,* 717 P.2d 808, 811 (Wyo. 1986). Here, Plaintiff asserts that the Individual Defendants engaged in abuse of process by "arresting, detaining, and charging the Plaintiff for engaging in his right to free speech and his right to petition the government." Complaint, ¶ 92. However, "[t]he gravamen of the misconduct for [abuse of process] is not the wrongful *procurement* of legal process or the wrongful *initiation* of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." Restatement (Second) of Torts § 682, cmt. a (1977) (emphasis added).

Thus, Plaintiff conflates abuse of process with false arrest, false imprisonment, and malicious prosecution. But these torts are temporally distinct causes of action. False arrest and false

imprisonment (in this context) occur *prior* to judicial proceedings and malicious prosecution occurs at the *initiation* of judicial proceedings, while abuse of process occurs *during* those judicial proceedings.[31] Here, the factual basis for all three claims pled is the detention, arrest, and confinement of the Plaintiff—*all* of which occurred *prior* to any judicial proceedings. There is no allegation against the Airport Defendants that they engaged in any abuse of a legal process against Plaintiff *after* initiation of judicial proceedings. Therefore, this Court should dismiss Plaintiff's claim against the Airport Defendants for abuse of process because no abuse of a *process* is pled against them in the Complaint.

> ### 6.    *Finally, Plaintiff was not subjected to an unconstitutional act by <u>anyone</u>.*[32]

"No individual may enter a sterile area . . . without submitting to the screening and inspection of his or her person and accessible property in accordance with the procedures being applied to control access to that area . . . under this subchapter." 49 C.F.R. 1540.107. The Circuit Courts have uniformly upheld *mandatory* supplemental screening (including pat-downs) following initial security screenings—even where the passenger *explicitly* asks to forgo the additional screening and instead leave the security area and the airport without boarding a flight. *United States v. Aukai*, 497 F.3d 955, 960 (9th Cir. 2007). In other words, the Circuit Courts have uniformly permitted *precisely* what Plaintiff alleges occurred here: a mandatory supplemental screening procedure after an individual voluntarily enters the security screening process. The Ninth Circuit persuasively set forth the reasoning for not permitting termination of the screening process once a person enters into it:

> [R]equiring that a potential passenger be allowed to revoke consent to an ongoing airport security search makes little sense in a post-9/11 world. Such a rule would

---

[31] The detention, arrest, and charging of Plaintiff set forth as the basis for this claim in the Complaint do not fall under abuse of process—the first act falls under the tort of false imprisonment, the second under false arrest (which Plaintiff did not even plead as a tort against the Municipal Defendants), and the third under of malicious prosecution.

[32] At least on Airport property where liability *might* be imputed to the Airport Defendants.

afford terrorists multiple opportunities to attempt to penetrate airport security by electing not to fly on the cusp of detection until a vulnerable portal is found. This rule would also allow terrorists a low-cost method of detecting systematic vulnerabilities in airport security, knowledge that could be extremely valuable in planning future attacks. Likewise, given that consent is not required, it makes little sense to predicate the reasonableness of an administrative airport screening search on an irrevocable implied consent theory. Rather, where an airport screening search is otherwise reasonable and conducted pursuant to statutory authority, 49 U.S.C. § 44901, all that is required is the passenger's election to attempt entry into the secured area of an airport. Under current TSA regulations and procedures, that election occurs when a prospective passenger walks through the magnetometer or places items on the conveyor belt of the x-ray machine.

*Aukai,* 497 F.3d at 961 (internal quotation marks, citations, and footnotes omitted).

Mr. Frey attempted to pass through the secured area of the Airport in violation of this statute. Plaintiff himself claims in the Complaint that Mr. Frey refused to comply with the mandatory pat-down and he *demanded* to be allowed to leave the airport without completing the screening process. Complaint, ¶ 35. The Ninth Circuit's reasoning in *Aukai* explains why he could not be allowed to do so. Therefore, the Screening Roes' and/or Officer Karnes properly insisted that Mr. Frey submit to the additional screening and this Court should dismiss Plaintiff's constitutional claims based on the alleged unconstitutionality of the screening process because the process was, in fact, constitutional.

Additionally, Officer Karnes had probable cause to arrest Mr. Frey under either Town of Jackson Municipal Code ("JMC") § 12.16.170[33] or 49 U.S.C. § 44901. Violation of Section 12.16.170 is a misdemeanor,[34] JMC § 1.12.010, while violation of 49 U.S.C. § 44901 is a felony.[35]

---

[33] "A. No Person shall tamper or interfere with, compromise, modify, or attempt to circumvent any security system, measure, or procedure implemented at the Airport. B. No Person shall enter or be present in a Restricted Area without complying with the systems, measures, procedures, screening and/or inspection being applied to control access to or presence in such areas." JMC § 12.16.170. Violations of this section "shall be punished in accordance with Section 1.12.010 of this code." JMC § 12.16.180.

[34] An officer may execute a warrantless arrest for a misdemeanor with probable cause and provided that the offense was committed in the officer's presence. *Atwater v. Lago Vista*, 532 U.S. 318 (2001).

[35] "A person may not knowingly and willfully enter, in violation of security requirements prescribed

As long as an officer has probable cause, an arrest is valid even if the suspect did not actually commit the crime, is never convicted, or the officer lacks jurisdiction to make the arrest. *Moore*, 553 U.S. at 173. Here, Officer Karnes had probable cause to believe that Mr. Frey was present in the "Restricted Area" (i.e. the secure area of the Airport) without complying with the security screening procedures and was actively attempting to circumvent the Airport's security procedures in violation of JMC § 12.16.170 and 49 U.S.C. § 44901. Therefore, he had probable cause to execute the arrest. It is irrelevant pursuant to *Moore* that Officer Karnes apparently lacked *jurisdiction* to execute the arrest under JMC § 12-16.170. *See* Complaint, ¶ 42.[36] Moreover, though Mr. Frey was ultimately charged under JMC § 12-16.170, Officer Karnes had probable cause to arrest Mr. Frey under 49 U.S.C. § 44901 because Mr. Frey's words and actions combined with the information Plaintiff concedes Officer Karnes received from the Screening Roes provided sufficient evidence that Mr. Frey had not been properly screened, and was nevertheless attempting to pass through the secure area. Therefore, Officer Karnes arrest of Mr. Frey was lawful under the Fourth Amendment because he had probable cause to believe that Mr. Frey had committed crime (whether a misdemeanor under Town law and/or a felony under Federal law). This Court should dismiss the claims against the Airport Defendants because the underlying actions by Officer Karnes and the Screening Roes (and imputed to the Airport Defendants) were *facially* constitutional.

---

under section 44901 [(Section 44901 sets forth the statutory screening procedures for the Airport)]. . . . of this title, . . . an airport area that serves an air carrier or foreign air carrier." 49 U.S.C. § 46314.. A person violating this statute is subject to imprisonment of up to one year. In addition, "[a] person violating subsection (a) of this section with intent to evade security procedures or restrictions . . ." is subject to imprisonment of up to ten years. *Id.* Mr. Frey's intent is clear from his words and actions.

[36] "Despite federal and state law granting the Town of Jackson the authority to establish these ordinances, the authority to enforce certain ordinances has been limited by the Town of Jackson" (apparently quoting Judge Owens' order dismissing the charge against Mr. Frey).

### 7.  *Punitive damages are unavailable against the Municipal Defendants.*

Governmental defendants are immune from a claim of punitive damages under Section 1983 for the actions of their employees. *See, e.g., City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981) (punitive damages not available in Section 1983 suit against municipality challenging violations of constitutional rights caused by city's revocation of permits for music festival). Punitive damages are available in a Section 1983 action against an individual defendant "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983). However, a municipal government entity (like the Airport Defendants) cannot be punished for the actions of rogue employees; and punitive damages cannot therefore be awarded against a government agency or municipality under Section 1983. *City of Newport,* 453 U.S. at 266–67. As the Airport Defendants are both indisputably "municipal defendants" (indeed, Plaintiff labels them such), they are not subject to punitive damages as a matter of law. Therefore, this Court should dismiss any claims for punitive damages against the Airport Defendants, the Town, the County, and the Individual Defendants in their <u>official</u> capacities.

## C.  *This Court Should Decline to Rule on the Constitutionality of the Municipal Ordinance Under Wyoming Law Because It Is a Matter of First Impression.*

There is no Wyoming Supreme Court case applying the Wyoming Constitution to security screening at airports in the post-September 11th (i.e. TSA) era nor to municipal ordinances regarding interference with such screening. As a matter of Federalism and comity, this Court should not have the first word as to whether a *Wyoming* municipal ordinance violates the *Wyoming* Constitution—and should decline to rule on the constitutionality of the ordinance under Wyoming law.

### III.   CONCLUSION

Plaintiff has asserted all the constitutional and tort issues and claims set forth in this suit previously as defenses to the criminal charge brought against him by the Town of Jackson. The municipal court duly adjudicated those issues and found against him on *every* constitutional claim. Yet, Plaintiff reasserts *all* of those issues and claims before this Court in what is essentially an impermissible request for collateral review—rather than properly addressing the findings of the municipal court through the ongoing appeal of that case to the Wyoming District Court. Therefore, this Court lacks jurisdiction over Plaintiff's claims and should dismiss them. Alternatively, Plaintiff's claims have other jurisdictional and pleading defects, as set forth above, and this Court should dismiss those claims accordingly. In either case, the Airport Defendants respectfully move the Court to grant this Motion and dismiss Plaintiff's claims against them under Rule 12.

Respectfully submitted this 22nd day of April, 2019.

GODFREY | JOHNSON, P.C.

/s/ Brett M. Godfrey
Brett M. Godfrey
9557 S. Kingston Court
Englewood, Colorado 80112
Phone: (303) 228-0700
Fax: (303) 228-0701
Email:  godfrey@gojolaw.com
Attorneys for Defendants, The Jackson Hole
Airport and the Jackson Hole Airport Board

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Seth A. Johnson, Esq.
Slow and Steady Law Office, PLLC
104 N. First Street
P.O. Box 1309
Saratoga, WY 82331
turtle@slowandsteadylaw.com

John D. Bowers, Esq.
Bowers Law Firm, PC
P.O. Box 1550
Afton, WY 83110
john@1000.legal

Thomas M. White, Esq.
Benjamin N. White, Esq.
White & Jorgensen
3114 St. Mary's Avenue
Omaha, NE 68105
twhite@whitejorgensen.com
bwhite@whitejorgensen.com

John Graham, Esq.
Deputy County and Prosecuting Attorney
Teton County Attorney's Office
180 South King Street
P.O. Box 4068
Jackson, WY 83001
john@tetoncountyattorney.com

/s/ *Connie Higgs*
Connie Higgs, an employee of Godfrey | Johnson, P.C.