**STATE OF WYOMING** Member NRVC

FORM P-6 (8/15)

CITATION/COMPLAINT   Court MUNICIPAL COURT

DKT # 18-03-0226   Event # P 1803-1156

18600475 6AA

State of Wyoming, County of Teton

VS

Defendant FREY
(LAST)

WILLIAM                              A.
(FIRST)                              (MI)

Street Address ███████

Mail Address _____

City GREENWICH                St CT   Zip 06830

DOB ██57   Sex M   Race W Ht ___ Wt ___ Hair BRO Eyes BLU

DL # ████████   Class D   State CT

VL # _____ St. ___ Make _____ Model _____ Year ___

Passenger ☐ PU ☐ Motorcycle ☐ MPV ☐ Color _____

Comm Veh ☐ Comm Viol ☐ Comm ☐   Comm ☐   16 + ☐
                          10,001 to 26,000  > 26,000   Passenger Veh.

DOT # _____ ☐ Placarded Veh.  Haz Mat ID # _____

Co. Name _____

City/State _____

G&F Lic. # _____

The undersigned states that on or about the   12   day of   March   , 2018

at  13:00   hrs at LRS Section # _____   MP _____

Street ☐  County Rd. ☐  State Hwy ☐  Private Property ☒  Travel Direction _____

Location  1250 E AIRPORT ROAD

Location Comment _____

The defendant did unlawfully commit the following offense against the peace and dignity of the State of Wyoming
CITY OF JACKSON

Statute/Ordinance # MC.12.16.170

AIRPORT: COMPLIANCE WITH SECURITY           $750.00
REQUIREMENTS

Notes: (A) FAILED TO COMPLETE SCREENING PROCESS AS ALLOWED BY
AIRPORT SCREENERS

Speed _____ MPH in _____ MPH Zone   Weight Over _____

In violation of  W.S. ☐ or Ord ☒   No. MC.12.16.170

VIN _____

and the undersigned further states that there are just and reasonable grounds to believe that the person named
above committed the offense herein.                                    CRASH ☐

Complainant _____ BAC _____ %

Sworn to and Subscribed before me this _____ day of _____ 20 ___

Judge/Notary _____

Initial Appearance:  IN CUSTODY  AM ☐  PM ☐

on the ___ day of _____ in  JACKSON _____ , WY.

**Physical Court Address:** 145 E SIMPSON AVE
                           JACKSON WY  83001
**Mailing Court Address:** PO BOX 1687
                          JACKSON WY  83001
**Phone:**                3077333932 EXT:1100

Pay Online:   WWW.TOWNOFJACKSON.COM/BILLPAY

☐ MUST APPEAR                    ☒ May forfeit bond in lieu of appearance

Officer  KARNES, NATHAN   No. 726   Dept. Jackson PD

                                    ☒ NO Bond Taken

Bond  $750.00   Paid by _____

Date _____ Rec'd by _____

Date _____ Rec'd by _____

Court receipt # _____ ☐ Seat Belts in use

---

Officer Comments

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Employer: _____

Phone Number: _____

Zone: _____

☐ School Zone

☐ Construction

Speed Determination

☐ Radar

☐ Lidar  # _____ Dist: _____

☐ Pace

☐ Other

000001

**IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, WYOMING**

| | |
|---|---|
| TOWN OF JACKSON | ) **PROBABLE CAUSE** |
| Plaintiff, | ) |
| | ) AFFIDAVIT IN SUPPORT OF |
| vs. | ) WARRANTLESS ARREST |
| | ) (Rule 5, W.R.Cr.P) |
| | ) |
| FREY, WILLIAM A | ) |
| | ) |
| Defendant, | ) |

PDPI80300050 1803-1156

VICTIM(S) NAME     {victims.name}

AFFIANT     Nathan Karnes     , being duly sworn,

States that the Defendant,   FREY, WILLIAM A     , was arrested

By (NAME OF ARRESTING OFFICER)     726 - Karnes, Nathan

on     03/12/18 13:00

at (LOCATION)     1250 E AIRPORT ROAD

in violation of (STATUTE(S))   JMC 12.16.170 - AIRPORT: COMPLIANCE WITH SECURITY REQUIREMENTS

## NARRATIVE   (SET FORTH SUFFICIENT DETAIL TO PERMIT INFORMED JUDICIAL REVIEW AND PROBABLE CAUSE DETERMINATION):

While on scheduled patrol at Jackson Hole Airport when the Screening Supervisor Martha Preston called Officer Nathan Karnes and requested that he respond to screening. Officer Karnes spoke with Supervisor Preston and was informed that William Frey went through a screening device that showed that Frey had an area on his groin and upper inner thigh that needed additional screening. Frey stated he was willing to be rescanned but, "I am not willing to have someone feel my balls". Supervisor Preston stated the SOP, standard operating procedure, states they are not allowed to re-screen someone. Officer Karnes told Frey that he once he started the screening process that he is required to finish the process as the screeners have directed. Frey stated he was not going to be sexually assaulted and refused to complete the screening process. Officer Karnes arrested Frey for being in a restricted area at the airport and failing to comply with the screening being applied to that area.

The above facts constitute probable cause for the Defendant's warrantless arrest

Dated this   12th   day of   March   2018   ,

_____
AFFIANT SIGNATURE

State of Wyoming     )
                     ) ss
County of Teton      )

SUBSCRIBED AND SWORN TO BEFORE ME BY   Nathan Karnes
                                        PRINT OR TYPE NAME OF AFFIANT

this   12th   day of   March   , 20 18

WITNESS my hand and official seal.

_____
☐ Circuit Court Judge  ☐ Clerk of the Court  ☒ Notary Public

LYNDA KAYE RUDOLPH - NOTARY PUBLIC
County of          State of
Teton              Wyoming
My Commission Expires  2-2-20

000002

STATE OF WYOMING )
TOWN OF JACKSON ) ss.     Before Melissa M. Owens
) Municipal Judge
**TOWN OF JACKSON** )
*Plaintiff,* )
)
)
v. )
William Frey , )     **Citation No.** 186004756 AA
*Defendant.* )
)

# PROMISE TO APPEAR

I, William A. Frey , agree to the following terms:
(Printed Name: First, Middle, Last)

I PROMISE TO APPEAR in Court on Wednesday, March 21st ,
(Month, Day)
20 18 , at 9:00 A.M., in the Clifford P. Hansen Court House at 145 E. Simpson Ave., Jackson.

Pay a $500.00 forfeitable bond.

I acknowledge that should I fail to appear in the Municipal Court at the appointed date and time listed above, I may be subject to the additional charge of Failure to Appear, which carries additional penalties, and a warrant may be issued for my arrest. I may also be charged with contempt of court, punishable by a fine of not more than $750.00, a jail sentence of not more than six months, or both.

I acknowledge that ONLY if my citation is marked 'may forfeit bond in lieu of appearance', I may post and forfeit the bond listed on my citation before the above date and time and then I do not have to appear in court, conviction is entered for the offense and my case is closed.

I acknowledge that to challenge the charge, or to establish a payment schedule with the Town of Jackson, I must appear in Court at the appointed date and time.

I acknowledge the receipt of a probable cause affidavit containing the circumstances of my arrest for Public Intoxication.

SIGNED THIS 12th DAY OF March , 20 18 .

_____
Defendant's Signature

000003

Correspondence, including e-mail, to and from employees of the Town of Jackson, in connection with the transaction of public business, is subject to the Wyoming Public Records Act and may be disclosed to third parties.

The information contained in this transmission may contain privileged and confidential information and is intended only for the use of the person(s) named above.  If you are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately by reply e-mail and destroy all copies of the original message.

Please consider the environment before printing this e-mail.

**From:** Bill Frey [mailto:Bill@greenwichfin.com]
**Sent:** Tuesday, March 20, 2018 9:49 AM
**To:** Jessica Chitwood <jchitwood@jacksonwy.gov>
**Cc:** Lea Colasuonno <lcolasuonno@jacksonwy.gov>
**Subject:** Citation 186004756AA

I would like to plea not Guilty to this offence and appear telephonically.  I am located in Connecticut and cannot appear physically.  I am still assembling a legal team, but will waive all legal ethical restrictions regarding receiving correspondences directly until I have the legal team finalized.

Thank you and please respond to this e mail so that I know that it has been received.

Thank you

William Frey
203-599-4475

Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

**Jessica Chitwood**

| | |
|---|---|
| **From:** | Bill Frey <Bill@greenwichfin.com> |
| **Sent:** | Tuesday, March 20, 2018 10:12 AM |
| **To:** | Jessica Chitwood |
| **Cc:** | Lea Colasuonno |
| **Subject:** | RE: Citation 186004756AA |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

The first thing my attorneys will be doing will be to  place a Legal Hold on all tapes and recordings of the events from the TSA checkpoint to my release from the Sheriff's custody. Please see that any tapes and recordings of this incident are not destroyed.

William Frey

**From:** Jessica Chitwood <jchitwood@jacksonwy.gov>
**Sent:** Tuesday, March 20, 2018 11:58 AM
**To:** Bill Frey <Bill@greenwichfin.com>
**Cc:** Lea Colasuonno <lcolasuonno@jacksonwy.gov>
**Subject:** RE: Citation 186004756AA
**Importance:** High

Good Morning Mr. Frey,

Thank you for your email.  I will forward your motion to appear telephonically to Judge Owens.

Please let me know if I can be of further assistance.


Sincerely,

Jessica Chitwood
Municipal Court Clerk
Town of Jackson, Wyoming
P.O. Box 1687
150 East Pearl
Jackson, WY 83001
307-733-3932 ext 1152
jchitwood@jacksonwy.gov
www.townofjackson.com



**Cc:** Lea Colasuonno <lcolasuonno@jacksonwy.gov>; Judy Gordon <jgordon@jacksonwy.gov>
**Subject:** RE: WILLIAM FREY

Jessica:

Is this reply sufficient or is it necessary to send this by regular mail?

B

**From:** Jessica Chitwood <jchitwood@jacksonwy.gov>
**Sent:** Tuesday, March 20, 2018 2:44 PM
**To:** Bill Frey <Bill@greenwichfin.com>
**Cc:** Lea Colasuonno <lcolasuonno@jacksonwy.gov>; Judy Gordon <jgordon@jacksonwy.gov>
**Subject:** WILLIAM FREY

Good Afternoon Mr. Frey,

Judge Owens will grant your motion to appear by telephone.
Please fill out the attached Waiver of Appearance and return to all parties.  Once received, we will set a telephonic arraignment.

Please let me know if I can be of further assistance.


Sincerely,

Jessica Chitwood
Municipal Court Clerk
Town of Jackson, Wyoming
P.O. Box 1687
150 East Pearl
Jackson, WY 83001
307-733-3932 ext 1152
jchitwood@jacksonwy.gov
www.townofjackson.com



Correspondence, including e-mail, to and from employees of the Town of Jackson, in connection with the transaction of public business, is subject to the Wyoming Public Records Act and may be disclosed to third parties.
The information contained in this transmission may contain privileged and confidential information and is intended only for the use of the person(s) named above.  If you are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately by reply e-mail and destroy all copies of the original message.

Please consider the environment before printing this e-mail.

## IN THE MUNICIPAL COURT, TOWN OF JACKSON
## TETON COUNTY, WYOMING

TOWN OF JACKSON,

    Plaintiff,

v.

\_\_\_\_William A. Frey_____,

    Defendant.

Citation #: \_\_186004756AA

FILED
MUNICIPAL COURT
TOWN OF JACKSON
eceived by. *Email*
Date. *3/21/18*

## WAIVER OF APPEARANCE

I, William A. Frey, the defendant in the above said matter waive the right to appear in person at arraignment, plea, and trial pursuant to Rule 43(c)(2) W.R.Cr.P.

DATED this _21 day of ____March, 2018.

                                         Defendant

## CERTIFICATE OF SERVICE

*(It is required that a copy of this form once signed be sent to the Municipal Court **and** the Town Attorney Office)*

I hereby certify that on this _____ day of _____, 2017, a true and accurate copy of this Motion was served as to the Assistant Town Attorney as indicated below:

    Lea Colasuonno
    Assistant Town Attorney
    PO Box 1687
    Jackson, WY 83001

                              U.S. mail only:   _____
                               Hand Delivery:  _____
                               Telefax:       _____

                                          (signature)

                                       (printed name)

## IN THE MUNICIPAL COURT, TOWN OF JACKSON
## TETON COUNTY, WYOMING

TOWN OF JACKSON,

    *Plaintiff,*

    v.

WILLIAM A FREY,

    *Defendant.*

Case No.  18-03-0226

**ORDER SETTING TELEPHONIC
ARRAIGNMENT**

THIS MATTER having come before the Court on the Defendant's *Motion to Appear by Telephone*, and this Court being otherwise fully advised in the premises;

IT IS HEREBY ORDERED that an Initial Appearance and Arraignment Hearing in this matter is set to be held in the Clifford P. Hansen Memorial Courthouse at 145 E. Simpson Ave., Jackson, WY, on the 11th day of April, 2018 after 11:20 A.M. The defendant may appear by telephone. The Court will initiate the phone call to the number listed below, unless otherwise advised.

Dated this 21st day of March, 2018.

_____
Melissa M. Owens
Municipal Judge

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of March, 20 18, a true and correct copy of the foregoing was served upon the following counsel of record by placing the same in the service indicated and addressed as follows:

**Defendant:**

William Frey
10 Glenville Rd
Greenwich, CT  06830
bill@greenwichfin.com
203.599.4475

Sent via: Email / US Mail

Sent on: 3/21/18

**Assistant Town Attorney:**

Lea Colasuonno
PO Box 1687
Jackson, WY 83001

Sent via: Email

Sent on: 3/21/18

_____
Jessica Chitwood, Clerk of Court

000008

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, STATE OF WYOMING
MELISSA M. OWENS, MUNICIPAL COURT JUDGE

**FILED**
**MUNICIPAL COURT**
**TOWN OF JACKSON**
Received by. _R -Email_
Date. _4/6/18_

THE STATE OF WYOMING,            )
TOWN OF JACKSON,                 )
                                 )
            Plaintiff,           )
                                 )     Case # 18 – 03 – 0026
vs.                              )
                                 )
WILLIAM FREY,                    )
                                 )
            Defendant,           )

---

## ENTRY OF APPEARANCE

---

**To:**    The clerk of court and all parties of record.

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:  William Frey, defendant.

**DATED**: This 6th day of April, 2018.

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC
Attorney for Defendant
210 W. Elm Ave
P.O. Box 1309
Saratoga, WY 82331
(307) 399 – 6060 Cell
(307) 326 – 8850 Fax
Turtle@Slowandsteadylaw.com

*Case No. 18 – 03 – 0226*
ENTRY OF APPEARANCE w/Certificate of Service
Page 1 of 2

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 6th day of April, 2018, the foregoing instrument was served via email; and by depositing a true and accurate copy of the same in the United States mail, postage prepaid, addressed to:

Jackson Municipal Court
PO Box 1687
Jackson, WY 83001
jgordon@jacksonwy.gov

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, STATE OF WYOMING
MELISSA M. OWENS, MUNICIPAL COURT JUDGE

*FILED MUNICIPAL COURT TOWN OF JACKSON*
*Received by. JC - email*
*Date. 4/6/18*

THE STATE OF WYOMING,        )
TOWN OF JACKSON,             )
                            )
            Plaintiff,       )
                            )
vs.                          )        Case # 18 – 03 – 0226
                            )
WILLIAM FREY,                )
                            )
            Defendant,       )

---

**ENTRY OF NOT GUILTY PLEA, WAIVER OF APPEARANCE UPON ARRAIGMENT, REQUEST FOR SCHEDULING CONFERENCE, DEMAND FOR EVIDENCE, AND DEMAND FOR SPEEDY TRIAL**

---

**COMES NOW**, Defendant, William Frey, by and through his attorney, Seth "Turtle" Johnson, of the Slow and Steady Law Office, PLLC, does hereby enter an initial plea of Not Guilty to the charge of failing to comply with airport security requirements pursuant to Town Ordinance MC.12.16.170, and respectfully requests that his appearance for his Arraignment hearing scheduled for April 11, 2018, be waived; and

**FURTHER**, Defendant respectfully requests a scheduling conference; and

**FURTHER**, Defendant demands that any, and all evidence against him be preserved, specifically any video, or audio tapes related to the incident that occurred at the Jackson Hole Airport (JAC) and subsequent arrest and jailing, on March 12, 2018, and demands access to any, and all evidence against him; and demands a speedy trial.

**RESPCTFULLY SUBMITTED** this 6th day of April, 2018.

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC
Attorney for Defendant
210 W. Elm Ave
P.O. Box 1309
Saratoga, WY 82331
(307) 399 – 6060 Cell
(307) 326 – 8850 Fax
Turtle@Slowandsteadylaw.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 6th day of April, 2018, the foregoing instrument was served via email; and by depositing a true and accurate copy of the same in the United States mail, postage prepaid, addressed to:

Jackson Municipal Court Prosecuting Attorney
PO Box 1687
Jackson, WY 83001
jgordon@jacksonwy.gov

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC

**Jessica Chitwood**

| | |
|---|---|
| **From:** | seth johnson <turtle@slowandsteadylaw.com> |
| **Sent:** | Friday, April 06, 2018 3:26 PM |
| **To:** | Jessica Chitwood |
| **Subject:** | Hello Ma'am:  Updated Filing |
| **Attachments:** | Updated Frey Entry of Appearance.pdf |

Good Afternoon Ms. Chitwood!

Apologies, the Entry that I filed this morning is miscaptioned:  I had used case # 18 – 03 – 0026; and the proper case # is 18 – 03 – 0226.  I have corrected the error and included a signed, updated entry.

Will you file this please, and return a file stamped copy to me via email?  Thank you.  I will send a second email with a Written Plea, and Corresponding Order.

I really do appreciate you time, and I hope you have a good weekend!

Sincerely,

Turtle

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, STATE OF WYOMING
MELISSA M. OWENS, MUNICIPAL COURT JUDGE

**FILED**
**MUNICIPAL COURT**
**TOWN OF JACKSON**
Received by. _JC-Email_
Date. _4/6/18_

| | |
|---|---|
| THE STATE OF WYOMING, TOWN OF JACKSON, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case # 18 – 03 – 0226 |
| WILLIAM FREY, | ) ) ) |
| Defendant, | ) |

_Corrected_ **ENTRY OF APPEARANCE**

**To**:   The clerk of court and all parties of record.

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:  William Frey, defendant.

**DATED**: This 6th day of April, 2018.

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC
Attorney for Defendant
210 W. Elm Ave
P.O. Box 1309
Saratoga, WY 82331
(307) 399 – 6060 Cell
(307) 326 – 8850 Fax
Turtle@Slowandsteadylaw.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 6th day of April, 2018, the foregoing instrument was served via email; and by depositing a true and accurate copy of the same in the United States mail, postage prepaid, addressed to:

Jackson Municipal Court
PO Box 1687
Jackson, WY 83001
jgordon@jacksonwy.gov

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC

**IN THE MUNICIPAL COURT, TOWN OF JACKSON**
**TETON COUNTY, WYOMING**

TOWN OF JACKSON,

    *Plaintiff,*

v.

WILLIAM FREY,

    *Defendant.*

Case Number:  18-03-0226

**ORDER SETTING
STATUS CONFERENCE (BY
TELEPHONE)**

IT IS HEREBY ORDERED that a Status Conference in this matter is set to

be held in the Clifford P. Hansen Memorial Courthouse at 145 E. Simpson Ave.,

Jackson, on the 2nd day of May, 2018 at 11:45 A.M.

Dated this 9th day of April, 2018.

*1l 10*

Melissa M. Owens
Municipal Judge

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 9th day of April, 2018, a true and correct
copy of the foregoing was served upon the following counsel of record by placing the same in the
service indicated and addressed as follows:

**Defendant's Attorney:**

Seth "Turtle" Johnson
PO Box 1309
Saratoga, WY  82311
Turtle@slowandsteadylaw.com
307-399-6060

Sent via: Email

Sent on: 4/9/18

**Assistant Town Attorney:**

Lea Colasuonno
PO Box 1687
Jackson, WY 83001

Sent via: Email

Sent on: 4/9/18

Jessica Chitwood, Clerk of Court

000016

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, STATE OF WYOMING
MELISSA M. OWENS, MUNICIPAL COURT JUDGE

THE STATE OF WYOMING,                    )
TOWN OF JACKSON,                         )
                                         )
              Plaintiff,                 )
                                         )
vs.                                      )        Case # 18 – 03 – 0226
                                         )
WILLIAM FREY,                            )
                                         )
              Defendant,                 )

---

### ORDER WAIVING APPEARANCE

---

**WHEREAS**, Seth "Turtle" Johnson, Attorney for Defendant, did file with this Court on the 6th day of April, a Request for Waiver of Appearance at Arraignment; and filed a Written Plea of Not Guilty, and requested a Scheduling Conference in the above captioned matter; and

**WHEREAS** the Court has reviewed the request and acknowledges that it will accept a written plea;

**THEREFORE IT IS ORDERED, ADJUDGED AND DECREED**, that the arraignment in the above captioned matter is hereby waived.

**DONE** this ___ day of April, 2018.

Hon. Melissa M. Owens
Municipal Court Judge

*#18 – 03 – 0226*
ORDER WAIVING APPEARANCE
Page 1 of 1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this _9th_ day of _April_, 2018, a true and correct copy of the foregoing was served upon the following counsel of record by placing the same in the service indicated and addressed as follows:

**Defendant's Attorney:**

Seth "Turtle" Johnson
PO Box 1309
Saratoga, WY  82311
Turtle@slowandsteadylaw.com

**Assistant Town Attorney:**

Lea Colasuonno
PO Box 1687
Jackson, WY 83001

Sent via: _Email_

Sent on: _4/9/18_

Sent via: _Email_

Sent on: _4/9/18_

Jessica Chitwood, Court Clerk

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, STATE OF WYOMING
MELISSA M. OWENS, MUNICIPAL COURT JUDGE

**FILED**
**MUNICIPAL COURT**
**TOWN OF JACKSON**
Received by. _____
Date. 5/1/18

| | |
|---|---|
| THE STATE OF WYOMING, TOWN OF JACKSON, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case # 18 – 03 – 0226 ) |
| WILLIAM FREY, | ) ) |
| Defendant, | ) ) |

## REQUEST FOR WAIVER OF APPEARANCE AT SCHEDULING CONFERENCE

    **COMES NOW**, Defendant, William Frey, by and through his attorney, Seth "Turtle" Johnson, of the Slow and Steady Law Office, PLLC, does hereby enter a *Request for Waiver of Appearance at Scheduling Conference* that is scheduled via telephone on May 2nd, 2018 at 11:45 A.M.; and that his attorney, Seth "Turtle" Johnson, be allowed to appear telephonically on his behalf.

    **RESPCTFULLY SUBMITTED** this 1st day of May, 2018.

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC
Attorney for Defendant
210 W. Elm Ave
P.O. Box 1309
Saratoga, WY 82331
(307) 399 – 6060 Cell
(307) 326 – 8850 Fax
Turtle@Slowandsteadylaw.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 1st day of May, 2018, the foregoing instrument was served via email; and by depositing a true and accurate copy of the same in the United States mail, postage prepaid, addressed to:

Jackson Municipal Court Prosecuting Attorney
PO Box 1687
Jackson, WY 83001
jgordon@jacksonwy.gov

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC

IN THE MUNICIPAL COURT, TOWN OF JACKSON
TETON COUNTY, WYOMING

TOWN OF JACKSON,

    *Plaintiff,*

v.

WILLIAM A. FREY,

    *Defendant.*

Case Number: 18-03-0226

**ORDER SETTING
STATUS HEARING (BY PHONE)**

IT IS HEREBY ORDERED that a Status Hearing in this matter is set to be held in the Clifford P. Hansen Memorial Courthouse at 145 E. Simpson Ave., Jackson, on the 30th day of May, 2018 at 10:15 A.M.

Dated this 2nd day of May, 2018.

Melissa M. Owens
Municipal Judge

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 2nd day of May, 20 18, a true and correct copy of the foregoing was served upon the following counsel of record by placing the same in the service indicated and addressed as follows:

**Defendant's Attorney:**

Seth "Turtle" Johnson
PO Box 1309
Saratoga, WY 82331
Turtle@slowandsteadylaw.com
307.399.6060

**Assistant Town Attorney:**

Lea Colasuonno
PO Box 1687
Jackson, WY 83001
LColasuonno@jacksonwy.gov

Sent via: Email

Sent on: 5/2/18

Sent via: Email

Sent on: 5/2/18

Jessica Chitwood, Clerk of Court

000021

## IN THE MUNICIPAL COURT, TOWN OF JACKSON
## TETON COUNTY, WYOMING

TOWN OF JACKSON,

    *Plaintiff,*

v.

WILLIAM FREY,

    *Defendant.*

Case Number: 18-03-0226

**ORDER SETTING**
**STATUS HEARING (BY PHONE)**

    IT IS HEREBY ORDERED that a Status Hearing in this matter is set to be held in the Clifford P. Hansen Memorial Courthouse at 145 E. Simpson Ave., Jackson, on the 27th day of June, 2018 at 10:20 A.M.

Dated this 31st day of May, 2018.

_____
Melissa M. Owens
Municipal Judge

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 31st day of May, 2018, a true and correct copy of the foregoing was served upon the following counsel of record by placing the same in the service indicated and addressed as follows:

**Defendant's Attorney:**
Seth "Turtle" Johnson
PO Box 1309
Saratoga, WY 82331
Turtle@slowandsteadylaw.com

Sent via: Email

Sent on: 5/31/18

**Assistant Town Attorney:**
Lea Colasuonno
PO Box 1687
Jackson, WY 83001
Lcolasuonno@jacksonwy.gov

Sent via: Email

Sent on: 5/31/18

_____
Jessica Chitwood, Clerk of Court

## IN THE MUNICIPAL COURT

### TOWN OF JACKSON, STATE OF WYOMING

| | | |
|---|---|---|
| TOWN OF JACKSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 18-03-0226 |
| | ) | |
| WILLIAM A. FREY, | ) | |
| | ) | |
| Defendant. | ) | |

**FILED**
MUNICIPAL COURT
TOWN OF JACKSON
Received by. ___SMA___
Date. ___6/25/18___

---

### MOTION TO VACATE AND RESET STATUS CONFERENCE

---

COMES NOW Plaintiff in the above-captioned matter and respectfully requests that this Court vacate the Status Conference in the above-captioned matter currently scheduled for June 27, 2018 and reset the same and in support thereof avers as follows:

1. The Prosecuting Attorney on the case is not available and the appointed day and time.
2. The Town has conferred with Defendant, as required by the Wyoming Rules of Criminal Procedure, and Defendant does not object to the continuance of this case.

WHEREFORE, Plaintiff respectfully moves this Court to vacate the Status Conference scheduled for June 27, 2018 and re-set the same at the Court's convenience.

DATED this 25th day of June 2018.

Lea M. Colasuonno
WSB No. 7-5155
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497

*Town of Jackson v. William Frey*
Motion to Vacate and Reset Status Conference
Docket No. 18-03-0226
000023

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of June 2018, a true and accurate copy of the foregoing was served as indicated below and addressed to:

| | |
|---|---|
| Seth Turtle Johnson | U.S. mail: ✓ |
| Attorney for the Defendant | Email ✓ |
| P.O. Box 1309 | via Hand Delivery: _____ |
| Saratoga, WY 82331 | Telefax: _____ |

Lea M. Colasuonno
WSB No. 7-5155
Assistant Town Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497

*Town of Jackson v. William Frey*
Motion to Vacate and Reset Status Conference
Docket No. 18-03-0226
000024

## IN THE MUNICIPAL COURT, TOWN OF JACKSON
## TETON COUNTY, WYOMING

TOWN OF JACKSON,

    *Plaintiff,*

    Case No. 18-03-0226

v.

    **ORDER VACATING AND RESETTING STATUS HEARING (BY PHONE)**

WILLIAM FREY,

    *Defendant.*

 

    IT IS HEREBY ORDERED that the Status Hearing in this matter set for the 27th of June at 10:20 A.M. is VACATED, and RESET for the 18th day of July, 2018 at 11:00 A.M. to be held in the Clifford P. Hansen Memorial Courthouse at 145 E. Simpson Ave., Jackson.

    Dated this 27 day of June, 2018.

    Melissa M. Owens
    Municipal Judge

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 27 day of June, 2018, a true and correct copy of the foregoing was served upon the following counsel of record by placing the same in the service indicated and addressed as follows:

**Defendant's Attorney:**
Seth "Turtle" Johnson
PO Box 1309
Saratoga, WY 82331
Turtle@slowandsteadylaw.com

Sent via: Email
Sent on: 6/27/18

**Assistant Town Attorney:**
Lea Colasuonno
PO Box 1687
Jackson, WY 83001
Lcolasuonno@jacksonwy.gov

Sent via: Email
Sent on: 6/27/18

    Jessica Chitwood, Clerk of Court

000025

## IN THE MUNICIPAL COURT, TOWN OF JACKSON
## TETON COUNTY, WYOMING

TOWN OF JACKSON,

    Plaintiff,                   Case No. 18-03-0226

v.

WILLIAM A FREY,             **SCHEDULING ORDER**

    Defendant.

IT IS HEREBY ORDERED that the above said matter is scheduled as follows:

- **Defendant's Pre-Trial Motions** to be filed by the 8th day of August, 2018.
- **Plaintiff's Response to Motions** to be filed by the 31st day of August, 2018.
- **Defendant's Reply to Response** to be filed by the 14th day of September, 2018.
- **A Motions Hearing** is set to be held on the 24th day of September, 2018 at 11:00 A.M. in the Clifford P. Hansen courthouse at 145 E Simpson Ave., Jackson.
- **Witness and Exhibit Lists** to be filed by the 10th day of October, 2018
- **Objections to Witness and Exhibit Lists** to be filed by the 15th day of October, 2018
- **A Bench Trial** is set to be held on the 17th day of October, 2018 at 9:00 A.M. in the Clifford P. Hansen courthouse at 145 E Simpson Ave., Jackson.

Dated this 19 day of July, 2018.

_____
Melissa M. Owens
Municipal Judge .

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19 day of July, 2018, a true and correct copy of the foregoing was served upon the following counsel of record by placing the same in the service indicated and addressed as follows:

| **Defendant's Attorney:** | **Assistant Town Attorney:** |
|---|---|
| Seth "Turtle" Johnson | Lea Colasuonno |
| PO Box 1309 | PO Box 1687 |
| Saratoga, WY 82331 | Jackson, WY 83001 |
| Turtle@slowandsteadylaw.com | Lcolasuonno@jacksonwy.gov |

Sent via: Email               Sent via: Email

Sent on: 7/19/18            Sent on: 7/19/18

_____
Jessica Chitwood, Clerk of Court

000026

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON

FILED

TETON COUNTY, STATE OF WYOMING

MELISSA M. OWENS, MUNICIPAL COURT

MUNICIPAL COURT
TOWN OF JACKSON

Received by. _Email - JC_

Date. _7/31/18_

| | |
|---|---|
| THE STATE OF WYOMING,<br>TOWN OF JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case # 18 – 03 – 0226 |
| | ) |
| WILLIAM FREY, | ) |
| | ) |
| Defendant, | ) |

## ADDITIONAL DEMAND FOR EVIDENCE

**COMES NOW**, Defendant, William Frey, by and through his attorney, Seth "Turtle" Johnson, of the Slow and Steady Law Office, PLLC, does hereby respectfully submit this *Additional Demand for Evidence*; specifically, demanding access to any written statements, or other information regarding on duty TSA witnesses who were present, or participated in the screening of Defendant on March 12, 2018 at the Jackson Hole Airport (JAC);

**FURTHER**, Defendant specifically demands access to any, and all signs, or warnings posted at JAC; and any other documents, or writing, that would have served to put Defendant on notice that he could be required to allow airport personnel to touch his genitals under airport procedures;

**FURTHER**, Defendant specifically demands any, and all evidence justifying the need for additional screening of Defendant, including, but not limited to, an image of the body scan of Mr. Frey, alongside ordinary body scan images which do not require additional screening;

**FURTHER**, Defendant specifically demands any, and all training materials, or procedures regarding when TSA agents are taught that they may rescreen people.

**RESPCTFULLY SUBMITTED** this 31st day of July, 2018.

*#18 – 03 - 0226*
ADDITIONAL DEMAND w/Certificate of Service
Page 1 of 2

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC
Attorney for Defendant
210 W. Elm Ave
P.O. Box 1309
Saratoga, WY 82331
(307) 399 – 6060 Cell
(307) 326 – 8850 Fax
Turtle@Slowandsteadylaw.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 31st day of July, 2018, the foregoing instrument was served via email; and by depositing a true and accurate copy of the same in the United States mail, postage prepaid, addressed to:

Jackson Municipal Court Prosecuting Attorney
PO Box 1687
Jackson, WY 83001
jgordon@jacksonwy.gov

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, STATE OF WYOMING
MELISSA M. OWENS, MUNICIPAL COURT JUDGE

**FILED**
**MUNICIPAL COURT**
**TOWN OF JACKSON**
Received by. _____
Date. _8/7/18_  _email_

| | |
|---|---|
| THE STATE OF WYOMING, TOWN OF JACKSON, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case # 18 – 03 – 0226 |
| WILLIAM FREY, | ) ) |
| Defendant, | ) ) |

## MOTION TO EXTEND FILING DEADLINE FOR MOTION TO DISMISS, AND FOR NEW SCHEDULING CONFERENCE

**COMES NOW,** William "Bill" Frey, by and through his attorney, Seth "Turtle" Johnson, of the Slow and Steady Law Office, PLLC, does hereby respectfully submit the following request for an extension to the deadline for filing our *Motion to Dismiss*, due August 8th, 2018; and ask that the defendant be given an additional week (7 days) to finalize the arguments therein.  The requested new deadline for filing is Wednesday, August 15th, 2018;

**FURTHER,** the defendant apologizes to the court, and to the prosecution, for the delay;

**FURTHER,** the Defendant has asked Lea Colasuonno, prosecutor for the Town of Jackson in this case, if there was any objection to an extension being filed regarding the deadline for defendant's *Motion to Dismiss*, and there is none;

**FURTHER, AND FINALLY,** the Defendant requests that a scheduling conference be held on Aug 8th, 2018, at the courts convenience, if possible; at the suggestion of Ms. Colasuonno, to coordinate the newly scheduled deadlines with the Town of Jackson's current schedule.

**RESPECTFULLY SUBMITTED** this _7th_ day of August, 2018.

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC
Attorney for Defendant
210 W. Elm Ave
P.O. Box 1309
Saratoga, WY 82331
(307) 399 – 6060 Cell
(307) 326 – 8850 Fax
Turtle@Slowandsteadylaw.com

## CERTIFICATE OF SERVICE

    The undersigned does hereby certify that on the 7th day of August, 2018, the foregoing instrument was served via email; and by depositing a true and accurate copy of the same in the United States mail, postage prepaid, addressed to:

Jackson Municipal Court Prosecuting Attorney
PO Box 1687
Jackson, WY 83001
jgordon@jacksonwy.gov

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, STATE OF WYOMING
MELISSA M. OWENS, MUNICIPAL COURT JUDGE

THE STATE OF WYOMING,           )
TOWN OF JACKSON,                )
                                )
                Plaintiff,      )
                                )
vs.                             )       Case # 18 – 03 – 0226
                                )
WILLIAM FREY,                   )
                                )
                Defendant,      )

---

## ORDER TO EXTEND FILING DEADLINE FOR MOTION TO DISMISS, AND TO SET NEW SCHEDULING CONFERENCE

---

**WHEREAS**, Seth "Turtle" Johnson, Attorney for Defendant, did file with this Court on the 7th day of August, a *Motion to Extend the Filing Deadline, and to set a new Scheduling Conference*;

**WHEREAS** the Court has reviewed the motion and acknowledges that the prosecution has no objection;

**THEREFOR IT IS ORDERED, ADJUDGED AND DECREED**, that the new filing deadline for Defendant's *Motion to Dismiss* will be Wednesday, August 15th, 2018;

**IT IS THERFOR FURTHER ORDERED, ADJUDGED AND DECREED**, that a new Scheduling Conference will be held at the Court's Convenience in the AM of Wednesday, August 8th, 2018.

**DONE** this 8th day of August, 2018.

Hon. Melissa M. Owens
Municipal Court Judge

## IN THE MUNICIPAL COURT, TOWN OF JACKSON
## TETON COUNTY, WYOMING

TOWN OF JACKSON,

    Plaintiff,

v.

WILLIAM A FREY,

    Defendant.

Case No. 18-03-0226

**AMENDED SCHEDULING
ORDER**

IT IS HEREBY ORDERED that the above said matter is scheduled as follows:

- **Defendant's Pre-Trial Motions** to be filed by the 15th day of August, 2018.
- **Plaintiff's Response to Motions** to be filed by the 7th day of September, 2018.
- **Defendant's Reply to Response** to be filed by the 21st day of September, 2018.
- **A Motions Hearing** is set to be held on the 3rd day of October, 2018 at 1:00 P.M. in the Clifford P. Hansen courthouse at 145 E Simpson Ave., Jackson.
- **Witness and Exhibit Lists** to be filed by the 17th day of October, 2018
- **Objections to Witness and Exhibit Lists** to be filed by the 22nd day of October, 2018
- **A Bench Trial** is set to be held on the 30th day of October, 2018 at 9:00 A.M. in the Clifford P. Hansen courthouse at 145 E Simpson Ave., Jackson.

Dated this _9th_ day of _August_, 2018.

_Melissa M. Owens_
Melissa M. Owens
Municipal Judge

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this _9th_ day of _August_, 20_18_, a true and correct copy of the foregoing was served upon the following counsel of record by placing the same in the service indicated and addressed as follows:

**Defendant's Attorney:**
Seth "Turtle" Johnson
PO Box 1309
Saratoga, WY 82331
Turtle@slowandsteadylaw.com

**Assistant Town Attorney:**
Lea Colasuonno
PO Box 1687
Jackson, WY 83001
Lcolasuonno@jacksonwy.gov

Sent via: _Email_

Sent on: _8/9/18_

Sent via: _Email_

Sent on: _8/9/18_

_Jessica Chitwood, Clerk of Court_

000032

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, STATE OF WYOMING
MELISSA M. OWENS, MUNICIPAL COURT JUDGE

**FILED**
**MUNICIPAL COURT**
**TOWN OF JACKSON**
Received by. _Email_
Date. _8/15/18_

| | |
|---|---|
| THE STATE OF WYOMING, TOWN OF JACKSON, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case # 18 – 03 – 0226 ) |
| WILLIAM FREY, | ) ) |
| Defendant, | ) ) |

---

## THIRD DEMAND FOR EVIDENCE, MOTION TO COMPEL THE PRODUCTION OF BRADY MATERIAL

---

**COMES NOW**, Defendant, William Frey, by and through his attorney, Seth "Turtle" Johnson, of the Slow and Steady Law Office, PLLC, does hereby respectfully submit this *Third Demand for Evidence*; specifically, move to compel the timely production of all documents or information relating to guilt or punishment which might be reasonably considered favorable to the defendants' case. This production is required by Brady v. Maryland, 373 U.S. 83 (1963), and subsequent cases.

**FURTHER**, Defendant demands the specific text of any written statement, Airport policy, or TSA policy describing any "security system, measure, or procedure implemented at the Airport" which is potentially relevant to this litigation. Include the text of any such procedure which, was allegedly violated by the Defendant, did not allow the Defendant to be rescreened, required the Defendant to submit to a pat-down search, or prohibited the Defendant from leaving the airport without consenting to a pat-down;

**FURTHER**, Defendant demands the text of TSA's Standard Operating Procedures which were allegedly violated by the Defendant. Include the text of any such procedure which, was allegedly violated by the Defendant, did not allow the Defendant to be rescreened, required the Defendant to submit to a pat-down search, or prohibited the Defendant from leaving the airport without consenting to a pat-down;

**FURTHER**, If the State alleges that the relevant "security system, measure, or procedure implemented at the Airport" was not based on written procedures or policies, provide a plain statement of the policy and any evidence supporting the existence of such a policy.

**FURTHER**, Defendant demands any and all, criminal history, disciplinary records, and employment records of Officer Karnes and any TSA screeners who may appear as witnesses for the State.

**FURTHER**, Defendant demands that the State produce and provide notice of its intention to use any evidence which may be discoverable under Wyo. R. Crim. P. 12(e)(2).

**RESPCTFULLY SUBMITTED** this 15th day of August, 2018.


Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC
Attorney for Defendant
210 W. Elm Ave
P.O. Box 1309
Saratoga, WY 82331
(307) 399 – 6060 Cell
(307) 326 – 8850 Fax
Turtle@Slowandsteadylaw.com


## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 15th day of August, 2018, the foregoing instrument was served via email; and by depositing a true and accurate copy of the same in the United States mail, postage prepaid, addressed to:

Jackson Municipal Court Prosecuting Attorney's Office
PO Box 1687
Jackson, WY 83001
lcolasuonno@jacksonwy.gov


Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC

Case #18 – 03 – 0226
Third Demand for Evidence
Page 2 of 2

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, STATE OF WYOMING
MELISSA M. OWENS, MUNICIPAL COURT JUDGE

FILED
MUNICIPAL COURT
TOWN OF JACKSON
Received by. _Email_ rc
Date. _8/15/18_

| | | |
|---|---|---|
| THE STATE OF WYOMING, TOWN OF JACKSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Case # 18 – 03 – 0026 |
| WILLIAM FREY, | ) ) | |
| Defendant, | ) | |

## DEFENDANT'S MOTION TO PRODUCE BILL OF PARTICULARS

COMES NOW, the Defendant, by and through his attorney, Seth "Turtle" Johnson of the Slow and Steady Law Office, PLLC, does hereby move this Court pursuant to W.R.Cr.P. 3(f), and respectfully demands the State of Wyoming via the Town of Jackson to file a Bill of Particulars.

Defendant says that said citation/complaint is vague, indefinite, uncertain and insufficient in general terms and conclusions; that Defendant is unable from a reading of said citation/complaint to reasonably know the nature and cause of the charge; Defendant is unable to prepare an intelligent defense thereto; and in order that this Defendant may be fairly informed of what the State of Wyoming via the Town of Jackson claims and with what crime, if any defendant is charged, and so that this Defendant's constitutional rights will be protected, the Town of Jackson's attorney should be required to particularize as follows:

1. Identify the specific ordinance and subpart under which the Defendant is charged;
2. Identify the specific prohibited conduct that the Defendant is alleged to have engaged in under the terms of the relevant ordinance;
3. If the Defendant is charged under JMC12.16.170(A) identify the specific criminal acts the Defendant is accused of. Specifically, state which of the following acts the Defendant engaged in: "tamper or interfere with, compromise, modify, or attempt to circumvent;"
4. If the Defendant is charged under JMC12.16.170(A) identify the specific "security system, measure, or procedure implemented at the Airport" which you allege the Defendant violated (i.e. engaged in conduct described in item 3 above);

5. Identify and produce the written policies which describe any "security system, measure, or procedure implemented at the Airport" relevant to this case; and

6. Identify the specific acts, conduct, methods or means by which the crime is alleged to have been committed.

The Defendant states that the citation/complaint is vague and indefinite. Further, the citation/complaint does not reasonably inform the Defendant of the nature of the charge. The Town of Jackson is in or should be in possession of all of the information sought by the Defendant in regard to the nature of the charge against him. In addition, the information requested above is material to the Defendant's ability to present a defense at trial. Lastly, failure to order the Town of Jackson to furnish the Defendant with a Bill of Particulars containing such information would subject him to unfair surprise at trial, and would prevent the Defendant from pleading Double Jeopardy if he is later charged with the same offense as the citation/complaint is too vague. "A bill of particulars is designed to make more specific the general allegations in the citation/complaint to enable the defendant to prepare his defense and avoid being surprised at the trial." Booth v. State 517 P.2d 1034 (Wyo. 1974). Discretion to order a Bill of Particulars is soundly within the authority of this Honorable Court.


William Frey
Defendant


By:     _____
Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC
Attorney for Plaintiff
210 W. Elm Avenue
P.O. Box 1309
Saratoga, WY 82331
Turtle@SlowandSteadyLaw.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 15th day of August, 2018, the foregoing instrument was served via email; and by depositing a true and accurate copy of the same in the United States mail, postage prepaid, addressed to:

Jackson Municipal Court Prosecuting Attorney's Office
PO Box 1687
Jackson, WY 83001
lcolasuonno@jacksonwy.gov

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, STATE OF WYOMING
MELISSA M. OWENS, MUNICIPAL COURT JUDGE

**FILED**
MUNICIPAL COURT
TOWN OF JACKSON
Received by. _X_ -email
Date. _8/15/18_

|  |  |  |
|---|---|---|
| THE STATE OF WYOMING, TOWN OF JACKSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case # 18 – 03 – 0026 |
| WILLIAM FREY, | ) ) | |
| Defendant, | ) ) | |

---

## MEMORANDUM BRIEF IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS

---

### I.     INTRODUCTION

"Those who would give up essential Liberty, to purchase a little temporary Safety, deserve neither Liberty nor Safety." *Benjamin Franklin 1755, on behalf of the Pennsylvania Assembly to the colonial governor*. The Jackson Town Ordinance (JMC 12.16.170(A)) under which the Defendant, William Frey, has been charged demonstrates the Town's willingness to sacrifice fundamental liberties in exchange for the mere illusion of security. In an overzealous attempt to provide support to agents of the Transportation Security Administration (TSA) operating in the Jackson Hole Airport, agents of the Jackson Police Department and the State have arrested and charged the Defendant with violating unpublished and undisclosed provisions of the TSA's Standard Operating Procedures.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "These words are precise and clear. They reflect the determination of those who wrote the Bill of Rights that the people of this new Nation should forever 'be secure in their persons, houses, papers, and effects'

from intrusion and seizure by officers acting under the unbridled authority of a general warrant. Vivid in the memory of the newly independent Americans were those general warrants known as writs of assistance under which officers of the Crown had so bedeviled the colonists. The hated writs of assistance had given customs officials blanket authority to search where they pleased for goods imported in violation of the British tax laws. They were denounced by James Otis as 'the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book,' because they placed 'the liberty of every man in the hands of every petty officer.' The historic occasion of that denunciation, in 1761 at Boston, has been characterized as 'perhaps the most prominent event which inaugurated the resistance of the colonies to the oppressions of the mother country.' 'Then and there,' said John Adams, 'then and there was the first scene of the first act of opposition to the arbitrary claims of Great Britain. Then and there the child Independence was born.' *Stanford v. State of Tex.*, 379 U.S. 476, 481–82, 85 S. Ct. 506, 509–10, 13 L. Ed. 2d 431 (1965). (internal citation omitted).

The TSA, acting under a broad expansion of executive authority following the terrorist attacks of September 11, 2001, operates under Standard Operating Procedures which are not published or made available to the public. Federal regulations permit the TSA to impose civil fines for noncompliance with these secret procedures which have the effect of law.

In this case the Town of Jackson and the State have gone even further than the federal grants of authority to the TSA. The State does not seek to impose civil penalties associated with alleged violations of TSA's unpublished procedures under relevant federal regulations. Instead, the State seeks to impose criminal penalties upon the Defendant for the violation of "airport procedures," which, in this case, are evidently TSA procedures which may not legally be disclosed to the public, Mr. Frey, the State, or even this Court.

Mr. Frey's only "crime" was questioning the legality and prudence of a pat-down search of his groin area which was allegedly required by TSA standard operating procedures after a body-scanner allegedly provided a false positive indicating that Mr. Frey may be concealing weapons or other contraband on his person. The record reveals that TSA personnel and Officer Karnes (the arresting officer) all understood that the Defendant's belt had caused the body-scanner to indicate the need for additional screening. The Defendant, also acting under the belief that his belt had caused the false positive and acting under the knowledge that he was not concealing any

contraband, asked TSA agents (and later Officer Karnes) to use their discretion to rescreen him or allow him to leave the airport instead of subjecting him to a pat-down of his groin (one of the areas of his body which allegedly indicated the need for additional screening).

The Defendant offers this brief in support of his motion to dismiss filed in accordance with Wyo. R. Cr. P. 12(a).

The Defendant, apparently because of his refusal to consent to the invasive pat-down search and because of his repeated assertions that the search violated his rights, was promptly arrested and was detained for several hours, was taken to the Teton County Jail, was harassed and belittled by agents of the Town of Jackson and agents of the Teton County Sheriff's Office, was denied prompt access to an attorney despite repeated interviews conducted by law enforcement, and is threatened by the State with criminal penalties under a Jackson Town Ordinance.

If Americans are not allowed to stand up for their fundamental rights by questioning procedures that cannot legally be made known to them, then we are not living in the land of the free; but the land of the 'free to do as we are told.' The Defendant asks this Court to dismiss the misdemeanor charge against him because, as will be more fully described below, the Officer involved lacked authority to issue a ticket on airport ground or arrest Mr. Frey, Mr. Frey never intended to circumvent any law, Mr. Frey never intended to cause a disturbance of any kind, because the Ordinance is fatally deficient under both the United States and Wyoming constitutions and because Mr. Frey was simply standing up for his Constitutional Rights.

## II.   STATEMENT OF MATERIAL FACTS

1. Mr. William Frey went to the Jackson Hole Airport (JAC or airport) on March 12, 2018. Mr. Frey had a boarding pass for United Airlines 2402 which was traveling to Newark, New Jersey. Mr. Frey intended to travel aboard United Airlines 2402 as a passenger.

2. Mr. Frey voluntarily agreed to enter an AIT body scanner (body scanner). Found in the "Narrative" section of the Probable Cause Affidavit, a copy of which has been filed with this brief and is incorporated here by reference as Defendant's Exhibit E; also stated in ¶ 2 of the Supplemental Narrative of the State, Town of Jackson reports p. 1 of 1, a copy of which has been filed along with this Memo Brief, and is incorporated here by reference as Defendant's Exhibit D.

3. Security screeners claimed that the body scanner indicated that Mr. Frey's groin, upper inner thigh, and the outside of his leg needed additional screening. Found at 00:00:03

through 00:00:16 on Nathan Karnes Body Cam Footage (Defendant's Exhibit A), of which a copy of the video has been submitted for filing along with this Memorandum Brief and is incorporated here by reference; also found in ¶ 2 of p.1 of the Primary Narrative of the Report submitted on behalf of the State, Town of Jackson p. 1 of 4, a copy in its entirety of which has been filed with this Memo Brief, and is incorporated here by reference as Def. exh. C.

4. Before the situation was fully escalated by a further refusal to rescan Mr. Frey, he clearly volunteered to remove his belt and enter the body scanner again. Found at 00:00:16 through 00:00:22 on Def. exh. A; ¶ 2 of p.1 Def. exh C.

5. Mr. Frey was told by security screening personnel that their "SOP" would not allow the agent to "rescreen somebody". Found at 00:00:22 through 00:00:26 on Def. exh. A. ¶ 2 of Def. exh C.

6. Officer Karnes begins his interaction with Mr. Frey by asking his name. Found at 00:00:28/29 on Defendant's Exhibit A.

7. Mr. Frey states to Officer Karnes that if they "won't let me on the plane, then I'm going to leave." Found at 00:00:38 through 00:00:43 on Defendant's Exhibit A.

8. Mr. Frey states to Officer Karnes that he will not "let them feel his balls". Found at 00:01:18/19 on Def. exh A. ¶ 2 of p.1 of Def. exh. C.

9. Officer Karnes tells Mr. Frey that he was required to complete the screening. Found at 00:01:30 through 00:01:34 on Def. exh A, and in ¶ 3 of p.1 of Def. exh. A; and Def. exh. E.

10. Mr. Frey tells Officer Karnes that he is "not completing the screening". Found at 00:01:36 through 00:01:38 on Def. exh. A.

11. Officer Karnes tells Mr. Frey that not completing the screening is a misdemeanor and an "arrestable offense". Found at 00:01:38 through 00:01:40 on Def. exh. A; ¶ #4 of p.1 Def. exh. C.

12. Mr. Frey tells Officer Karnes to "arrest me, then, for not being willing to sexually assaulted". Found at 00:01:40 through 00:01:47 on Defendant's Exhibit A; ¶ 6 of p.1 Def. exh. C.

13. Officer Karnes ordered Mr. Frey to follow him to the back of the screening area where they could continue their conversation without disturbing other passengers or security screening personnel. Found at 00:02:41 through 00:02:43 on Defendant's Exhibit A.

14. Mr. Frey tells Officer Karnes that he is "willing to be rescreened—get rescreened. The issue was the belt buckle." Found at 00:03:32 through 00:03:34 on Defendant's Exhibit A. ¶ 2 of p.1 of Def exh. C.

15. Officer Karnes agrees with Mr. Frey "Yes, the issue was the belt buckle." Found at 00:03:34 through 00:03:37 on Defendant's Exhibit A.

16. Mr. Frey repeatedly offered to leave the airport or to enter the body scanner again as an alternative to a more invasive search. Found throughout the video specifically from 00:01:52 to 00:03:48 on Defendant's Exhibit A; and cited numerous times throughout Defendant's Exhibit C.

17. Approximately two minutes elapsed between the time that Mr. Frey entered the body scanner and the time that Officer Karnes ordered Mr. Frey to the back of the screening area. Defendant's Exhibit A.

18. Officer Karnes informed Mr. Frey that he was under arrest and placed him in handcuffs at approximately 00:04:42 on Defendant's Exhibit A.

19. Officer Karnes, after arresting Mr. Frey, conducted a search of his person which was more invasive than the one Mr. Frey was required to submit to for security screening purposes. Officer Karnes's search of Mr. Frey's person included a physical pat down search of Mr. Frey's groin, upper inner thigh, and the outside of his leg. Officer Karnes paid special attention to the areas indicated by the body scanner and searched Mr. Frey for any foreign objects or suspicious items. Found at 00:04:55 through 00:05:39 of Def. exh. A; and ¶ 2 of p.2 of Def. exh. C.

20. Officer Karnes did not find any foreign objects or suspicious items on Mr. Frey's person. Found at 00:07:08 through 00:07:14 on Defendant's Exhibit A; and ¶ 2 of p.2 of Def. exh. C.

21. After affecting the arrest Officer Karnes proceeds to move Mr. Frey to a temporary holding area, at which points he employs a wrist lock on Mr. Frey. Found at 07:41 on Defendant's Exhibit A; and ¶ 2 p.2 of Def. exh. C.

22. Mr. Frey was transported to the Teton County Sheriff's Office Jail. Shown on Defendant's Exhibit B, a copy of the entire video has been filed with Memo Brief, and is hereby incorporated by reference.

23. Mr. Frey was on multiple occasions denied access to his attorney. His first request was made at 00:09:47 on Defendant's Exhibit A; his second request for a lawyer was made at 00:11:58 on Defendant's Exhibit A, and a third request for an attorney was made at 00:21:20 on Defendant's Exhibit A; when Bill asked to contact John Wiley, a local attorney.

24. Several hours after his arrest Mr. Frey was booked and given a citation for his alleged violation of JMC 12.16.170(B) – Airport: Compliance with security requirements. Shown in ¶ 4 of p.2 of Def exh. C.

25. The Citation/Complaint lists only a violation of JMC 12.16.170(A). The notes on the citation read as follows: "(A) FAILED TO COMPLETE SCREENING PROCESS AS ALLOWED BY AIRPORT SCREENERS". A copy of the Citation/Complaint has been filed with this Memo Brief, and is incorporated here by reference as Def. exh F.

26. TSA procedures allow rescreening under certain circumstances. Based on statements made to him during the screening process, Mr. Frey believed that the alerts on the machine were caused by his belt buckle and also believed TSA agents had the discretion to allow him to be rescreened. ¶ 6 of p.3 of Def. exh. C.

27. Despite discovery requests no signs/evidence has been produced by Plaintiff to show that the Defendant was on Notice that by entering the Body Scanner, he was forfeiting his right to refuse a more invasive search.

28. Mr. Frey believed that he could be rescreened, or had the option to leave the airport instead of consenting to what he amounted to "sexual assault". 00:01:40 of Def. exh. A.

### III.   LEGAL STANDARDS

The Defendant challenges the sufficiency of the evidence, the Wyoming Supreme Court has recently described the relevant standard of review: "We do not consider whether or not the evidence was sufficient to establish guilt beyond a reasonable doubt, but instead whether or not the evidence could reasonably support such a finding by the factfinder." Thompson v. State, 2018 WY 3, ¶ 14, 408 P.3d 756, 760 (Wyo. 2018) (internal citations omitted). While

the factual conclusions of the trial court are reviewed by appellate courts for abuse of discretion, legal analysis and legal conclusions are reviewed de novo. Maestas v. State, 2018 WY 47, ¶ 7, 416 P.3d 777, 780 (Wyo. 2018).

## IV.    ARGUMENT

The complaint alleges that Mr. Frey violated JMC 12.16.170(A) – Airport: Compliance with security requirements. "No Person shall tamper or interfere with, compromise, modify, or attempt to circumvent any security system, measure, or procedure implemented at the Airport." Based on the plain and ordinary meaning of the ordinance, the elements of that offense are:

**Elements of the Crime That the State Must Prove**

1.  That a person:

    a.  Tampered or interfered with,

    b.  compromised,

    c.  modified,

    d.  or attempted to circumvent

    any security system, measure, or procedure implemented at the Airport.

2.  That the particular security system, measure, or procedure was in fact implemented at the Airport at the time of the Offense.

3.  That a security system, measure, or procedure implemented at the Airport was interfered with, compromised, modified, or circumvented (or attempted to circumvent).

### A.  JMC 12.16.170(A) Violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution

#### i.    JMC 12.16.170(A) Is Based Upon a Similar Federal Regulation.

The text of JMC 12.16.170(A) ("Ordinance") is essentially identical to a federal regulation.

**The Ordinance:**

**12.16.170 Compliance with security requirements.**

A.  No Person shall tamper or interfere with, compromise, modify, or attempt to circumvent any security system, measure, or procedure implemented at the Airport.

B.  No Person shall enter or be present in a Restricted Area without complying with the systems, measures, procedures, screening and/or inspection being applied to control access to or presence in such areas.

C.  No Person shall use or allow any other person to use or cause to be used any Airport Board issued or approved access medium or identification medium in any manner other than that for which it was authorized and issued.

D.  This section does not apply to authorized Person performing such tests of compliance as may be otherwise authorized by ordinance, statute, or applicable laws and federal regulations.  (Ord. 923 § 2, 2009.)

**The Regulation:**

·**49 C.F.R. § 1540.105**

**§ 1540.105 Security responsibilities of employees and other persons.**

(a) No person may:

(1) Tamper or interfere with, compromise, modify, attempt to circumvent, or cause a person to tamper or interfere with, compromise, modify, or attempt to circumvent any security system, measure, or procedure implemented under this subchapter.

(2) Enter, or be present within, a secured area, AOA, SIDA or sterile area without complying with the systems, measures, or procedures being applied to control access to, or presence or movement in, such areas.

(3) Use, allow to be used, or cause to be used, any airport-issued or airport-approved access medium or identification medium that authorizes the access, presence, or movement of persons or vehicles in secured areas, AOA's, or SIDA's in any other manner than that for which it was issued by the appropriate authority under this subchapter.

(b) The provisions of paragraph (a) of this section do not apply to conducting inspections or tests to determine compliance with this part or 49 U.S.C. Subtitle VII authorized by:

(1) TSA, or

(2) The airport operator, aircraft operator, or foreign air carrier, when acting in accordance with the procedures described in a security program approved by TSA.

    ii.  **The Ordinance (JMC 12.16.170(A)) and the regulation it is based on (49 C.F.R. § 1540.105) both impose penalties for violations of the TSA's unpublished "Standard Operating Procedures."**

The Transportation Security Administration (TSA) operates the Office of Security Operations (OSO) which "issues and revises a manual captioned Standard Operating Procedures ("SOP") which sets out a uniform policy [regarding airport security checkpoints.]" Rao v. United States, No. CIV. A. 08-12027-MBB, 2010 WL 3607143, at *6 (D. Mass. Sept. 9, 2010). "The Congress generally has left it to the agency to prescribe the details of the screening process, which the TSA has documented in a set of Standard Operating Procedures not available to the public." Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 653 F.3d 1, 3 (D.C. Cir. 2011). "The TSA uses the Standard Operating Procedures ["SOP"], filed here under seal, as a guide for its employees to properly screen passengers, carry-on luggage, and checked baggage, while making sure to provide an orderly process and a safe environment for the public." Pudeler v. United States, No. 3:09 CV 1543 JGM, 2013 WL 6511937, at *6 (D. Conn. Dec. 12, 2013).

Based upon the evidence presented by the State it is clear that Mr. Frey has been arrested based on an alleged failure to comply with the TSA's standard operating procedures (SOP). Mr. Frey allegedly interfered with "security system, measure, or procedure implemented at the Airport" JMC 12.16.170 by failing to consent to a pat down of his groin area after a body scanner allegedly indicated the need for further screening. ¶ 3, & 9 of Sec. II. Statement of Material Facts (SMF). The requirement for further screening (i.e. a pat-down) under the circumstances was clearly governed by TSA's SOP for checkpoints. Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 653 F.3d 1, 3 (D.C. Cir. 2011). Mr. Frey requested rescreening (through use of the body scanner) without his belt, however this was denied based on the claim that according to the SOP rescreening was not allowed under the circumstances. SMF ¶ 4, 5, 14, 16 & 26. Mr. Frey also requested to be allowed to leave the airport as an alternative to an invasive pat down, this course of action also allegedly violated TSA's SOP. SMF ¶ 7, & 16.

> ### iii. The Ordinance (JMC 12.16.170(A)) violates due process under the Fourteenth Amendment to the United States Constitution and under Article 1 Section 6 of the Wyoming Constitution and is void for vagueness; the Ordinance imposes criminal penalties and provides TSA and other law enforcement officials with unbridled discretion.

In Gilmore v. Gonzales, 435 F.3d 1125 (9th Cir. 2006) the Plaintiff, an airline passenger, appealed from the dismissal of his claims challenging the constitutionality of various TSA Security Directives. The 9th circuit found that the District court lacked jurisdiction but that 49

U.S.C.A. § 46110 gave the 9th Circuit jurisdiction over the passenger's claims.  The passenger claimed that Security Directives which required individuals to present identification or undergo a more invasive "selectee" search violated due process. Id.435 F.3d 1125, 1135 (9th Cir. 2006).

The 9th Circuit found that the Security Directive or "identification policy" was not void-for-vagueness in part because it was not a penal statute and only prevented the passenger from boarding commercial flights.

> In support of his vagueness challenge, Gilmore relies principally on *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), in which the Supreme Court held that a California statute was unconstitutionally vague because it did not clarify the requirement that a person who loiters or wanders on the street provide "credible and reliable" identification when requested by a peace officer. Although the statute was struck down because it was unconstitutionally vague, *Kolender* is easily distinguishable from the present case. The statute in *Kolender,* California Penal Code § 647(e), was penal in nature. In applying the void-for-vagueness doctrine to the statute, the Supreme Court stated that this doctrine "requires that a *penal statute* define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender,* 461 U.S. at 357, 103 S.Ct. 1855 (emphasis added). Unlike the penal statute in *Kolender,* the identification policy here does not impose any criminal sanctions, or threats of prosecution, on those who do not comply. Rather, it simply prevents them from boarding commercial flights. Gilmore v. Gonzales, 435 F.3d 1125, 1135 (9th Cir. 2006).

In contrast to the Security Directive in *Gilmore,* which was not penal and only permitted individuals from being barred from boarding commercial flights, the Ordinance at issue in this case is clearly penal in nature. The Ordinance imposes a fine up to $750.00. JMC 12.16.170. Furthermore, Mr. Frey was arrested and held in jail for a period of two hours and 10 minutes based on his alleged violation of the Ordinance.  SMF ¶ 18.

Furthermore, Mr. Frey is being prosecuted under the Ordinance on the basis of his alleged violation of the TSA's Standard Operating Procedures. Similar to the Security Directive in *Gilmore,* the SOP are not available to the public because they are "classified as "sensitive security information"" Gilmore v. Gonzales, 435 F.3d 1125, 1131 (9th Cir. 2006). The 9th Circuit "ordered the Government to file under seal the relevant material pertaining to the identification policy so that we could conduct an *in camera, ex parte* review." Gilmore v. Gonzales, 435 F.3d 1125, 1131 (9th Cir. 2006). In order to review the airport procedures which Mr. Frey allegedly violated, it would be necessary for this Court to review the TSA SOP in order to determine

whether Mr. Frey actually interfered with or violated a "security system, measure, or procedure implemented at the Airport" JMC 12.16.170.

As currently drafted, the Ordinance vests law enforcement officials with unbridled discretion in violation of the Fourteenth Amendment. There is no meaningful way for this Court to review the Standard Operating Procedures which were supposedly violated by Mr. Frey. Furthermore, even the arresting officer was denied direct access to the relevant SOP.  SMF ¶ 5. The prosecutor, this Court, Mr. Frey, and even the arresting officer are all denied access to the written procedures which Mr. Frey supposedly violated or interfered with; unlike the situation in Gilmore, this court cannot review the relevant procedures to determine whether the SOP provides adequate instructions for the implementation of the body scanner/pat-down policy.

> Gilmore also alleges that the Government violated his due process rights because the identification policy vests airline security personnel with unbridled discretion. Upon review of the TSA Security Directive, we hold that the Directive articulates clear standards. It notifies airline security personnel of the identification requirement and gives them detailed instructions on how to implement the policy. Moreover, because all passengers must comply with the identification policy, the policy does not raise concerns of arbitrary application. For all these reasons, we reject Gilmore's due process arguments. Gilmore v. Gonzales, 435 F.3d 1125, 1136 (9th Cir. 2006).

As currently drafted, the Ordinance gives Jackson law enforcement and prosecutors unbridled discretion to arrest citizens and impose criminal penalties any time any TSA agent states that the citizens behavior violates the unpublished SOP. The relevant TSA procedures evidently provide for at least two circumstances under which individuals can be rescreened by the body scanner.  SMF ¶ 26.  Because the SOP are unpublished, this Court is left with no means to determine whether those criteria provide detailed instructions on how to implement the policy or whether those criteria raise the concern of arbitrary application. Id.

Based on allegations made in various federal complaints challenging TSA's body scanner and pat-down procedures under the Fourth Amendment, it is clear that at least in some cases TSA agents permit individuals to leave the airport without screening after those individuals refuse to participate in a pat-down or body scan:

> Roberts is a pilot for ExpressJet Airlines. On October 15, 2010, Roberts was asked to enter an AIT scanner at the security checkpoint at Memphis International Airport. Am. Compl. ¶ 25. After he declined, TSA agents informed Roberts that he would have to undergo a pat-down. Am. Compl. ¶¶ 28–29. After Roberts refused the pat-down, airport police were summoned and Roberts was

told to leave, preventing him from making his scheduled flight. Am. Compl. ¶ 30. Because of his refusal to submit to what he sees as unduly intrusive screening procedures, Roberts is now on unpaid administrative leave. Am. Compl. ¶ 32.

Poe is a pilot for Continental Airlines. On November 4, 2010, Poe passed through the security checkpoint at Fort Lauderdale–Hollywood International Airport. Poe, who has an artificial hip, triggered the walk-through metal detector. Am. Compl. ¶ 38. TSA officials then informed Poe that she would have to either undergo a pat-down or walk through an AIT scanner. Am. Compl. ¶¶ 40–43. Poe, concerned about her privacy and the radiation produced by AIT scanners, refused. Poe was then escorted out of the airport. Am. Compl. ¶ 47. Poe's refusal to submit to TSA's screening procedures has prevented her from flying since that time. Am. Compl. ¶ 50.

Roberts v. Napolitano, 798 F. Supp. 2d 7, 9 (D.D.C. 2011), aff'd, 463 F. App'x 4 (D.C. Cir. 2012)

Based on the allegations in Roberts and in other cases decided around the time the body scanner was first brought into use by the TSA it is clear that TSA agents exercise considerable discretion and often permit individuals to leave the airport without completing the screening procedures, even after (like Mr. Frey) they have gone through the body scanner and refused to consent to a pat-down. SMF ¶ 3, 8, 10, 11, 12, & 16. Based on the foregoing, the Ordinance is void for vagueness. It does not give the public fair notice of what is prohibited. The Ordinance, by mirroring the language of TSA regulations and by its terms, implicitly incorporates provisions of the TSA's Standard Operating Procedures which the Prosecution claims Mr. Frey has violated.

Based on the above, the Ordinance, as applied to Mr. Frey, does not provide fair notice of what is and what is not prohibited by the Ordinance; the Ordinance also provides no guidelines to Jackson police officers regarding what is and is not a proper "airport procedure" and grants TSA agents and/or Jackson police officers unbridled discretion:

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Although the doctrine focuses both on actual notice to citizens and arbitrary

enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine — the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith, supra,* 415 U.S. at 574, 94 S.Ct., at 1247–1248. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.,* at 575, 94 S.Ct., at 1248. Kolender v. Lawson, 461 U.S. 352, 357–58, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903 (1983).

The Ordinance as written did not provide the Defendant with notice of what conduct did or did not violate the ordinance. The Defendant lacked actual notice of the relevant Airport procedure which he supposedly violated. The Defendant also was denied the ability to leave the airport without a pat-down search based on unwritten procedures which the arresting officer had never seen, evidently without the guidelines or the text of the relevant procedures. SMF ¶ 7, & 16. Based upon the denial of access to the text of the relevant airport procedures and the arbitrary application of those procedures to the Defendant, the Ordinance violates Due Process and is unconstitutionally vague.

> Plainly, it would be unconstitutional to punish Defendant for violating the handheld cellphone regulation. Ms. Washabaugh cites to the Supreme Court's vagueness decision in *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) for the proposition that laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* at 108. If vague laws are unconstitutional, *a fortiori* secret laws violate very basic considerations of due process. United States v. Washabaugh, No. 3:07-PO-253, 2008 WL 203012, at *1 (S.D. Ohio Jan. 22, 2008).

The Due process provision of the Wyoming Constitution, Wyo. Const. art. I, § 6 provides more extensive protections than the Fourteenth Amendment. (See Brenner v. City of Casper, 723 P.2d 558, 561 (Wyo. 1986); finding a more extensive right to a Jury trial under the Wyoming Constitution.). Wyo. Const. art. I, § 6 is implicated where a fundamental right has been infringed by the state:

> We do not need to agree or disagree with the district court's conclusion, because we find a more fundamental flaw in the Coalition's due process claim. As stated above, a party claiming an infringement of his due process rights must demonstrate both a protected interest and an impermissible infringement on that interest. *DH,* ¶ 38, 79 P.3d at 1008. The Coalition has not demonstrated any infringement because it has not shown, or even alleged, that any of its members has sought and been denied judicial review of any decision made by the

Superintendent pursuant to the Policy. The Coalition's speculation that judicial review might be denied in the future is insufficient to support a due process claim now. "Constitutional questions are too important to be answered by this court at random and should not be answered unless fully presented." *Meyer v. Norman*, 780 P.2d 283, 289 (Wyo.1989), quoting *Witzenburger v. State, ex rel. Wyoming Community Development Authority*, 575 P.2d 1100, 1134 (Wyo.1978) and *Tharp v. Unemployment Compensation Comm'n*, 57 Wyo. 486, 502, 121 P.2d 172, 178 (1942). Until this Court is presented with a case in which judicial review has been denied, it is premature to consider the Coalition's claim that the Policy violates due process. The district court did not err in granting summary judgment against the Coalition on this claim.

Hageman v. Goshen Cty. Sch. Dist. No. 1, 2011 WY 91, ¶ 62, 256 P.3d 487, 505 (Wyo. 2011).

Based on the above analysis, and based on the facts and analysis more fully stated above, the Defendant contends that his arrest, prosecution, and citation based on airport procedures which he cannot access and which are Unconstitutionally Vague violates the Defendant's right to procedural and substantive Due Process under the Wyoming Constitution (also see the arguments and authorities cited in subsection iv. below).  SMF ¶ 5, & 26.

> iv.     **The Ordinance (JMC 12.16.170(A)) violates due process under the Fourteenth Amendment to the United States Constitution and under Article 1 Section 6 of the Wyoming Constitution and is void for vagueness because by its terms it lacks a requirement of criminal intent.**

In State v. Stern, 526 P.2d 344 (Wyo. 1974) the Sheridan County Attorney appealed from the district court's order granting the criminal defendant's (Stern's) motion to dismiss the information filed in district court which charged that Stern had violated a criminal breaking and entering statute. Id. at 346.

Motion to dismiss the information was filed by defendant claiming that the statute violated the due process clause of the United States Constitution and Article 1, s 6 of the Wyoming Constitution because:

'(a) The statute's meaning is so uncertain, indefinite and vague that it fails to give fair warning of the conduct which it prohibits and

'(b) The statute is outside the scope of the state's police power because it makes innocent acts criminal even though the acts do not interfere with or threaten the public health, safety, morals or welfare.' Id. at 346.

Based on the briefing of the parties and the apparent lack of clarity with respect to the constitutional basis for the district court's order, the Court confined its opinion to the issue of vagueness under the due process clause of Article 1 Section 6 of the Wyoming Constitution and of the Fourteenth Amendment to the United States Constitution. "We gather from the record that the district judge was principally impressed with the argument that the statute was unconstitutionally vague under the sixth section of our Article 1 and the fourteenth amendment to the federal constitution. Both briefs submitted herein argue the applicability of the two due process clauses. We shall therefore similarly confine this opinion." Id. at 346.

"As amended by Ch. 143, S.L. of Wyoming 1973, the statute provides in pertinent part that '(w)hoever, at any time, unlawfully break and enters, or attempts to unlawfully break and enter, into any locked or sealed dwelling house, office * * * or other building whatsoever, is guilty of a misdemeanor, and shall be imprisoned in the county jail not more than one year or a fine of not more than $500 or both.'" State v. Stern, 526 P.2d 344, 346 (Wyo. 1974).

The Court, finding that the breaking and entering statute did not include the element of specific intent, went on to reason that judicially establishing a general intent where no such intent was described by the statute would capture a significant amount of innocent conduct.

> Having concluded that such specific intent was deliberately omitted, we must next inquire to what extent we are justified in interpreting the statute as requiring some other, or general, evil intent. Stern suggests that the statute condemns not only the intentional breaking and entry of the building but also the accidental breaking and entry by a friendly visitor who gives his neighbor's door a tug sufficient to break a lightly locked door; that it makes a criminal of one occupying a motel who attempts to unlock the wrong door; that the purposeful but innocent act of breaking and entry by a worried neighbor who has not seen his friend for some time and fears he may be sick or unable to take care of himself will constitute a crime. We cannot reject these suggestions as frivolous and must agree that we could declare such acts as innocent and outside the provisions of the law only if we engage in a substantial amount of interpretation or construction of the law.

> State v. Stern, 526 P.2d 344, 348 (Wyo. 1974).

The Court found that, because the undisputed facts revealed that Stern broke into a building abutting a bar while inebriated and fell asleep, but there was no indication of the physical breaking of any lock or destruction of any barrier, that Stern, as someone who did not appear to have the specific intent to commit any theft crime, had standing to raise a vagueness challenge.

More specifically considering the situation confronting Stern, no trial was had and no record was made as to the facts of this so-called breaking and entry. However, colloquy of counsel and the court shown in the record discloses without dispute that the defendant was found asleep and in an apparent state of intoxication in the office claimed to have been broken and entered. There was no indication of a physical breaking of any lock or destruction of any barrier designed to prevent entry by unauthorized persons. Testimony at the preliminary hearing had indicated that while the main entrance door was locked a secondary door, located in close proximity to a neighboring bar or saloon, may or may not have been locked. Perhaps the defendant entered the office thinking that he was entering the bar, and was then overcome by his inebriation. Conceivably the door was locked but gave way to the extra force exerted by one eager to return to his pursuit of this popular indoor sport. This particular defendant is then confronted with the question whether the statute applies to this conduct. The majority of the Court therefore have no hesitancy in holding that he is in a position to raise the question of vagueness.

State v. Stern, 526 P.2d 344, 348–49 (Wyo. 1974).

The Court went on to refuse to judicially create the intent element or find that the statute was a strict liability statute; finding that the legislature had not met its burden to clearly define its criminal statute.

We have said in State ex rel. Murane v. Jack (1937), 52 Wyo. 173, 70 P.2d 888, 892, that the legislative intent governs and that 'intent must be ascertained by reading it (the statute) according to the natural import of the language used without resorting to subtle and forced construction.' Were we to attempt to construe this statute as requiring intent, scienter, or mens rea, the immediate question is what intent we should read into it. If it is the intent to steal or commit a felony, we have merely rephrased s 6-129. Would it be the intent to invade the privacy of the occupants? If the building is unoccupied, would the intent to satisfy one's curiosity and just look around constitute a legal excuse? If the breaking and entry were into a mountain cabin, effected with knowledge that the building belonged to another, and after physically destroying the sturdiest locks would it be excused if the only purpose was to secure shelter from a raging blizzard? Other questions may occur to the reader, but the point is that if able counsel and this Court must argue about questions as to what kind of conduct is proscribed, it certainly follows that men of common intelligence must necessarily grope as to the meaning and would have no understanding at all as to what acts were criminal. A majority of the Court are therefore of the opinion that the burden of construction sought to be imposed on us by the Attorney General and County Attorney is beyond our powers and that if there is to be created a criminal offense, be it a felony or misdemeanor, based on the mere breaking and entering a locked or sealed building whatever the reason therefor, the burden of defining accurately and understandably the condemned conduct should be left to the legislature. As of

now the legislature has not met that burden.

State v. Stern, 526 P.2d 344, 351–52 (Wyo. 1974).

Similar to the statute in Stern, the Ordinance under which Mr. Frey is charged clearly prohibits a large amount of innocent conduct. Beyond the ambiguity, vagueness, and lack of notice encompassed by the State's arrest of Mr. Frey on the basis of his alleged violation of interference with TSA's unpublished Standard Operating Procedures; a plain reading of the ordinance also does not include any requirement of criminal intent. "No Person shall tamper or interfere with, compromise, modify, or attempt to circumvent any security system, measure, or procedure implemented at the Airport." Individuals such as Mr. Frey are left to wonder whether "tamper or interfere with, compromise, modify, or attempt to circumvent" requires the specific intent to flout airport security, the general intent to take actions which have the effect of creating some level of interference, or requires no level of intent and lays out a strict liability crime.

Does the Ordinance prohibit only specific intent interference with airport procedures such as: intentionally concealing liquids or other prohibited items on a passenger's person; intentionally disrupting or distracting security screening personnel with the intent to delay or disrupt security screening; or attempting to avoid security screening by secretly entering a secured area through an exit?

Does the Ordinance prohibit any intentional conduct which may have the effect of interfering with airport procedures (i.e. general intent): intentionally discussing basketball with an airport screener, distracting them from their duties and holding up the line; intentionally bringing an exceptionally large or heavy carry-on bag which complicates the TSA's search of luggage; or asking the TSA screener questions about the screening procedures including the safety of the body-scanner or the invasiveness of the pat-down search?

Does the Ordinance prohibit any conduct which has the effect of creating an interference with procedures (i.e. strict liability) such as: fainting in a body scanner, causing a commotion and delay; having a metal hip replacement set off a metal detector requiring additional screening; having an insulin pump which sets off the body scanner and requires additional screening, causing a delay; or tripping and falling into a TSA security officer, causing injuries.

Ordinary people are left to guess at the actual meaning of the Ordinance. Not only are the procedures which Mr. Frey allegedly interfered with unavailable to the public, they are also

unavailable to the State and this Court. Furthermore, a plain reading of the Ordinance itself does not indicate any clear level of intent. Because the Ordinance reaches a large amount of innocent conduct, and because the undisputed facts reveal that (at minimum) the Defendant lacked the specific intent to circumvent or interfere with any airport procedures, the Defendant urges this Court to dismiss the charge against him in accordance with <u>Stern</u>.

The construction provisions of the Town of Jackson's municipal code serve to further complicate the intent question:

**1.04.030 Prohibited acts include causing and permitting.**

Whenever in the ordinances of the Town of Jackson, any act or omission is made unlawful, it shall include causing, allowing, permitting, aiding, abetting, suffering, or concealing the fact of such act or omission. (Ord. 158 § 3, 1973.)

The Court in <u>Stern</u> found that "penal statutes are to be strictly construed" State v. Stern, 526 P.2d 344, 347 (Wyo. 1974). "Causing" an interference with airport procedures (which as explained above are unpublished) does not create a clear level of intent and has the potential to punish a wide range of innocent conduct. Based on a plain reading of the Ordinance in light of the construction ordinance, any acts, even involuntary acts, that cause a distraction for TSA personnel, or that delay security procedures, may be read to violate the Ordinance.

**B. JMC 12.16.170(A) Violates the First and Fourteenth Amendments to the United States Constitution Because it is Overbroad and Because Mr. Frey's Prosecution was Motivated by Protected Speech.**

Based on the facts more fully described above, the Defendant was arrested for questioning the legality of the search procedures used by the Defendants. The plain wording of the ordinance, which as described above does not include any intent requirement, allows the prosecution of individuals for any speech which has the tendency to offend or distract security personnel from the performance of their duties. The complete lack of articulable standards which give the public notice regarding which conduct violates the relevant Airport procedures, combined with the apparent arrest of individuals such as the Defendant who clearly lack the specific intent to circumvent any airport procedures based on their refusal to provide audible consent to a search of their person, clearly implicate Free Speech concerns.

A municipal ordinance that makes it unlawful to interrupt a police officer in the performance of his duty is substantially overbroad and therefore invalid on its face under the First Amendment. The ordinance in question criminalizes a

substantial amount of, and is susceptible of regular application to, constitutionally protected speech, and accords the police unconstitutional enforcement discretion, as is demonstrated by evidence indicating that, although the ordinance's plain language is violated scores of times daily, only those individuals chosen by police in their unguided discretion are arrested. Appellant's argument that the ordinance is not substantially overbroad because it does not inhibit the exposition of ideas, but simply bans unprotected "core criminal conduct," is not persuasive. Since the ordinance's language making it unlawful to "assault" or "strike" a police officer is expressly pre-empted by the State Penal Code, its enforceable portion prohibits verbal interruptions of police and thereby deals with speech rather than with core criminal conduct. Moreover, although speech might be prohibited if it consists of "fighting words" that by their very utterance inflict injury or tend to incite an immediate breach of the peace, the ordinance in question is not limited to such expressions but broadly applies to speech that "in any manner ... interrupt[s] any policeman" and thereby impermissibly infringes the constitutionally protected freedom of individuals verbally to oppose or challenge police action. Appellant's contention that the ordinance's sweeping nature is both inevitable and essential to maintain public order is also without merit, since the ordinance is not narrowly tailored to prohibit only disorderly conduct or fighting words, but impermissibly provides police with unfettered discretion to arrest individuals for words or conduct that are simply annoying or offensive. Pp. 2508–2512. City of Houston, Tex. v. Hill, 482 U.S. 451, 451–52, 107 S. Ct. 2502, 2504, 96 L. Ed. 2d 398 (1987)

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning.[3] Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.[4] A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.[5] Third, but related, where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,'[6] it 'operates to inhibit the exercise of (those) freedoms.'[7] Uncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked.'

Grayned v. City of Rockford, 408 U.S. 104, 108–09, 92 S. Ct. 2294, 2298–99, 33 L. Ed. 2d 222 (1972)

Based upon the arguments more fully described above, the Public must guess which conduct or speech may be held to violate the Ordinance. Individuals cannot know what

questions, interruptions, or the length of any distraction that may be held to interfere with the work/procedures of TSA personnel.

Furthermore, the sequence of events described more fully above, combined with the citations describing individuals who were in fact permitted to leave airports despite refusing a pat-down supposedly required by TSA's standard operating procedures, raises the question of whether the Defendant was arrested based on a suspected disruption of airport procedures or was arrested in retaliation for his protected speech (specifically his repeated assertions that he did not want his genitals touched and that he believed that touching his genitals without his consent was sexual assault.) SMF ¶ 3, 8, 12, & 19.

At bottom, we are not persuaded by the Appellants' reasonableness argument. The question of reasonableness is a fact-intensive inquiry, going directly to the heart of the case. In Cornelius v. NAACP Legal Defense and Educational Fund, Inc., the Supreme Court held that the "reasonableness of the Government's restriction [in] a nonpublic forum must be assessed in the light of the purpose of the forum and all the surrounding circumstances." 473 U.S. 788, 809, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). Based on Mr. Tobey's complaint, it is unclear whether Appellants' behavior was reasonably motivated by Mr. Tobey's "disruptive" conduct or unreasonably motivated by his protected protest. What is reasonable in this context, therefore, requires greater factual development and is better decided once discovery has been conducted. See Martin, 980 F.2d at 952; DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir.1995) ("[W]here there is a material dispute over what the defendant did ... it may be that the qualified immunity question cannot be resolved without discovery.").

In a similar vein, Appellants maintain that Mr. Tobey cannot plead a First Amendment violation because the alleged misconduct was consistent with a lawful TSA response. Appellants make this claim without pointing to a single regulation or law that permits seizure and arrest for the removal of an outer-layer of clothing or prohibits the display of a peaceful, non-disruptive message of protest.

The relevant TSA regulations state that "no person may interfere with ... [TSA] screening personnel in the performance of their duties," 49 C.F.R. § 1540.109; and "[n]o person may ... attempt to circumvent ... any security system, measure, or procedure," 49 C.F.R. § 1540.105. Based on the facts alleged in his complaint, Mr. Tobey violated neither of these regulations. Although Appellants repeatedly mention Mr. Tobey's "disruptive" behavior as the impetus for the arrest, Mr. Tobey specifically alleges that he did not circumvent security measures nor did he disrupt the screening process. Mr. Tobey attempted to submit to the enhanced screening procedures. He never violated an express instruction of the Appellants. In a sense, Mr. Tobey aided in Appellants' search for contraband by removing his t-shirt and sweatpants — at this point there were very few places he could have been hiding anything. Mr. Tobey was simply showing Appellants what they

sought to see by using the AIT scanning machine. There is nothing before the Court at the 12(b)(6) phase that indicates Mr. Tobey removing his sweatpants and t-shirt caused any interference, disruption, or delay, in violation of any TSA regulation
Tobey v. Jones, 706 F.3d 379, 389 (4th Cir. 2013).

Mr. Frey's conduct did not substantially disrupt the flow of traffic through the security check point, indicating that his arrest was not motivated by his "disruptive" behavior but actually was motivated by his protected speech.  SMF ¶ 17.

### C. JMC 12.16.170(A) Violates the Fourth Amendment and Fourteenth Amendment to the United States Constitution Because it Provides for the Unlawful Seizure of the person and implicates fundamental liberty interests; the Ordinance also violates Article I Section 4 and 6 of the Wyoming Constitution.

This court has largely adopted the two-tiered scrutiny employed by the federal courts in analyzing substantive due process and equal protection challenges. That is, where a statute affects a fundamental interest or creates an inherently suspect classification, the court must strictly scrutinize that statute to determine if it is necessary to achieve a compelling state interest. However, if the statute only affects ordinary interests in the economic and social welfare area, the court need only determine that it is rationally related to a legitimate state objective. *Troyer v. Department of Health and Social Services, Division of Vocational Rehabilitation,* 722 P.2d 158, 165
(Wyo.1986); *1316 Cheyenne Airport Board,* 707 P.2d at 727; *Washakie County School District,* 606 P.2d at 333.
White v. State, 784 P.2d 1313, 1315–16 (Wyo. 1989).

The compulsory search of travelers clearly implicates liberty interests under the Fourth and Fourteenth Amendments the United States Constitution and under Article I Section 4 and 6 of the Wyoming Constitution. Although the Town of Jackson has an interest in maintaining order and security at its airport, it is clear that a criminal town ordinance is not necessary in order to ensure compliance with the TSA procedures described above. As previously discussed, TSA's regulations allow for the imposition of civil penalties. Furthermore, law enforcement is given jurisdiction to enforce Titles 7, 9, and 10 of the Jackson Town Ordinances; providing the Town with the ability to maintain order without incorporating unpublished TSA procedures or imposing criminal penalties for the alleged refusal to consent to an administrative search.

The proper test for determining when a police-citizen encounter implicates Fourth Amendment rights as a seizure was initially outlined in *United States v.*

*Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Justice Stewart, writing for a divided court, built upon a foundation first stated in *Terry.* "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1878 n. 16. In *Mendenhall,* Justice Stewart found no seizure had occurred where federal drug agents approached a woman walking through an airport and requested her identification:

> We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, *even where the person did not attempt to leave,* would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or *the use of language or tone of voice indicating that compliance with the officer's request might be compelled.* See *Terry v. Ohio, supra,* 392 U.S. at 19, n. 16, [88 S.Ct. at 1878, n. 16]; *Dunaway v. New York,* 442 U.S. 200, 207, and n. 6, [99 S.Ct. 2248, 2253, 60 L.Ed.2d 824]; 3 W. LaFave, Search and Seizure 53–55 (1978). In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. *Mendenhall,* 446 U.S. at 554–55, 100 S.Ct. at 1877 (footnote omitted) (emphasis added).

<u>Wilson v. State</u>, 874 P.2d 215, 220 (Wyo. 1994).

Subjecting individuals to arrest based on violations of ordinances for which only fines are permitted as penalties raises wrongful arrest concerns under the Fourth Amendment. See <u>Wilson v. State</u>, 874 P.2d 215, 224 (Wyo. 1994). Arresting or detaining individuals for longer than necessary to issue them a citation may create liability under 42 U.S.C. § 1983 based on an unlawful seizure of the person.

> The court determined that the officers could detain a man stopped for jaywalking only for the time necessary to obtain sufficient identification and issue a citation. *Id.* Continued detention for a warrants check was improper because the officers lacked reasonable grounds to suspect a warrant might be outstanding. *Id.* at 91. <u>Wilson v. State</u>, 874 P.2d 215, 224 (Wyo. 1994).

The Wyoming Supreme Court has held that Article 1, § 4 of the Wyoming Constitution provides more extensive protections against unreasonable searches and seizures than the Fourth Amendment to the United States Constitution. O'Boyle v. State, 2005 WY 83, ¶ 31, 117 P.3d 401, 410 (Wyo. 2005). The standard that searches must be "reasonable under all of the circumstances" also controls in the context of administrative searches:

> This unifying theme is consistent with our decisions in *Vasquez* and *O'Boyle*, where we stated that Article 1, § 4 of the Wyoming Constitution requires that searches be "reasonable under all of the circumstances." *Vasquez*, 990 P.2d at 489; *O'Boyle*, ¶ 32, 117 P.3d at 410. Based on this precedent, and having considered guidance from other jurisdictions, we will apply this same "reasonable under all of the circumstances" standard to determine whether searches undertaken pursuant to the School District's Policy violate Article 1, § 4 of the Wyoming Constitution.
> Hageman v. Goshen Cty. Sch. Dist. No. 1, 2011 WY 91, ¶ 17, 256 P.3d 487, 495 (Wyo. 2011).

Based on the facts arguments and authorities more fully laid out above (and in Subsection D below), the Defendant claims that his arrest and citation violate Article 1, § 4 of the Wyoming Constitution.

### D. JMC 12.16.170(A) Does not authorize Law enforcement jurisdiction over violations of the Ordinance, it provides only for citations issued by Special Municipal Officers; it does not permit arrests or citations by Jackson Town Police.

Based on a plain reading of the town ordinances, Law enforcement officers such as the arresting officer in this case, lack the authority to enforce or issue citations under JMC 12.16.170(A). The Teton County Sheriff's Office and the Jackson Police Department are only granted the authority to enforce Chapter 5.50 and Titles 7, 9 and 10 of the Town of Jackson Municipal Code at the Airport.

**12.16.030 Law enforcement jurisdiction.**
   Pursuant to authority contained in Section 10-5-101 (b) of the Wyoming State Statutes, the Teton County Sheriff's Office and the Jackson Police department are empowered to enforce duly adopted rules of the Airport Board, applicable state statutes, regulations of the United States, and ordinances contained in Chapter 5.50 and Titles 7, 9 and 10 of the Town of Jackson Municipal Code, as those Titles now exist or as they may hereafter be amended,

all of which shall apply to activities at the Airport. (Ord. 923 § 2, 2009; Ord. 175 § 2(a), 1975.)

The Ordinances specifically provide for citations issued under JMC 12.16.170(A) by special municipal officers (not by town police) but do not permit arrest:

> **12.16.035 Special Municipal Officers.**
> The Aircraft Rescue Fire Fighter/Operation Officers at the Airport, appointed as Special Municipal Officers by the Town of Jackson, shall have specific authority to issue citations to individuals for violations, occurring on the Airport, of Sections 12.16.040, 12.16.060, 12.16.070, 12.16.080, 12.16.090, 12.16.110, 12.16.120, 12.16.130, 12.16.140, 12.16.150 and **12.16.170** of the Jackson Municipal Code, and any rule and regulation duly adopted by the Airport Board pursuant to Sections 12.16.110A or 12.16.130C of this Chapter, as authorized by W.S. § 7-2-103(e) and W.S. § 15-1-103(a)(xlx). (Ord. 966 § 1, 2010) (emphasis added).

In addition to the potential violation of 42 U.S.C. § 1983 described above, the unlawful citation and arrest of the Defendant may expose the Town of Jackson to tort liability under Wyoming law: "A governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties." Wyo. Stat. Ann. § 1-39-112 (West)

Wyoming statutes further support the distinction between Special Municipal Officers and Peace Officers and indicates that Special Municipal Officers do not have arrest authority:

> (l) Appoint special municipal officers, who are not certified as peace officers, to issue citations to individuals for the limited purpose of enforcing ordinances, resolutions and regulations in the areas of animal control, parking and municipal code enforcement. Special municipal officers are not law enforcement officers:
> > (A) For purposes of employee benefits provided in title 9 of Wyoming statutes;
> > (B) Are not peace officers for purposes of title 6 or title 7 of Wyoming statutes;
> > (C) Are not peace officers for purposes of W.S. 1-39-112;
> > (D) Shall not be required to carry a firearm;
> > (E) Shall not have the power of arrest;
> > (F) Shall not be issued a peace officer's badge; and
> > (G) Shall not represent themselves to be peace officers.
> Wyo. Stat. Ann. § 15-1-103 (West)

Read in the together with the Jackson Ordinances laid out above, Wyo. Stat. Ann. § 15-1-103 clearly indicates that the drafters of the Ordinances never intended for individuals to be arrested based on the violation of JMC 12.16.170(A). The only individuals empowered with the authority to enforce the Ordinance clearly lack arrest authority under Wyoming law.

Where only fines are authorized by statute, any term of incarceration (including the imposition of probation) exceeds the punishments authorized by the statute:

> The question of whether a court has imposed an illegal sentence by virtue of exceeding legislatively established limits is a question of law which we review de novo. *Palmer v. State*, 2016 WY 46, ¶ 9, 371 P.3d 156, 158 (Wyo. 2016); *Manes v. State*, 2007 WY 6, ¶ 7, 150 P.3d 179, 181 (Wyo. 2007). With respect to any particular offense, courts may impose only those sentences authorized by the legislature by statute governing that offense. *Chapman v. State*, 2015 WY 15, ¶ 17, 342 P.3d 388, 393 (Wyo. 2015); *Seaton v. State*, 811 P.2d 276, 282 (Wyo. 1991); *Williams v. State*, 692 P.2d 233, 235 (Wyo. 1984).
> 8[¶19] When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of its words and will not enlarge or expand it beyond its express provisions. *Johnson v. City of Laramie*, 2008 WY 73, ¶ 7, 187 P.3d 355, 357 (Wyo. 2008) (citation omitted); *Sponsel v. Park County*, 2006 WY 6, ¶ 9, 126 P.3d 105, 108 (Wyo. 2006).
> [¶20] We agree with the district court's reading of Casper's ordinances governing minors in possession, as they are set out above. The relevant ordinances expressly authorize only a fine as punishment for that misdemeanor, and they nowhere authorize the alternatives of incarceration or probation.

City of Casper v. Simonson, 2017 WY 86, ¶¶ 18-20, 400 P.3d 352, 356 (Wyo. 2017)

Wyoming law acknowledges the limited nature of the arrest authority of law enforcement officers and provides that law enforcement authority is subject to jurisdictional limitations:

> Annotation, *Territorial Extent of Power to Arrest Under a Warrant*, 61 A.L.R. 377, 377 (1929), which follows *Ex parte Crawford* in the volume, quotes 2 R.C.L. 469:
> Generally speaking it may be said that "a public officer appointed as a conservator of the peace for a particular county or municipality ... has no official power to apprehend offenders beyond the boundaries of the county or district for which he has been appointed [whether he acts under color of or of a warrant or without one]."
> The annotation cites a history of cases commencing with *Chorley's Case*, 1 Salk. 176, 91 Eng. Reprint 161 (1699). Other cases to be found include an early American case, *Lawson v. Buzines*, 3 Harr. (Del.) 416 (1842) (cited in *Newburn v. Durham*, 88 Tex. 288, 31 S.W. 195 (1895)), where the rule is stated. *Newburn* does recognize a statutory extension of arrest authority for prevention and suppression. *See likewise City of Fairborn v. Munkus*, 28 Ohio St.2d 207, 277 N.E.2d 227 (1971), which, after citing the common law rule, recognizes a statutory extension of expanded jurisdiction. Following or recognizing the common law rule, see *Zanks v. Fluckiger*, 22 Conn.Sup. 311, 171 A.2d 86 (1961); *State v. Carson*, 374 So.2d 621 (Fla.App.1979); *Drake v.*

*Keeling,* 230 Iowa 1038, 299 N.W. 919 (1941); *State ex rel. Malone v. Dreiling,* 136 Kan. 78, 12 P.2d 735 (1932); *State v. Harnum,* 143 Me. 133, 56 A.2d 449 (1947); and *Irwin v. State, Department of Motor Vehicles,* 10 Wash.App. 369, 517 P.2d 619 (1974). Wyoming has no statute nor has this court provided a rule which serves to abrogate the common law rule of confined territorial jurisdiction for municipal peace officers.
<u>Van Horn v. State,</u> 802 P.2d 883, 886–87 (Wyo. 1990).

Based on the town ordinances and other authority cited above, it is clear that the drafters of the Town Ordinances did not intend for law enforcement officers to have the authority to enforce JMC 12.16.170(A).

### E. The Sate Lacks Probable Cause to Believe that the Defendant Violated JMC 12.16.170(A)

"No Person shall tamper or interfere with, compromise, modify, or attempt to circumvent any security system, measure, or procedure implemented at the Airport."

The Complaint alleges that the Defendant violated "security system, measure, or procedure implemented at the Airport," more specifically, the Complaint apparently alleges that the Defendant violated TSA protocols but the State has not provided a written statement of the relevant procedures; without alleging that the Defendant has violated specific procedures the State cannot meet its burden. SMF ¶ 5, & 26. The State must be required to provide in full the specific procedure or procedures which the Defendant is accused of violating (specifically the relevant TSA protocols) or it cannot meet its burden to prove that the Defendant violated those procedures beyond a reasonable doubt.

Without the text of any relevant procedures, the Defendant cannot effectively defend himself. Furthermore, without the text of any relevant TSA procedures, the State cannot show beyond a reasonable doubt that the Defendant violated the Procedures. Evidently, the Defendant's prosecution is based on his verbal refusal to consent to a pat down of his groin by TSA officials. SMF ¶ 8, 10, 11, 12, & 16. However, the Defendant also clearly offered to be rescreened by the body scanner without his belt (which was the original cause of the Defendant's need for additional screening) or to leave the airport as an alternative to a pat-down of his groin. SMF ¶ 4, 8, 10, 11, 12, 14, 15, 16, & 26. TSA procedures allow for rescanning with the body scanner under at least two circumstances, without the text of the procedures the State cannot show that the Defendant did not qualify for rescreening. SMF ¶ 26; and ¶ 6 of p.3 of Def. exh. C.

Furthermore, Officer Karnes conducted a search of the Defendant which was more invasive than the one which the Defendant refused from TSA screeners. SMF ¶ 19. Officer Karnes did not find any weapons or other safety hazard during his pat-down of the Defendant. SMF ¶ 20. Not only does this more extensive search satisfy the State's interest in protecting safety and security at the airport, it may also comply with the TSA procedures (which evidently require a pat-down similar to the one conducted by Officer Karnes). SMF ¶ 19. Furthermore, the Defendant clearly lacked the specific intent to circumvent any airport procedures, at all times he refused a pat-down of his groin based on a sincerely held belief that such an invasive search without his consent would be a crime and an invasion of his privacy. SMF ¶s 4, 5, 8, 10, 11, 12, 14, & 16. Finally, because Officer Karnes conducted a more invasive search of the Defendant than was required under the Ordinance, and that search did not reveal any contraband or other safety concerns, it is clear that the Town of Jackson's interest in maintaining a secure airport was fulfilled; in effect, the Defendant was forced to comply with the procedures mandated by the ordinance. " JMC 1.04.040 **Construction.** The provisions of the ordinances of the Town of Jackson, and all proceedings under them are to be construed with a view to effect their objects and to promote justice. (Ord. 158 § 4,1973.)"

## V.    CONCLUSION

As more fully described above, the Ordinance violates both the United States Constitution and the Wyoming Constitution because it is unconstitutionally vague, relies on external TSA procedures without providing notice of those procedures to the public, implicates the fundamental right to access the words of law for the purposes of judicial review and presenting an effective criminal defense, provides for an unconstitutional search and seizure of the person, and violates the First Amendment as applied and based on overbreadth. Furthermore, under Wyoming law, the arresting officer lacked authority to cite and/or arrest the Defendant. Finally, based on undisputed facts in the record, the State lacks probable cause to believe that the Defendant violated the Ordinance because the State cannot hope to prove the terms of any relevant Airport Procedure beyond a reasonable doubt through the use of admissible evidence.

**RESPCTFULLY SUBMITTED** this 15th day of August, 2018.

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC
Attorney for Defendant
210 W. Elm Ave
P.O. Box 1309
Saratoga, WY 82331
(307) 399 – 6060 Cell
(307) 326 – 8850 Fax
Turtle@Slowandsteadylaw.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 15th day of August, 2018, the foregoing instrument was served via email; and by depositing a true and accurate copy of the same in the United States mail, postage prepaid, addressed to:

Jackson Municipal Court Prosecuting Attorney's Office
PO Box 1687
Jackson, WY 83001
lcolasuonno@jacksonwy.gov

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC



# Jackson Police Department
## Todd Smith Chief of Police

*"We enhance the quality of life and provide for the safety and security of residents and visitors through professional police services."*
P.O. Box 1687 • 150 E. Pearl Avenue • Jackson, Wyoming 83001 • 307-733-1430 • FAX 307-733-3241 • www.jacksonholepolice.com

Primary Narrative                                                      Printed on March 27, 2018

# Primary Report By Nathan Karnes, 03/12/18 14:04
**Case #PDP180300050**
**Typed By Nathan Karnes**

INFORMATION:
While on scheduled patrol at Jackson Hole Airport on 3/12/2018 the Screening Supervisor Martha Preston called me on the Airport Law Enforcement cell phone and requested I respond to screening.

INTERACTION WITH WILLIAM FREY:
Upon arrival in the security checkpoint I spoke with Supervisor Preston and was informed a passenger, later identified as William Frey, went through the AIT body scanner (a millimeter wave screening device which resembles a large phone booth). The AIT indicated Frey's groin, upper inner thigh, and down the side of his leg needed additional screening. From my experience I knew areas which alarmed in the AIT required a physical pat down of the areas in question, per TSA protocols. Frey told me he was willing to be rescanned but said "I am not willing to have someone feel my balls". Supervisor Preston explained their SOP (standard operating procedure) states they are "not allowed to re-scan somebody" under these circumstances and Frey needed to submit to the pat down.

At first I attempted to explain the process screening process to Frey but he interrupted and stated, "I'm not gonna...If they wont let me on the plane then I'm going to leave". I again attempted to explain the process and Frey interrupted again asking "Do you want me to feel your balls?" I essentially explained to Frey because he purchased an airline ticket, he is required to go through screening, and when he enters the doors for screening and hands his boarding pass and identification to the screener then he is required to complete the screening process.

Frey stated in an angry tone while raising his voice he believed the pat down amounted to a sexual assault. At the same time he stepped toward me so he was less than an arms length away and gestured with his hand in an angry manner, almost touching me. I placed my hand on Frey's chest and gently pushed him back and told him to stay back, Frey hesitated and looked around briefly before exclaiming "Don't touch me!". Frey reiterated, "I'm not completing that screening". I informed Frey failure to complete the screening process would constitute a misdemeanor and is an arrest-able offense. Frey said, "Fire me, arrest me then, for not being willing to be sexually assaulted. Arrest me for that, try it!". Frey said if anyone touches him, "I'm gonna scream so fucking loud...". It was obvious to me Frey was becoming a serious distraction, so I instructed Frey to follow me out of the screening line to the back of the screening area. While walking to this location Frey stated, "It is not happening!"

Frey continued to talk, explaining "I'm not doing it. I'm not doing it, it's not a negotiation, I'm not doing it. I will not be sexually assaulted by these people". I informed Frey if I arrested him I would perform a more invasive search than the one he was being required to submit to for screening. Frey waived his arms several times while stepping closer to me as he threatened to litigate. I put up my hand and told him to stay back from me. I did this for my safety as Frey was extremely irritable.

ARREST:
I again told Frey that he once he started the screening process that he is required to finish the process as the screeners have directed. Frey emphatically stated he was not going to be sexually assaulted and refused to complete the screening process. Knowing Frey was required to complete the screening process once started and that re-screening was not an option; I felt I had no other option given his continued refusal to comply, but to arrest him so I could search him incident to a lawful arrest and clear the areas of his person which alarmed in the AIT. I arrested Frey



000066

for being in a restricted area at the airport and failing to comply with the screening being applied to that area. Frey was cooperative when I told him to turn around and put his hands behind his back. I placed handcuffs on him, I checked for proper fit and tightness and double locked them. Frey refused to answer my questions regarding any weapons or sharp objects he might have on his person. Frey told me, "You figure it out".

I searched Frey incident to arrest paying special attention to the areas which alarmed in the AIT since they had not been cleared yet. I did not locate any foreign objects or suspicious items in those areas during my search. I collected Frey's driver's license and Frey's shoes before taking him to the PD office in the airport. Frey requested his wife be allowed to come with him, a request I denied because she was not under arrest. As I began to walk Frey to the PD office he became rigid and starting pushing back into me. He also started turning his body back around toward me. I regained control of Frey by utilizing a wrist lock and ordered him to stop resisting. Frey stated he was not resisting. Once Frey and I made it to the office, Frey asked if I could loosen the handcuff on his left wrist. I rechecked and loosened both cuffs at his request.

TRANSPORT:
I arranged to transport Frey to the jail which is our standard practice following any arrest. Corporal Kevin Jones arrived at the airport so I could transport Frey to the TCSO Jail. I placed Frey into the rear cabin portion of my patrol car, fastened his seatbelt, and transported him without incident.

CHARGES:
Frey was in clear violation of, and subsequently charged with, Jackson Municipal Code (J.M.C.) 12.16.170 (B) which states, "No person shall enter or be present in a Restricted Area without complying with the systems, measures, procedures, screening and/or inspection being applied to control access to or presence in such areas". Frey entered the Restricted Area after walked from the unsecured terminal area into the security checkpoint, which is a restricted area. Frey was allowed to enter the restricted area after he voluntarily provided his boarding pass and identification to the screener who was standing at the entrance of the restricted area.

JAIL:
Once at the jail, Frey was extremely uncooperative. Deputy Rudd informed me as they were attempting to book Frey he refused to answer questions, slammed his fists on the counter of the booking room, and demanded to speak to his lawyer. Deputies then escorted Frey to a cell until he was cooperative and agreed to complete the booking process. I returned to the jail to issue and explain the citation. While speaking with Frey he continued to yell at and threaten litigation against the Deputies and myself.

Deputies informed me that Frey later calmed down and agreed to complete the booking process. Prior to his release Deputies asked Frey if he was in need of any medical attention I was informed that Frey responded that he was not injured and did not need medical attention. Following completion of the booking process Frye was released.

BACK AT THE AIRPORT:
I returned to the airport to complete my shift after writing the Probable Cause Affidavit. While walking by baggage services, Frey was there collecting his luggage. Before I was able to activate my body camera, Frey stated he was sexually assaulted by screening personnel. Frey told me he looked up the definition of sexual assault, and I should too.

Frey told me that I should have de-escalated the situation with him. Frey stated, "You should not have twisted my arm, you know you twisted my arm, asshole!", he was pointing his finger at me before he reacquired his luggage cart and briskly walked away. Although Frey complained about the technique I used to get him to comply, he did not complain of any pain or injury.

BODY CAMERA FOOTAGE OBSERVATIONS:
Upon arrival in the screening area my body camera shows the screening lanes 1 & 2 had completely stopped and the

---

screeners had stopped screening presumably due to Frey's behavior.

At the beginning of my interaction with Frey TSO (Transportation Screening Officer) Stan Karichner can be seen standing behind Frey. While Frey is raising his voice, stepping toward me, and gesturing toward me, TSO Karichner was clearly distracted and can be seen turning his head to observe the disturbance Frey was making.  Another time TSO Karichner can be observed screening a passenger (NFI) and the passenger is obviously not focusing on being screened but turning his head to his left to look at Frey and me as we were talking.  Later on, just after Frey says "I'm gonna scream so fucking loud..." another female passenger (NFI) is distracted from TSO Ginger Eva, who is attempting to instruct and direct the passenger; and can be seen turning to look at Frey and away from TSO Eva.

ADDITIONAL CHARGES:
Based upon a review of my body camera footage I believe Frey also violated J.M.C. 12.16.160 (A) which states: "No Person shall interfere with any security screener, Airport employee, or flight crew member engaged in the performance of his or her duties." Frey violated this ordinance by interfering with screeners through his refusal to comply with the screening process, by distracting screeners from performing their duties, and by disrupting the continuity of the screening by being loud, threatening, and uncooperative. Frey should be charged with this, but I was unable to issue him a citation for this charge before he was released from jail.


EVIDENCE:
I entered my Prima Facie body camera footage from my camera and from camera 704 into evidence and burned a copy for the Municipal Court.  I entered my Coban footage into evidence from transporting Frey to the Jail. I collected airport CCTV footage, Jail CCTV footage, and Jail staff body cameras and entered them all into evidence.

I reviewed the CCTV airport camera footage and noticed that screening personnel never touched Frey.  Based on this, Frey could not have been sexually assaulted.  Even if they had conducted the pat down search of the alarmed areas of Frey's person, based on my observations of the process, the pat down would not have met the elements of sexual assault under Wyoming State Statute.


ADDITIONAL INFORMATION:

Frey had a coach class boarding pass for United Airlines flight 2402 which was traveling to Newark, New Jersey, and was not signed up for TSA Pre.

TSA PROTOCOLS:
Sergeant Phillips contacted TSA and learned their protocols require persons to complete the screening process once they begin the screening process.  He also confirmed persons are not allowed to be re-screened following an alarm from the AIT, but are required to submit to a pat down of the alarmed area of their person.  Re-screening is apparently allowed only under two very specific circumstances, which the TSA supervisor (NFI) would not elaborate on, but to say Frey's circumstances did NOT fit the protocol for re-screening.

UNITED AIRLINE INC. CONTRACT OF CARRIAGE:
United Airlines' website   https://www.united.com/web/en-US/content/contract-of-carriage.aspx#sec20   informs passengers of it's Contract of Carriage (the contract passengers enter into when they purchase a ticket).  The opening statement says, "...By purchasing a ticket or accepting transportation, the passenger agrees to be bound by these controlling terms of this Contract of Carriage...".

Rule 20 Screening of Passengers and Baggage of the Contract of Carriage states:
"Passengers and/or baggage are subject to security screening, including but not limited to, security profiling, physical pat-downs and inspections, x-ray screening, manual bag searches, questioning of Passengers, and use of electronic or other detectors or screening or security devices, in the sole discretion of the government, airport or UA,

and with or without the Passenger's presence, consent or knowledge. Neither UA nor its employees or agents is liable for any damage, loss, delay (including refusal to transport), confiscation of property, injury or other harm relating to or arising out of security screening conducted by an agent of the airport or any local, state, or federal agency or a Passenger's failure to submit to or comply with such security screening."

Report taken by Officer Nathan Karnes #726

CASE CLOSED WITH ARREST, NOTHING FURTHER.



# Jackson Police Department
### Todd Smith Chief of Police

*"We enhance the quality of life and provide for the safety and security of residents and visitors through professional police services."*
P.O. Box 1687 • 150 E. Pearl Avenue • Jackson, Wyoming 83001 • 307-733-1430 • FAX 307-733-3241 • www.jacksonholepolice.com

| Supplemental Narrative | Printed on March 27, 2018 |
| --- | --- |

## Supplemental Report By Rob Andazola, 03/27/18 11:07
**Case #PDP180300050**
**Typed By Rob Andazola**

On 03/27/2018 at 9:00 a.m., myself and Detective Jason Figueroa responded the Jackson Hole Airport to interview Martha Preston regarding the incident. During the interview she stated the following:

Martha told me Mr. Frey went through the AIT body scanner which alerted to his groin, hip and ankle areas. The Scanner was being manned by Stan Karichner and Ginger Eva. Karichner showed Frey the screen and where it alerted on him. Karichner told Frey that he would have to do a "Pat down search." Frey responded something to the effect, "No ones going to touch me". Employee Stephanie Walker told Preston that Karichner needed her at the AIT scanner.

Karichner told Preston the scanner had alerted on areas of Frey's body. Frey stated to Preston, "No one is going to fondle my balls." Preston stated she believed she offered a private screening to him, but he interrupted her when she tried explaining, stating, "Nobody's going to touch me." She told me she called the Operations Supervisor, Dallas Buschow to their location. She stated Buschow did not talk to Frey.

Preston stated she called Officer Nate Karns by radio and by cell phone. After Karns arrived she explained that Frey needed a "Pat down" search then told Frey you can tell him "Karns", what you told me. Preston stated that the screening line had become backed up due to Frey and she left Frey with Karns, to open the lanes and get people moving.

Preston stated that after Karns arrested Frey she assisted in getting his ID to him. Frey's wife, actually got his ID from their bags and provided it to Preston who then gave it to Karns. Frey stated he wanted his cell phone, but before that could be provided he was taken away by Karns.

Preston stated she then assisted Frey's wife, who did not continue on her flight due to the incident.

Preston told me Frey's actions interfered with screening process and she has never witnessed anything like this in her four years working for TSA.

I asked her if there was anything else she could think of? She told me that Frey did offer to take off his belt and be re-screened. According to Preston, this is not their procedure. In addition, she told me Frey's wife complained about the process and seemed to support the position her husband took about the search. Nothing follows.

Cpl. Rob Andazola
Jackson Police Department

---



000070

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, WYOMING

| TOWN OF JACKSON | ) | **PROBABLE CAUSE** |
| Plaintiff, | ) | |
| | ) | AFFIDAVIT IN SUPPORT OF |
| vs. | ) | WARRANTLESS ARREST |
| | ) | (Rule 5, W.R.Cr.P) |
| | ) | |
| FREY, WILLIAM A | ) | |
| | ) | |
| Defendant, | ) | |

PDP180300050
1803-1156

VICTIM(S) NAME _____ {victims.name}

AFFIANT _____ Nathan Karnes _____, being duly sworn,

States that the Defendant, _____ FREY, WILLIAM A _____, was arrested

By (NAME OF ARRESTING OFFICER) _____ 726 - Karnes, Nathan

on _____ 03/12/18 13:00

at (LOCATION) _____ 1250 E AIRPORT ROAD

in violation of (STATUTE(S)) _____ JMC 12.16.170 - AIRPORT: COMPLIANCE WITH SECURITY REQUIREMENTS

**NARRATIVE** (SET FORTH SUFFICIENT DETAIL TO PERMIT INFORMED JUDICIAL REVIEW AND PROBABLE CAUSE DETERMINATION):

While on scheduled patrol at Jackson Hole Airport when the Screening Supervisor Martha Preston called Officer Nathan Karnes and requested that he respond to screening. Officer Karnes spoke with Supervisor Preston and was informed that William Frey went through a screening device that showed that Frey had an area on his groin and upper inner thigh that needed additional screening. Frey stated he was willing to be rescanned but, "I am not willing to have someone feel my balls". Supervisor Preston stated the SOP, standard operating procedure, states they are not allowed to re-screen someone. Officer Karnes told Frey that he once he started the screening process that he is required to finish the process as the screeners have directed. Frey stated he was not going to be sexually assaulted and refused to complete the screening process. Officer Karnes arrested Frey for being in a restricted area at the airport and failing to comply with the screening being applied to that area.

The above **facts constitute probable cause** for the Defendant's warrantless arrest
Dated this _____ 12th _____ day of _____ March _____ 2018 _____,

_____
**AFFIANT SIGNATURE**

State of Wyoming )
                 ) ss
County of Teton )

SUBSCRIBED AND SWORN TO BEFORE ME BY _____ Nathan Karnes
                                      PRINT OR TYPE NAME OF AFFIANT

this _____ 12th _____ day of _____ March _____, 20 18

WITNESS my hand and official seal.

_____ Lynda Kaye Rudolph
☐ Circuit Court Judge ☐ Clerk of the Court ☒ Notary Public

LYNDA KAYE RUDOLPH - NOTARY PUBLIC
County of          State of
Teton              Wyoming
My Commission Expires 2-2-20


DEFENDANT'S
EXHIBIT
E

000071

STATE OF WYOMING   Member NRVC   ✓ FORM P-6 (8/15)

CITATION/COMPLAINT   Court MUNICIPAL COURT

DKT #                              Event # P 1803-1155

168004766AA

State of Wyoming. County of Teton

VS

Defendant ___ FREY
                (LAST)

___ WILLIAM _____ A.
  (FIRST)                                (MI)

Street Address 10 GLENVILLE ROAD

Mail Address

City GREENWICH                    St CT   Zip 06830

DOB 12/11/1957   Sex M   Race W Ht ____ Wt ____ Hair BRO Eyes BLU

DL # 126414301        Class D         State CT

VL # ____ St. ___ Make ____ Model ____ Year ____

Passenger ☐ PU ☐ Motorcycle ☐ MPV ☐ Color ____

Comm Veh ☐ Comm Viol ☐ Comm ☐      Comm ☐   16 + ☐
                      10,001 to 26,000  > 26,000   Passenger Veh.

DOT # _____ ☐ Placarded Veh. Haz Mat ID # _____

Co. Name _____

City/State _____

G&F Lic. # _____

The undersigned states that on or about the   12   day of March   , 2018

at 13:00   hrs at LRS Section # _____ MP _____

Street ☐ County Rd ☐ State Hwy ☐ Private Property ☒ Travel Direction _____

Location 1250 E AIRPORT ROAD

Location Comment _____

The defendant did unlawfully commit the following offense against the peace and dignity of the State of Wyoming

CITY OF JACKSON

Statute/Ordinance # MC.12.16.170

AIRPORT: COMPLIANCE WITH SECURITY          $750.00
REQUIREMENTS

Notes: (A) FAILED TO COMPLETE SCREENING PROCESS AS ALLOWED BY
         AIRPORT SCREENERS

Speed _____ MPH in _____ MPH Zone   Weight Over _____

In violation of W S ☐ or Ord ☒   No. MC.12.16.170

VIN _____

and the undersigned further states that there are just and reasonable grounds to believe that the person named   CRASH ☐
above committed the offense herein.

Complainant _____ BAC _____ %

Sworn to and Subscribed before me this _____ day of _____ 20 ____

Judge/Notary _____

Initial Appearance:  IN CUSTODY AM ☐ PM ☐

on the ____ day of _____, ___ in JACKSON _____ WY.

Physical Court Address: 145 E SIMPSON AVE
                        JACKSON WY 83001

Mailing Court Address: PO BOX 1687
                       JACKSON WY 83001

Phone:                 3077333932 EXT:1100

Pay Online:        WWW.TOWNOFJACKSON.COM/BILLPAY

☐ MUST APPEAR              ☒ May forfeit bond in lieu of appearance

Officer KARNES, NATHAN ____ No. 726 ____ Dept. Jackson PD

                                    ☒ NO Bond Taken

Bond $750.00 ____ Paid by _____

Date _____ Rec'd by _____

Date _____ Rec'd by _____

Court receipt # _____ ☐ Seat Belts in use

Officer Comments
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Employer: _____

Phone Number: _____

Zone: _____

☐ School Zone

☐ Construction

Speed Determination
☐ Radar
☐ Lidar  # _____ Dist: _____
☐ Pace
☐ Other



000072

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, STATE OF WYOMING
MELISSA M. OWENS, MUNICIPAL COURT JUDGE

**FILED**
MUNICIPAL COURT
TOWN OF JACKSON
Received by. *X - email*
Date. *8/15/18*

| | | |
|---|---|---|
| THE STATE OF WYOMING, | ) | |
| TOWN OF JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case # 18 – 03 – 0026 |
| | ) | |
| WILLIAM FREY, | ) | |
| | ) | |
| Defendant, | ) | |

---

### DEFENDANT'S MOTION TO DISMISS

---

    **COMES NOW**, Defendant, William "Bill" Frey, by and through his attorney Seth "Turtle" Johnson, of the Slow and Steady Law Office, PLLC, does hereby respectfully submit this *Motion to Dismiss* in the above titled matter; each of the following Grounds for Dismissal is supported by a corresponding section in the *Memorandum Brief in Support of Motion to Dismiss*, which has been filed simultaneously with this Motion, and is incorporated here by reference, stating to the Court as follows;

1. The Ordinance (JMC 12.16.170(A) ) and/or the enforcement of the Ordinance against the Defendant violate Due Process under the Fourteenth Amendment to the United States Constitution and under Article 1 Section 6 of the Wyoming Constitution.

2. The Ordinance is Unconstitutionally overbroad and was enforced against the Defendant primarily as a result of his protected speech in violation of the First and Fourteenth Amendments to the United States Constitution.

3. The Ordinance violates the Fourth Amendment and Fourteenth Amendment to the United States Constitution because it provides for the Unlawful Seizure of the person and implicates fundamental liberty interests; the Ordinance also violates Article I Section 4 and 6 of the Wyoming Constitution.

4. The police officer issuing the ticket lacked the authority to issue the ticket as he is not a "Special Municipal Officer" as defined by Jackson Municipal Code.

5. The State lacks probable cause to believe that the Defendant violated each necessary element of the Ordinance beyond a reasonable doubt.

**FURTHER**, each of the grounds for *Motion to Dismiss* listed above, with accompanying subsection in the supporting *Memorandum Brief*, shall be considered individually, in the alternative, and as a cumulative demand.

**WHEREFORE,** based on the above stated grounds, supported by accompanying *Memorandum Brief*, Mr. Frey hereby requests that the Court dismiss plaintiff's citation, with prejudice.

**RESPECTFULLY SUBMITTED** this 15th day of August, 2018.

Seth "Turtle" Johnson (WBA# 7-5748)
Slow and Steady Law Office, PLLC
210 W. Elm Ave.
P.O. Box 1309
Saratoga, WY 82331
(307) 399 – 6060
Turtle@SlowandSteadyLaw.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 15th day of August, 2018, the foregoing instrument was served via email; and by depositing a true and accurate copy of the same in the United States mail, postage prepaid, addressed to:

Jackson Municipal Court Prosecuting Attorney's Office
PO Box 1687
Jackson, WY 83001
lcolasuonno@jacksonwy.gov

Seth "Turtle" Johnson (WBA #7-5748)
Slow and Steady Law Office, PLLC

*Case #18 – 03 – 0226*
*Defendant's Motion to Dismiss*
*Page 2 of 2*

MUNICIPAL COURT
TOWN OF JACKSON
Received by. _Nanelle_
**IN THE MUNICIPAL COURT**   Date. _9/20/18_

### TOWN OF JACKSON, STATE OF WYOMING

| | | |
|---|---|---|
| TOWN OF JACKSON | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| *v.* | ) | Docket No. 18-03-0226 |
| | ) | |
| WILLIAM A. FREY, | ) | |
| | ) | |
| *Defendant.* | ) | |

**PLAINTIFF'S RESPONSE AND OBJECTIONS TO DEFENDANT'S THIRD DEMAND
FOR EVIDENCE, MOTION TO COMPEL THE PRODUCTION OF *BRADY*
MATERIAL**

COMES NOW Plaintiff, Town of Jackson, by and through counsel undersigned, and answers Defendant's *Third Demand for Evidence, Motion to Compel the Production of Brady Material* dated August 15, 2018 as follows:

1. As to your request seeking the "timely production of all documents or information relating to guilt or punishment which might be reasonably considered favorable to the defendants' case":

   RESPONSE: The Town has been and continues to comply with all *Brady* rule requirements.

2. As to your request for the "specific text of any written statement, Airport policy, or TSA policy describing any "security system, measure, or procedure implemented at the Airport" which is potentially relevant to this litigation. Include the text of any such procedure which, was allegedly violated by the Defendant, did not allow the Defendant to be rescreened, required the Defendant to submit to a pat-down search, or prohibited the Defendant from leaving the airport without consenting to a pat-down":

   RESPONSE: W.R.Crim.P. 16 requires Plaintiff to "permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the [Plaintiff], and which are material to the preparation of the defendant's defense or are intended for use by the [Plaintiff] as evidence in chief at the trial, or were obtained from or belong to the defendant."

   The "specific text of any written statement, Airport policy, or TSA policy describing any "security system, measure, or procedure implemented at the Airport" is not "within the possession, custody or control" of the Town of Jackson. Plaintiff has been and continues to try since receiving this *Third Demand for Evidence* on August 15, 2018 to obtain information from the Department of Homeland Security to answer this request. Plaintiff has not received any materials regarding this request to date. If Plaintiff receives such information and it is meets W.R.Crim.P. 16 discovery requirements Plaintiff will provide such to Defendant.

3. As to your request for the "text of TSA's Standard Operating Procedures which were allegedly violated by the Defendant. Include the text of any such procedure which, was allegedly violated by the Defendant, did not allow the Defendant to be rescreened, required the Defendant to submit to a pat-down search, or prohibited the Defendant from leaving the airport without consenting to a pat-down":

RESPONSE: W.R.Crim.P. 16 requires Plaintiff to "permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the [Plaintiff], and which are material to the preparation of the defendant's defense or are intended for use by the [Plaintiff] as evidence in chief at the trial, or were obtained from or belong to the defendant."

The "text of TSA's Standard Operating Procedures which were allegedly violated by the Defendant" is not "within the possession, custody or control" of the Town of Jackson. Plaintiff has been and continues to try since receiving this *Third Demand for Evidence* on August 15, 2018 to obtain information from the Department of Homeland Security to answer this request. Plaintiff has not received any materials regarding this request to date. If Plaintiff receives such information and it is meets W.R.Crim.P. 16 discovery requirements Plaintiff will provide such to Defendant.

4. As to your request that "[i]f the State [sic] alleges that the relevant security system, measure, or procedure implemented at the Airport" was not based on written procedures or policies, provide a plain statement of the policy and any evidence supporting the existence of such a policy . . . .":

RESPONSE: If Plaintiff alleges Defendant violated an unwritten policy, Plaintiff will provide information on the unwritten policy to the fullest extent required to comply with its discovery obligations under W.R.Crim.P. 16.

5. As to your request for "any and all, criminal history, disciplinary records, and employment records of Officer Karnes . . . :

RESPONSE: Plaintiff herein provides the criminal history of Officer Nathan Karnes from the Teton County criminal database. Plaintiff objects to providing federal National Crime Information Center criminal records as set forth in more detail in Paragraph 9, *Plaintiff's Objection to Demand Seeking Criminal History.*

Nathan Karnes: See Enclosure.

OBJECTION: Plaintiff objects to the production of disciplinary and employment records for Officer Karnes as set forth in more detail in Paragraph 10, *Plaintiff's Objection to Demand Officer Nathan Karnes Disciplinary and Employment Records.*

6. As to your request for "any and all, criminal history . . . records of . . . any TSA screeners who may appear as witnesses for the State [sic]. . .":

RESPONSE: Plaintiff herein provides the criminal history of the Jackson Hole Airport employees that witnessed Defendant on March 12, 2018 from the

Teton County criminal database. Plaintiff objects to providing federal National Crime Information Center ("NCIC") criminal records as set forth below in more detail in Paragraph 9, *Plaintiff's Objection to Demand Seeking Criminal History.*

    <u>Martha Preston:</u> See Enclosure.

    <u>Stan Karichner:</u> See Enclosure.

    <u>Eva Ginger:</u> See Enclosure.

7. As to your request for "any and all . . . disciplinary records, and employment records of . . . any TSA screeners who may appear as witnesses for the State [sic]. . .":

    <u>RESPONSE</u>: W.R.Crim.P. 16 requires Plaintiff to "permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the [Plaintiff], and which are material to the preparation of the defendant's defense or are intended for use by the [Plaintiff] as evidence in chief at the trial, or were obtained from or belong to the defendant."

    The "disciplinary records, and employment records" of Jackson Hole Airport employees are not "within the possession, custody or control of the Town of Jackson.

8. As to your request that the "State [sic] produce and provide notice of its intention to use any evidence which may be discoverable under Wyo. R. Crim. P. 12(e)(2).

    <u>RESPONSE</u>: Wyo. R. Crim. P. 12(e)(2) tracks with Fed. R. Crim. P. 12(b)(4)(B) and states that "[a]t the arraignment or as soon thereafter as is practicable the defendant may, in order to afford an opportunity to move to suppress evidence under subdivision (b)(3), request notice of the state's intention to use (in its evidence in chief at trial) any evidence which the defendant may be entitled to discover under Rule 16 subject to any relevant limitations prescribed in Rule 16."

    At this stage in the case and in light of the relatively little evidence available to the prosecution in total, Plaintiff currently intends to use all evidence it has produced thus far pursuant to its obligations under Wyo.R.Crim.P. 16. Furthermore, Plaintiff intends, as noted elsewhere in this *Response to Defendant's Third Demand for Evidence, Motion to Compel the Production of Brady Material,* to produce and use evidence it is currently seeking from the Department of Homeland Security and, potentially, the Jackson Hole Airport. Plaintiff reserves the right not present certain evidence as its trial strategy evolves, despite it's good faith belief at this early stage that it will present such evidence.

9. *Plaintiff's Objection to Demand Seeking Criminal History.*

    Plaintiff objects to the production of federal criminal records for the listed individuals because Plaintiff is legally prohibited from providing this information. Plaintiff is an Authorized User of NCIC and as such may only access the NCIC database for 1) pre-employment background checks and 2) criminal justice record searches for accused persons or criminal offenders. Since this request does not fall under either permissible reason for access, Plaintiff cannot lawfully access the federal database to produce this request.

10. *Plaintiff's Objection to Demand for Officer Nathan Karnes' Disciplinary and Employment Records.*

Plaintiff objects to the production of disciplinary records and employment records for Officer Karnes for two (2) reasons. First, Wyo. Stat. Ann. § 16-04-203(d)(iii) states that "[t]he custodian [of records] shall deny the right of inspection of the following records, unless otherwise provided by law: . . [p]ersonnel files except those files shall be available to the duly elected and appointed officials who supervise the work of the person in interest. Applications, performance ratings and scholastic achievement data shall be available only to the person in interest and to the duly elected and appointed officials who supervise his work."

Second, Wyo. Stat. Ann. § 16-04-203(d)(xi) states that "[t]he custodian [of records] shall deny the right of inspection of the following records, unless otherwise provided by law: . . [r]ecords or information compiled solely for purposes of investigating violations of, and enforcing, internal personnel rules or personnel policies the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

The sole exception to these two statutory disclosure prohibitions are that Plaintiff may produce "[e]mployment contracts, working agreements or other documents setting forth the terms and conditions of employment of public officials and employees are not considered part of a personnel file and shall be available for public inspection." In accordance with this exception and Defendant's request for "employment records," Plaintiff has included herein Officer Karnes' training records.

WHEREFORE, as set forth herein Paragraphs 9 and 10, the Town requests this Court deny discovery of any federal criminal histories from the National Crime Information Center ("NCIC") in recognition of the Town of Jackson restricted access to the NCIC system and that this Court deny discovery of any and all disciplinary records and employment records for Officer Karnes in accordance with the statutory limits set forth in Wyo. Stat. Ann. §§ 16-04-203(d)(iii) & (xi).

DATED this 28 day of August, 2018.

Lea M. Colasuonno
WSB No. 7-5155
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of August, 2018 a true and accurate copy of the foregoing Response to Request for Discovery Directed to Defendant was served as indicated below and addressed to:

Seth Turtle Johnson, Attorney for the Defendant
P.O. Box 1309
Saratoga, WY 82331

U.S. mail only: _____ ✓
via Hand Delivery: _____
Telefax: _____
Email: _____ ✓

Lea M. Colasuonno
WSB No. 7-5155
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497

**Training History Report**
State of Wyoming
Peace Officer Standards & Training

Reported by Acadis® Readiness Suite        08/23/2018
For:   KARNES, NATHAN R
Employee ID   3559-5800

## KARNES, NATHAN R

| Certifications | | | |
|---|---|---|---|
| Name | Issued | Expiration | Status |
| Professional Peace Officer | 01/21/2017 | 01/21/2021 | Active |

**Training**

**Upcoming, Ongoing, & Unconfirmed**

No upcoming & ongoing training data exists.

**Current Period to Date  (01/01/2018 - 08/23/2018)**

| Course/Title (Course No.) | Training Dates | | Grade | Status | Training Category | Hours |
|---|---|---|---|---|---|---|
| TASER RE-CERTIFICATION | 05/23/2018 | 05/23/2018 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| CUSTODY AND CONTROL | 05/15/2018 | 05/16/2018 | N/A | Complete | PERISHABLE SKILLS | 4h 0m |
| DUI: IMPACTS ON COMMUNITY | 03/01/2018 | 03/01/2018 | N/A | Complete | ADVANCED TRAINING | 2h 0m |
| | | | | | **Total Hours** | **(10h 0m)** |

**Previous Period  (01/01/2017 - 12/31/2017)**

| Course/Title (Course No.) | Training Dates | | Grade | Status | Training Category | Hours |
|---|---|---|---|---|---|---|
| EMERGENCY VEHICLE OPERATIONS (EVO) INSERVICE (9459) | 12/12/2017 | 12/12/2017 | N/A | Complete | PERISHABLE SKILLS | 4h 0m |
| CUSTODY AND CONTROL REFRESHER (9269) | 09/06/2017 | 09/06/2017 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| BASIC HOSTAGE NEGOTIATIONS (8490) | 06/26/2017 | 06/30/2017 | N/A | Complete | ADVANCED TRAINING | 80h 0m |
| FIREARMS RANGE (9006) | 06/21/2017 | 06/21/2017 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| CUSTODY AND CONTROL REFRESHER (9010) | 06/03/2017 | 06/03/2017 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| EC/IR REFRESHER (8661) | 04/19/2017 | 04/19/2017 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| FIREARMS TRAINING (8587) | 04/13/2017 | 04/13/2017 | N/A | Complete | ADVANCED TRAINING | 2h 0m |
| PROFESSIONAL PEACE OFFICER CERTIFICATION | 01/21/2017 | 01/21/2017 | N/A | Complete | | 0h 0m |

*For Official Use Only*                Page 1 of 2

**Training History Report**
State of Wyoming
Peace Officer Standards & Training

Rep... by Acadis® Readiness Suite    08/23/2018

For:  KARNES, NATHAN R

Employee ID   3559-5800

**Total Hours    (102h 0m)**

Other Periods  (through 12/31/2016)

| Course/Title (Course No.) | Training Dates | | Grade | Status | Training Category | Hours |
|---|---|---|---|---|---|---|
| WINTER EVO (8068) | 12/16/2016 | 12/16/2016 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| CIT AND BASIC CRISIS DE-ESCALATION | 11/29/2016 | 11/29/2016 | N/A | Complete | ADVANCED TRAINING | 8h 0m |
| 2016 CUSTODY AND CONTROL TRAINING (7865) | 11/08/2016 | 11/08/2016 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| ASIST SUICIDE FIRST AID | 09/20/2016 | 09/20/2016 | N/A | Complete | ADVANCED TRAINING | 15h 0m |
| FIREARMS TRAINING (7575) | 08/31/2016 | 08/31/2016 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| ARIDE (7071) | 05/04/2016 | 05/04/2016 | N/A | Complete | ADVANCED TRAINING | 16h 0m |
| REID TECH INTERVIEW ADV INTERROGATION | 04/01/2016 | 04/01/2016 | N/A | Complete | ADVANCED TRAINING | 24h 0m |
| CUSTODY & CONTROL HANDCUFFING SKILLS | 03/17/2016 | 03/17/2016 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| SPECIAL IMPACT MUNITIONS (6306) | 02/04/2016 | 02/04/2016 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| ADVANCE PEACE OFFICER CERTIFICATION | 01/21/2016 | 01/21/2016 | N/A | Complete | | 0h 0m |
| ACTIVE SHOOTER (5858) | 12/28/2015 | 12/28/2015 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| 2015 USE OF FORCE UPDATE WLEA ON LINE | 12/14/2015 | 12/14/2015 | N/A | Complete | ADVANCED TRAINING | 2h 0m |
| FIREARMS (5849) | 11/24/2015 | 11/24/2015 | N/A | Complete | ADVANCED TRAINING | 4h 0m |
| TASER (5891) | 11/16/2015 | 11/16/2015 | N/A | Complete | ADVANCED TRAINING | 8h 0m |
| FIELD REPORTING (5341) | 06/05/2015 | 06/05/2015 | N/A | Complete | ADVANCED TRAINING | 12h 0m |
| WHP BASIC ACADEMY PATROL (41116) | 03/19/2015 | 03/19/2015 | N/A | Complete | | 545h 0m |
| BASIC PO CERT (1/21/16) | 11/21/2014 | 11/21/2014 | N/A | Complete | | 0h 0m |
| PEACE OFFICER BASIC ACADEMY COURSE | 11/20/2014 | 11/20/2014 | N/A | Complete | BASIC TRAINING | 542h 0m |
| TEMPORARY PEACE OFFICER CERTIFICATION | 08/18/2014 | 08/18/2014 | N/A | Complete | | 0h 0m |
| BS DEGREE | 05/07/2008 | 05/07/2008 | N/A | Complete | | 1330h 0m |

**Total Hours    (2530h 0m)**

A grade of ## indicates that the weights for this class are not valid and grades cannot be calculated.

*For Official Use Only*

*Page 2 of 2*

## EVA, GINGER N
(Alias: Eva, Ginger)

No Picture

| | | | |
|---|---|---|---|
| **Sex** | Female | **Race** | White |
| **DOB** | ▓▓ | **Ethnicity** | Not Hispanic or Latino |
| **Age** | ▓ | | |
| **Height** | 5' 10" | | |
| **Weight** | 170 lbs | **Eye Color** | Green |
| **Deceased** | No | **Hair Color** | Brown |
| | | **Build** | Medium |
| | | **Complexion** | Medium |

**Distinctive Markings**
None

### Contact Information

| | | | |
|---|---|---|---|
| **Street Address** | ▓▓▓▓▓▓▓▓▓▓▓▓ | | |
| **Emergency Contact** | | **Home** ▓▓▓▓ | Last Modified 7/9/06 |
| **Employer** | | **Cell** ▓▓▓▓ | Last Modified 4/3/15 |
| **Occupation** | TSO Screener | **Cell** ▓▓▓▓ | Last Modified 7/9/06 |

### Identification

| | | | | | |
|---|---|---|---|---|---|
| **OLN** | ▓▓▓▓ | **OLN** | ▓▓▓▓ | **SSN** | Not Shown |

### Background

| | | | |
|---|---|---|---|
| **Last Grade** | | **Marital Status** | **Religion** |
| **Citizenship** | | **Place of Birth** | |
| **State of Birth** | | **Country of Birth** | |

### Comments

Clothing:
Alien Status:
Contacts:
Spouse: Trevor Eva

### History

| 03/12/18 12:59 | JPD | Incident | #PDP180300050, DISTURB : Disturbance |
|---|---|---|---|

Involvements for EVA, GINGER N
  **Witness**
  JMC 12.16.170 - AIRPORT: COMPLIANCE WITH SECURITY REQUIREMENTS
  JMC 12.16.160 - AIRPORT: OFFENSES AGAINST PERSONS AND PROPERTY

| 04/03/15 05:25 | TCSO | Incident | #1503S-3823, COLL : Collision |
|---|---|---|---|

Involvements for Eva, Ginger N
  **Driver**
  Invalid Statute - TRAFF COLL: TRAFFIC COLLISION

| 08/11/11 15:30 | TCSO | Traffic Warning | Traffic Warning #W11123R, warned |
|---|---|---|---|

Charge: Invalid Statute - WARNING: WARNING CITATION ONLY

| 04/03/08 09:50 | JPD | Traffic Citation | Traffic Citation #72942X, cited |
|---|---|---|---|

Charge: Invalid Statute - MC.10.04.070.B: SPEEDING

| 07/09/06 14:04 | JPD | Incident | ▓▓▓▓▓▓▓▓▓ |
|---|---|---|---|

Involvements for Eva, Ginger N
  **Parent/Guardian**

| 02/22/05 00:00 | JPD | | Civil Process | | Civil Paper | ▇▇▇▇▇▇▇ |
| 02/22/05 00:00 | TCSO | | Civil Process | | Civil Paper | ▇▇▇▇▇▇▇ |

## Vehicles

| ▇▇▇▇▇ **BROWN FORD EXP - Past Record Association** |
|---|

| 04/03/15 05:25 | TCSO | Case | #1503S-3823 |
Other; Incident Code COLL : Collision

| ▇▇▇▇▇ **WHITE PETR SEMI - Past Record Association** |
|---|

| 04/03/15 05:25 | TCSO | Case | #1503S-3823 |
Other; Incident Code COLL : Collision

## Karnes, Nathan

|  |  |  |  |
|---|---|---|---|
| No Picture | **Sex** Unknown | **Race** | Unknown |
|  | **DOB** | **Ethnicity** | Unknown |
|  | **Age** | **Eye Color** | Unknown |
|  | **Height** | **Hair Color** |  |
|  | **Weight** lbs | **Build** |  |
|  | **Deceased** No | **Complexion** |  |
|  | **Distinctive Markings** |  |  |
|  | None |  |  |

### Contact Information

**Street Address** 150 E Pearl Avenue, Jackson, WY 83001

**Emergency Contact**                                        **Work** (307) 733-1430 Last Modified 10/4/15

**Employer**

**Occupation**          Police Officer

### Identification

**State ID Card #**  726

### Background

| **Last Grade** | **Marital Status** | **Religion** |
|---|---|---|
| **Citizenship** | **Place of Birth** | |
| **State of Birth** | **Country of Birth** | |

### Comments

Clothing:
Alien Status:
Contacts:
Employer: Jackson Police Dept

### History

| 08/22/17 10:23 | JPD | Accident Report | Accident ▓▓▓▓▓▓ |
|---|---|---|---|
| 06/18/17 16:57 | JPD | Incident | ▓▓▓▓▓▓, WARRANTARR : Arrest Warrant |

Involvements for Karnes, Nathan
Other
  JMC 10.04.355.B - USE OF CELL PHONE WHILE DRIVING PROHIBITED
  Invalid Statute - WARR ARREST: FTA: NO INSURANCE - OPERATOR
  31-4-103(b) - NO INSURANCE - OPERATOR

| 06/12/17 19:00 | JPD | Incident | ▓▓▓▓▓▓ VEHSTLN : Stolen Vehicle |
|---|---|---|---|

Involvements for Karnes, Nathan
Witness
  31-11-102 - UNAUTHORIZED USE OF A VEHICLE (OTHER VEHICLE)

| 05/11/17 14:46 | JPD | Incident | ▓▓▓▓▓▓ SUICIDSUB : Suicidal Subject |
|---|---|---|---|

Involvements for Karnes, Nathan
Witness
  Invalid Statute - 25.10.109.A: MENTAL HOLD

| 04/14/17 12:12 | JPD | Incident | ▓▓▓▓▓▓ WARRANTARR : Arrest Warrant |
|---|---|---|---|

Involvements for Karnes, Nathan
Witness
  Invalid Statute - K9: CANINE INVOLVED REPORT
  35-7-1031(c)(i)(A) - POSS OF CONT SUBS PLANT MATERIAL - LESS THAN 3OZ

04/14/17 10:37   JPD                    Incident                         ███████ DRUGS : Drugs
Involvements for Karnes, Nathan
Witness
  Invalid Statute - K9: CANINE INVOLVED REPORT
  31-4-103(a) - NO INSURANCE - OWNER
  35-7-1031(c)(i)(A) - POSS OF CONT SUBS PLANT MATERIAL - LESS THAN 3OZ

03/31/17 04:20   JPD                    Incident                         ██████ DEATH : Death
Involvements for Karnes, Nathan
Witness
  Invalid Statute - UNATT DEATH: UNATTENDED DEATH

03/04/17 13:20   JPD                    Incident                         ██████ SHOPLIFT : Shoplifting
Involvements for Karnes, Nathan
Witness
  6-3-404(a)(iii) - SHOPLIFTING: CONCEAL MERCHANDISE-LESS THAN $1000

02/22/17 15:39   JPD                    Incident                         ████████ COLL : Collision
Involvements for Karnes, Nathan
Driver
  Invalid Statute - STATE ACCIDENT RPT: STATE ACCIDENT REPORT
  Invalid Statute - TRAFF COLL: TRAFFIC COLLISION

02/04/17 13:56   JPD                    Incident                         ███████ DRUGS : Drugs
Involvements for Karnes, Nathan
Witness
  35-7-1031(c)(i)(A) - POSS OF CONT SUBS PLANT MATERIAL - LESS THAN 3OZ

02/02/17 07:50   JPD                    Incident                         ████████ DVP : Domestic Violence (Physical)
Involvements for Karnes, Nathan
Witness
  6-2-511(a) - DOMESTIC BATTERY
  Invalid Statute - 6.2.502.A.III: AGG ASSAULT & BATTERY; THREATEN WITH WEAPON

12/13/16 16:10   JPD                    Incident                         ███████ TRESPASS : Trespass
Involvements for Karnes, Nathan
Witness
  JMC 9.56.010 - CRIMINAL TRESSPASS

11/14/16 16:14   JPD                    Incident                         ███████ , DRUGS : Drugs
Involvements for Karnes, Nathan
Witness
  Invalid Statute - WARR ARREST: WARRANT ARREST NON FTA (BENCH WARRANT)
  Invalid Statute - K9: CANINE INVOLVED REPORT
  7-13-305(c) - PROBATION VIOLATION: REVOCATION PROCEEDINGS
  6-5-204(a) - INTERFERENCE WITH PEACE OFFICER
  35-7-1031(c)(i)(C) - POSSESSION OF CONTROLLED SUBSTANCE IN POWDER OR CRYSTALINE FORM < 3 gm
  (DANGEROUS NON-NARCOTICS)
  35-7-1031(c)(i)(A) - POSS OF CONT SUBS PLANT MATERIAL - LESS THAN 3OZ

10/27/16 20:33   JPD                    Incident                         ████████ ORDERVPROB : Probation Order
                                                                         Violation
Involvements for Karnes, Nathan
Witness
  12-6-101(c)(iv) - MINOR CONSUME ANY ETHYL ALCOHOL
  6-4-406(a) - PERMIT HOUSE PARTY MINORS PRESENT
  7-13-411(b) - APPREHENSION OF VIOLATORS BY PEACE OFFICER (PROBATION)

10/25/16 17:08   TCSO                   Incident                         ███████ COLL : Collision
Involvements for Karnes, Nathan
Driver

31-5-220 - FAILURE TO YIELD RIGHT OF WAY APPROACHING INTERSECTION
Invalid Statute - TRAFF COLL: TRAFFIC COLLISION

10/23/16 09:18   JPD                    Incident                          WELFARE : Welfare Check
Involvements for Karnes, Nathan
Witness
  Invalid Statute - WELFARE CK: WELFARE CHECK
  Invalid Statute - INFO ONLY: INFORMATION REPORT

10/18/16 12:15   JPD                    Incident                       , COLL/H&R : Collision Hit and Run
Involvements for Karnes, Nathan
Witness
  Invalid Statute - STATE ACCIDENT RPT: STATE ACCIDENT REPORT
  Invalid Statute - TRAFF COLL: TRAFFIC COLLISION
  31-5-1104 - DUTY UPON COLLIDING WITH UNATTENDED VEHICLE OR PROPERTY
  31-4-103(a) - NO INSURANCE - OWNER

09/08/16 22:03   JPD                    Incident                          PI : Public Intoxication
Involvements for Karnes, Nathan
Witness
  JMC 9.36.010 - PUBLIC INTOXICATION

09/05/16 02:45   JPD                    Incident                          DUI : Driving Under Influence
Involvements for Karnes, Nathan
Witness
  31-5-233(b)(i) - DRIVE/CONTROL VEH UNDER INFL ALCOHOL CONCENTRATION 0.08% OR MORE

09/05/16 01:17   JPD                    Incident                          PI : Public Intoxication
Involvements for Karnes, Nathan
Witness
  JMC 9.36.010 - PUBLIC INTOXICATION

09/04/16 23:49   JPD                    Incident                          COLL : Collision
Involvements for Karnes, Nathan
Witness
  Invalid Statute - STATE ACCIDENT RPT: STATE ACCIDENT REPORT
  Invalid Statute - TRAFF COLL: TRAFFIC COLLISION

09/03/16 19:32   JPD                    Incident                          PERMISS : Missing Person
Involvements for Karnes, Nathan
Witness
  Invalid Statute - MISS PERSON: MISSING PERSON
  Invalid Statute - INFO ONLY: INFORMATION REPORT

08/16/16 00:09   JPD                    Incident                          : Domestic Violence (Physical)
Involvements for Karnes, Nathan
Witness
  6-2-511(a) - DOMESTIC BATTERY

08/11/16 22:42   JPD                    Incident                          : Driving Under Influence
Involvements for Karnes, Nathan
Witness
  31-5-235 - CONSUME AND POSSESS OPEN CONTAINER ALCOHOL BY OPER. OF VEHICLE
  31-5-233(b)(i) - DRIVE/CONTROL VEH UNDER INFL ALCOHOL CONCENTRATION 0.08% OR MORE

08/08/16 03:08   JPD                    Incident                          : Public Intoxication
Involvements for Karnes, Nathan
Witness
  JMC 9.36.010 - PUBLIC INTOXICATION

08/02/16 04:16   JPD                    Incident                          , SUSCIR : Suspicious Circumstances
Involvements for Karnes, Nathan
Witness

Invalid Statute - SUSP CIRCS: SUSP CIRCUMSTANCES
7-13-305(c) - PROBATION VIOLATION: REVOCATION PROCEEDINGS

07/28/16 01:02   JPD                    Incident              ▮▮▮▮   PI : Public Intoxication
Involvements for Karnes, Nathan
**Witness**
   JMC 9.36.010 - PUBLIC INTOXICATION

07/25/16 03:47   JPD                    Incident              ▮▮▮▮ , DRUGS : Drugs
Involvements for Karnes, Nathan
**Witness**
   6-3-302(a) - CRIMINAL ENTRY
   6-3-201(a)(b)(iii) - DESTRUCTION OF PROPERTY: MORE THAN $1000
   35-7-1039 - USE OR UNDER INFL. OF MANUFACTURED NARCOTICS

07/25/16 03:40   JPD                    Incident              ▮▮▮▮ , PI : Public Intoxication
Involvements for Karnes, Nathan
**Witness**
   JMC 9.36.010 - PUBLIC INTOXICATION

07/09/16 19:00   JPD                    Incident              #▮▮▮▮ , DUI : Driving Under Influence
Involvements for Karnes, Nathan
**Witness**
   Invalid Statute - DRE: DRUG RECOGNITION EVALUATION
   31-5-233(b)(iii)(B) - DRIVE/CONTROL VEH UNDER INFL OF A CONTROLLED SUBSTANCE

07/09/16 02:34   JPD                    Incident              ▮▮▮▮ PROPFND : Found Property
Involvements for Karnes, Nathan
**Witness**
   Invalid Statute - FOUND PROP: FOUND PROPERTY

07/09/16 01:56   JPD                    Incident              ▮▮▮▮ , TRESPASS : Trespass
Involvements for Karnes, Nathan
**Witness**
   6-3-303(a) - CRIMINAL TRESPASS

06/17/16 18:00   JPD                    Incident              ▮▮▮▮ , ACCOMP : Animal Control Complaint
Involvements for Karnes, Nathan
**Witness**
   Invalid Statute - 7.05.030.A: AGGRESSIVE OR VICIOUS ANIMALS
   JMC 7.05.030.A - AGGRESSIVE OR VICIOUS ANIMALS

05/22/16 17:43   JPD                    Incident              ▮▮▮▮ , RUNAWAY : Runaway
Involvements for Karnes, Nathan
**Witness**
   Invalid Statute - CHINS: CHINS

05/11/16 18:06   JPD                    Incident              ▮▮▮▮ 1, COLL/INJ : Collision with Injury
Involvements for Karnes, Nathan
**Witness**
   Invalid Statute - STATE ACCIDENT RPT: STATE ACCIDENT REPORT
   Invalid Statute - TRAFF COLL: TRAFFIC COLLISION

04/27/16 15:13   JPD                    Incident              ▮▮▮▮ SUICIDSUB : Suicidal Subject
Involvements for Karnes, Nathan
**Witness**
   Invalid Statute - 25.10.109.A: MENTAL HOLD

04/24/16 17:17   JPD                    Incident              ▮▮▮▮ , ORDERVPROB : Probation Order
                                                               Violation
Involvements for Karnes, Nathan
**Witness**
   7-13-305(c) - PROBATION VIOLATION: REVOCATION PROCEEDINGS

04/24/16 10:22   JPD                           Incident              ▓▓▓▓, DVP : Domestic Violence (Physical)
Involvements for Karnes, Nathan
   Witness
   Invalid Statute - INFO ONLY: INFORMATION REPORT
   Invalid Statute - DISTURBANCE: DISTURBANCE

04/13/16 15:15   JPD                           Incident              ▓▓▓▓, CHINS : Child in Need of
                                                                     Supervision
Involvements for Karnes, Nathan
   Witness
   Invalid Statute - CHINS: CHINS

03/16/16 22:51   JPD                           Incident              ▓▓▓▓, VEHSTLN : Stolen Vehicle
Involvements for Karnes, Nathan
   Witness
   31-11-102 - UNAUTHORIZED USE OF A VEHICLE (OTHER VEHICLE)
   6-3-402(a)(c)(i) - GRAND THEFT MOTOR VEHICLE (AUTO MORE THAN $1000)

01/16/16 15:57   JPD                           Incident              ▓▓▓▓ DESTPROP : Destruction of Property
Involvements for Karnes, Nathan
   Witness
   6-3-201(a)(b)(i) - DESTRUCTION OF PROPERTY: LESS THAN $1000

12/20/15 21:06   JPD                           Incident              ▓▓▓▓ WELFARE : Welfare Check
Involvements for Karnes, Nathan
   Witness
   Invalid Statute - WELFARE CK: WELFARE CHECK
   Invalid Statute - INFO ONLY: INFORMATION REPORT

12/04/15 22:17   TCSO                          Incident              ▓▓▓▓ DUI : Driving Under Influence
Involvements for Karnes, Nathan
   Witness
   31-5-910 - NO HEADLIGHTS WHEN DARK
   31-5-235 - CONSUME AND POSSESS OPEN CONTAINER ALCOHOL BY OPER. OF VEHICLE
   31-5-233(b)(i) - DRIVE/CONTROL VEH UNDER INFL ALCOHOL CONCENTRATION 0.08% OR MORE
   31-5-224(a) - FAILURE TO YIELD TO EMERGENCY VEHICLE

10/03/15 22:08   JPD                           Incident              ▓▓▓▓, DUI : Driving Under Influence
Involvements for Karnes, Nathan
   Witness
   JMC 10.04.450.B.1 - DRIVING/CONTROL OF VEHICLE WHILE INTOX. .08% AND GREATER

**Vehicles**

| ▓▓▓▓ **WHITE FORD TAU - Past Record Association** | | |

08/22/17 10:23   JPD                           Accident Report       ▓▓▓▓
02/22/17 15:39   JPD                           Case                  ▓▓▓▓
   Other; Incident Code COLL : Collision
10/25/16 17:08   TCSO                          Case                  ▓▓▓▓
   Other; Incident Code COLL : Collision

| ▓▓▓▓ **BLUE FORD TAU - Past Record Association** | | |

10/18/16 12:15   JPD                           Case                  ▓▓▓▓
   Other; Incident Code COLL/H&R : Collision Hit and Run

| ▓▓▓▓ **WHITE GMC SIERR - Past Record Association** | | |

01/16/16 15:57   JPD                           Case                  ▓▓▓▓
   Other; Incident Code DESTPROP : Destruction of Property



| ██████ CHEV CRS - Past Record Association |
|---|
| 07/09/16 19:00   JPD          Case          ██████ |
| Other; Incident Code DUI : Driving Under Influence |

| ██████ TAC - Past Record Association |
|---|
| 12/04/15 22:17   TCSO          Case          ██████ |
| Other; Incident Code DUI : Driving Under Influence |

| ██████ FLE - Past Record Association |
|---|
| 02/22/17 15:39   JPD          Case          ██████ |
| Other; Incident Code COLL : Collision |

| ██████ DODG - Past Record Association |
|---|
| 08/08/16 03:08   JPD          Case          ██████ |
| Other; Incident Code PI : Public Intoxication |

| ██████ FORD PU - Past Record Association |
|---|
| 11/14/16 16:14   JPD          Case          ██████ |
| Other; Incident Code DRUGS : Drugs |

| ██████ FORD TAU - Past Record Association |
|---|
| 09/03/16 19:32   JPD          Case          ██████ |
| Other; Incident Code PERMISS : Missing Person |

| ██████ RED JEEP CHK - Past Record Association |
|---|
| 06/12/17 19:00   JPD          Case          ██████ |
| Other; Incident Code VEHSTLN : Stolen Vehicle |

| ██████ CHK - Past Record Association |
|---|
| 06/12/17 19:00   JPD          Case          ██████ |
| Other; Incident Code VEHSTLN : Stolen Vehicle |

| ██████ BLACK FORD ESC - Past Record Association |
|---|
| 05/11/16 18:06   JPD          Case          ██████ |
| Other; Incident Code COLL/INJ : Collision with Injury |

| ██████ RED BMW X6 - Past Record Association |
|---|
| 10/03/15 22:08   JPD          Case          ██████ |
| Other; Incident Code DUI : Driving Under Influence |

| ██████ CHEV TK - Past Record Association |
|---|
| 04/13/16 15:15   JPD          Case          ██████ |
| Other; Incident Code CHINS : Child in Need of Supervision |

| ██████ WHITE TOYT RAV4 - Past Record Association |
|---|
| 05/11/16 18:06   JPD          Case          ██████ |
| Other; Incident Code COLL/INJ : Collision with Injury |

| ██████ MAZD --- - Past Record Association |
|---|
| 08/11/16 22:42   JPD          Case          ██████ |
| Other; Incident Code DUI : Driving Under Influence |



| ███████ WHITE HYUN - Past Record Association | | |
|---|---|---|
| 07/25/16 03:47   JPD | Case | ███████ |
| Other; Incident Code DRUGS : Drugs | | |

| ███████ BLACK DODG RAMC - Past Record Association | | |
|---|---|---|
| 10/18/16 12:15   JPD | Case | ███████ |
| Other; Incident Code COLL/H&R : Collision Hit and Run | | |

| ███████ TOYT TAC - Past Record Association | | |
|---|---|---|
| 05/11/16 18:06   JPD | Case | ███████ |
| Other; Incident Code COLL/INJ : Collision with Injury | | |

| ███████ BLACK - Past Record Association | | |
|---|---|---|
| 09/04/16 23:49   JPD | Case | ███████ |
| Other; Incident Code COLL : Collision | | |

| ███████ Past Record Association | | |
|---|---|---|
| 08/22/17 10:23   JPD | Accident Report | ███████ |

| ███████ TOYT RAV4 - Past Record Association | | |
|---|---|---|
| 03/16/16 22:51   JPD | Case | ███████ |
| Other; Incident Code VEHSTLN : Stolen Vehicle | | |

| ███████ IMP - Past Record Association | | |
|---|---|---|
| 12/13/16 16:10   JPD | Case | ███████ |
| Other; Incident Code TRESPASS : Trespass | | |

| ███████ FORD MUS - Past Record Association | | |
|---|---|---|
| 06/18/17 16:57   JPD | Case | ███████ |
| Other; Incident Code WARRANTARR : Arrest Warrant | | |

| ███████ TOYT CAR - Past Record Association | | |
|---|---|---|
| 11/14/16 16:14   JPD | Case | ███████ |
| Other; Incident Code DRUGS : Drugs | | |

| ███████ MERC MAR - Past Record Association | | |
|---|---|---|
| 10/25/16 17:08   TCSO | Case | ███████ |
| Other; Incident Code COLL : Collision | | |

## KARICHNER, STAN LEROY

No Picture

| | | | |
|---|---|---|---|
| **Sex** | Male | **Race** | White |
| **DOB** | | **Ethnicity** | Not |
| **Age** | | | Hispanic |
| **Height** | 5' 6" | | or |
| **Weight** | 175 lbs | | Latino |
| **Deceased** | No | **Eye Color** | Brown |
| | | **Hair Color** | Brown |
| | | **Build** | |
| | | **Complexion** | |

**Distinctive Markings**
None

### Contact Information

**Street Address** 1250 E AIRPORT ROAD, JACKSON, WY 83001

**Emergency Contact**                                    **Work** (307) 733-7695 Last Modified 3/20/18
**Employer**
**Occupation**

### Identification

### Background

| | | |
|---|---|---|
| **Last Grade** | **Marital Status** | **Religion** |
| **Citizenship** | **Place of Birth** | |
| **State of Birth** | **Country of Birth** | |

### Comments

### History

03/12/18 12:59    JPD                    Incident            #PDP180300050, DISTURB : Disturbance
Involvements for KARICHNER, STAN LEROY
  Witness
  JMC 12.16.160 - AIRPORT: OFFENSES AGAINST PERSONS AND PROPERTY
  JMC 12.16.170 - AIRPORT: COMPLIANCE WITH SECURITY REQUIREMENTS

### Vehicles

**IN THE MUNICIPAL COURT**

**TOWN OF JACKSON, STATE OF WYOMING**

FILED
MUNICIPAL COURT
TOWN OF JACKSON

Received by. _SMA_

Date. _8|30|18_

| | |
|---|---|
| TOWN OF JACKSON | ) |
| | ) |
| *Plaintiff,* | ) |
| *v.* | ) |
| | ) |
| WILLIAM A. FREY, | ) |
| | ) |
| *Defendant.* | ) |

Docket No. _18-08-07-69_

COMES NOW, Lea Colasuonno, Prosecuting Attorney of the Town of Jackson, County of Teton, State of Wyoming, and in the name and by authority of the Town of Jackson informs the Court and gives the Court to understand that William A. Frey, on or about March 12, 2018, at the Jackson Hole Airport in the state of Wyoming, did unlawfully commit the following act:

**COUNT 1: Compliance With Security Requirements**
**Jackson Municipal Code § 12.16.170(A)**

On or about March 12, 2018 William A. Frey was at the Jackson Hole Airport, and therein subject to the Jackson Municipal Code of Jackson, Wyoming and interfered with and/or compromised any security system, measure, or procedure implemented at the Airport. *Aff.* Nathan Karnes.

As more particularly set forth in the affidavit filed herewith, and incorporated herein by reference, said acts are contrary to the Town of Jackson ordinance in such case made and provided, and against the peace and the dignity of the Town of Jackson, State of Wyoming.

Respectfully Submitted,

Lea Colasuonno
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497
Wyoming State Bar No. 7-5155
lcolasuonno@townofjackson.com

I, Lea Colasuonno, Prosecuting Attorney, Town of Jackson, State of Wyoming, do solemnly swear that I have read the above and foregoing Criminal Information by me subscribed,

that I know the contents thereof, and that the facts therein stated are true or that I have been reliably informed and verily believe the facts therein stated to be true.

Lea Colasuonno
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497
Wyoming State Bar No. 7-5155
lcolasuonno@townofjackson.com

STATE OF WYOMING    )
                    ) ss.
COUNTY OF TETON     )

Sworn to before me and signed in my presence this 30th day of August, 2018, and I do hereby so certify.

Notary Public

My commission expires: 11/06/2021

Carl R. Pelletier - Notary Public
County of Teton    State of Wyoming
My Commission Expires 11/06/21

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 30th day of August, 2018, a true and correct copy of the foregoing was served as follows:

Seth Johnson                    [x] Email
Attorney for Defendant          [x] U.S. Mail
Box 1309                        [ ] Hand Delivery
Saratoga, WY 82331

Lea Colasuonno
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497
Wyoming State Bar No. 7-5155
lcolasuonno@jacksonwy.gov

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, WYOMING

TOWN OF JACKSON

     Plaintiff,

vs.

FREY, WILLIAM A

     Defendant,

## PROBABLE CAUSE

PDP180300050

8/28
Corrected
PC.
Affidavit

VICTIM(S) NAME _____

AFFIANT  *Nathan Karnes*

States that the Defendant,   FREY, WILLIAM A

By (NAME OF ARRESTING OFFICER)   726 – NATHAN KARNES

at   1300   this   Tuesday, March 13, 2018
  (TIME)      (DAY)     (DATE)

at (LOCATION)   1250 EAST AIRPORT ROAD

for (CHARGE(S))   AIRPORT:  COMPLIANCE WITH SECURITY REQUIREMENTS

in violation of (STATUTE(S))   JMC 12.16.170 (A)

## NARRATIVE

(SET FORTH SUFFICIENT DETAIL TO PERMIT INFORMED JUDICIAL REVIEW AND PROBABLE CAUSE DETERMINATION):

While on scheduled patrol at Jackson Hole Airport when the Screening Supervisor Martha Preston called Officer Nathan Karnes and requested that he respond to screening.  Officer Karnes spoke with Supervisor Preston and was informed that William Frey went through a screening device that showed that Frey had an area on his groin and upper inner thigh that needed additional screening.  Frey stated he was willing to be rescanned but, "I am not willing to have someone feel my balls".  Supervisor Preston stated the SOP, standard operating procedure, states they are not allowed to re-screen someone.  Officer Karnes told Frey that he once he started the screening process that he is required to finish the process as the screeners have directed.  Frey stated he was not going to be sexually assaulted and refused to complete the screening process.  Frey stated he would walk through a screening device again but would not submit to a physical search of his person.

Officer Karnes arrested Frey for interfering with the security procedure implemented at the airport as Frey refused to be searched and thus compromised a security procedure implemented at the airport.

The above facts constitute probable cause for the Defendant's warrantless arrest

Dated this   28th   day of   August 2018   ,

_____
AFFIANT SIGNATURE

State of Wyoming    )
               ) ss
County of Teton      )

SUBSCRIBED AND SWORN TO BEFORE ME BY   *Nathan Karnes*
                                 PRINT OR TYPE NAME OF AFFIANT

this   28   day of   August   , 20 18

WITNESS my hand and official seal.

*Cynthia A. Riedel*
☐ Municipal Court Judge  ☐ Clerk of the Court  ☒ Notary Public

Cynthia A. Riedel - Notary Public
County of Teton    State of Wyoming
My Commission Expires  May 30, 2022

000094

PDP180300050

FILED
MUNICIPAL COURT
TOWN OF JACKSON

IN THE MUNICIPAL COURT
TOWN OF JACKSON, STATE OF WYOMING

Received by: _Schuiman_
Date. _8-30-18_

TOWN OF JACKSON            )
                          )
            *Plaintiff,*    )
*v.*                        )        Docket No. 18-03-0226
                          )
WILLIAM A. FREY,          )
                          )
            *Defendant.*    )

## PLAINTIFF'S MOTION TO AMEND CITATION

COMES NOW the Plaintiff, Town of Jackson, by and through counsel undersigned, and submits its *Motion to Amend Citation* in the above-captioned matter, and in support thereof avers as follows:

1.  On or about March 12, 2018 William A. Frey, Defendant, was charged by citation 186004756AA with violating Jackson Municipal Code § 12.16.070(A).

2.  W.R.Crim.P. 3 provides that "[w]ithout leave of the court, the attorney for the state may amend an information or citation until five days before a preliminary examination in a case required to be tried in district court or until five days before trial for a case not required to be tried in district court. The court may permit an information or citation to be amended: (1) With the defendant's consent, at any time before sentencing. (2) Whether or not the defendant consents: (A) At any time before trial if substantial rights of the defendant are not prejudiced. (B) At any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

3.  This case is not required to be tried in district court.

4.  The Town conferred with Defendant regarding this Motion and he does not object.

5.  It is before trial and the substantial rights of Defendant are not prejudiced by this *Motion to Amend Citation* in light of the fact that the Probable Cause Affidavit, which Defendant has had since March 2018, sets forth the facts and circumstances of violating JMC 12.16.70**(B)** and, erroneously, listed subsection **(A)** on the citation.

6.  The Town hereby moves to amend the citation 186004756AA to allege Defendant violated Jackson Municipal Code § 12.16.070**(B)**.

*FILED*
*MUNICIPAL COURT*
*TOWN OF JACKSON*
Received by:
Date.

**IN THE MUNICIPAL COURT**

**TOWN OF JACKSON, STATE OF WYOMING**

|  |  |
|---|---|
| TOWN OF JACKSON | ) |
| | ) |
| *Plaintiff,* | ) |
| *v.* | )     Docket No. 18-03-0226 |
| | ) |
| WILLIAM A. FREY, | ) |
| | ) |
| *Defendant.* | ) |

## PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO PRODUCE BILL OF PARTICUALRS

COMES NOW Plaintiff, Town of Jackson, by and through counsel undersigned, and objects to Defendant's *Motion to Produce Bill of Particulars* as follows:

1. Defendant filed a *Motion to Produce Bill of Particulars* on August 15, 2018 arguing the "citation/complaint is vague, indefinite, uncertain and insufficient in general terms and conclusions; that Defendant is unable . . . to reasonably know the nature and cause of the charge . . . to prepare and intelligent defense . . . ." Def. Mot. Bill Partic. 1.

2. "In general, the State is **not** required to provide additional information in a bill of particulars if the charging documents **or other disclosures** by the State adequately identify "**the nature of the offense, the place where it is alleged offenses were committed, the period of time covered thereby, as well as the specific statutes which it was claimed appellant violated.**" *Vernier v. State*, 909 P.2d 1344, 1352 (Wyo.1996) (emphasis added).

3. "The function of a bill of particulars is 'to make more specific the general allegations in the information to enable the defendant to prepare his defense and avoid being surprised at the trial.'" *Counts v. State*, 277 P.3d 94, 107 (Wyo. 2012) (citing *Heywood v. State*, 208 P.3d 71, 72 (Wyo.2009)).

4. While these clarification duties are part of the work of a Bill of Particulars, "a bill of particulars is inappropriate for obtaining evidence, facts, theories, and strategies." *Jansen v. State*, 892 P.2d 1131, 1141 (Wyo.1995).

5. Defendant's *Motion* seeks the "specific ordinance and subpart under which Defendant is charged." Def. Mot. Bill Partic. 1 ¶1.

6. After Defendant's *Motion to Produce Bill of Particulars* was filed on August 15, Town of Jackson filed an unopposed *Motion to Amend Citation* clarifying that Defendant is charged under Jackson Municipal Code § 12.16.170(B) and a *Criminal Information* detailing that Defendant is also charged under Jackson Municipal Code § 12.16.170(A). Exhibits A; B.

7. These filings bring into perfect clarity the "specific ordinance and subpart[s]" thereof Defendant is charged under. Def. Mot. Bill Partic. 1.

8. Defendant's *Motion* seeks "the specific prohibited conduct" Defendant engaged in at the Jackson Hole Airport." Def. Mot. Bill Partic. 1 ¶2.

9. The two (2) Probable Cause Affidavits, the Police Reports provided to Defendant, and the videos produced to Defendant show the exact conduct and the time of said conduct that gave rise to the charges against Defendant. Exhibits B, p 3; C; D; E; F.

10. Defendant's *Motion* seeks "[i]f the Defendant is charged under JMC 12.16.170(A) [to have the Town] identify the specific criminal acts the Defendant is accused of. Specifically, state which of the following acts the Defendant engaged in: "tamper or interfere with, compromise, modify, or attempt to circumvent[.]" Def. Mot. Bill Partic. 1 ¶3.

11. Town of Jackson's unopposed *Motion to Amend Citation* makes clear Defendant is charged under subsection (A) and the supporting Probable Cause Affidavit filed therewith, in addition to the other Probable Cause Affidavit, Police Reports, and the videos produced to Defendant, specifies and shows Defendant's actions that interfered, compromised, and his attempts to circumvent the security process and system at the Jackson Hole Airport. Exhibits B, p 3; C; D; E; F.

12. Defendant's *Motion* seeks "[i]f the Defendant is charged under JMC12.16.170(A) [to have the Town] identify the specific "security system, measure, or procedure implemented at the Airport" which you allege the Defendant violated (i.e. engaged in conduct described in item 3 above)[.]" Def. Mot. Bill Partic. 1 ¶4.

13. Town of Jackson's unopposed *Motion to Amend Citation* makes clear Defendant is charged under subsection (A) and the supporting Probable Cause Affidavit filed therewith, in addition to the other Probable Cause Affidavit, Police Reports, and the videos produced, specifies and shows Defendant's actions that interfered, compromised, and his attempts to circumvent the security process and system at the Jackson Hole Airport. Exhibits B, p 3; C; D; E; F.

14. Defendant's *Motion* requests the Town "[i]dentify and produce the written policies which describe any "'security system, measure, or procedure implemented at the Airport'" relevant to this case[.]" Def. Mot. Bill Partic. 2 ¶5.

15. Town posits that this is, on its face, a discovery request and the Wyoming Supreme Court directs that "a bill of particulars is inappropriate for obtaining evidence, facts, theories, and strategies." *Jansen*, 892 P.2d at 1141. Town is currently and will continue to comply with its discovery obligations under the Wyo. R. Crim. P. and any and all case law refining those obligations.

16. Defendant's *Motion* requests the Town [i]dentify the specific acts, conduct, methods or means by which the crime is alleged to have been committed." Def. Mot. Bill Partic. 2 ¶6.

17. Town posits that this is, on its face, a discovery request and the Wyoming Supreme Court directs that "a bill of particulars is inappropriate for obtaining evidence, facts, theories, and strategies." *Jansen*, 892 P.2d at 1141. Town is currently and will continue to comply with its discovery obligations under the Wyo. R. Crim. P. and any and all case law refining those obligations. It is noteworthy, however, that the Town has already provided Defendant via discovery with two (2) Probable Cause Affidavits, two (2) substantive Police Reports, and videos. Exhibits B p. 3; C; D; E; F (note Ex. F only contains two of the twelve videos provided to Defendant in this case).

*Town of Jackson v. William A. Frey*
Plaintiff's Objection to Defendant's Motion to Produce Bill of Particulars
Docket No. 18-03-0226
Page **2** of 3

000098

18. The "charging documents [and] other disclosures by the [Town] adequately identify the **nature of the offense, the place where it is alleged offenses were committed, the period of time covered thereby, as well as the specific statutes which it was claimed appellant violated**. *Vernier*, 909 P.2d at 1352 (emphasis added).

19. The affidavits and substantial volume of other disclosures in this case provide "specific [not] general allegations in the information [and] **enable the defendant to prepare his defense and avoid being surprised at the trial**." *Booth v. State*, 517 P.2d 1034, 1036 (Wyo.1974) (emphasis added).

WHEREFORE, Plaintiff respectfully moves this Court to DENY Defendant's *Motion to Produce a Bill of Particulars*.

DATED this 4th day of September, 2018.

Lea M. Colasuonno
WSB No. 7-5155
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September, 2018a true and accurate copy of the foregoing Response to Request for Discovery Directed to Defendant was served as indicated below and addressed to:

Seth Johnson, Attorney for the Defendant            U.S. mail only:        [X]
P.O. Box 1309                                        via Hand Delivery:    [ ]
Saratoga, WY 82331                                   Telefax:              [ ]
                                                     Email:                [X]

Lea M. Colasuonno
WSB No. 7-5155
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497

*Town of Jackson v. William A. Frey*
Plaintiff's Objection to Defendant's Motion to Produce Bill of Particulars
Docket No. 18-03-0226
Page 3 of 3
000089

FILED

MUNICIPAL COURT

IN THE MUNICIPAL COURT TOWN OF JACKSON

TOWN OF JACKSON, STATE OF WYOMING

Received by: _Schufman_

Date: _8-30-18_

TOWN OF JACKSON           )
                          )
            *Plaintiff,*  )
                          )
v.                        )          Docket No. 18-03-0226
                          )
WILLIAM A. FREY,          )
                          )
            *Defendant.*  )

## PLAINTIFF'S MOTION TO AMEND CITATION

COMES NOW the Plaintiff, Town of Jackson, by and through counsel undersigned, and submits its *Motion to Amend Citation* in the above-captioned matter, and in support thereof avers as follows:

1. On or about March 12, 2018 William A. Frey, Defendant, was charged by citation 186004756AA with violating Jackson Municipal Code § 12.16.070(A).

2. W.R.Crim.P. 3 provides that "[w]ithout leave of the court, the attorney for the state may amend an information or citation until five days before a preliminary examination in a case required to be tried in district court or until five days before trial for a case not required to be tried in district court. The court may permit an information or citation to be amended: (1) With the defendant's consent, at any time before sentencing. (2) Whether or not the defendant consents: (A) At any time before trial if substantial rights of the defendant are not prejudiced. (B) At any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

3. This case is not required to be tried in district court.

4. The Town conferred with Defendant regarding this Motion and he does not object.

5. It is before trial and the substantial rights of Defendant are not prejudiced by this *Motion to Amend Citation* in light of the fact that the Probable Cause Affidavit, which Defendant has had since March 2018, sets forth the facts and circumstances of violating JMC 12.16.70(**B**) and, erroneously, listed subsection (**A**) on the citation.

6. The Town hereby moves to amend the citation 186004756AA to allege Defendant violated Jackson Municipal Code § 12.16.070(**B**).

*Town of Jackson v. William A. Frey*
Docket No. 18-03-0226
Motion to Amend Citation
Page 1 of 2

000100

EXHIBIT A

DATED this 30th day of August, 2018.

Respectfully Submitted,

Lea Colasuonno
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497
Wyoming State Bar No. 7-5155
lcolasuonno@townofjackson.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 30th day of August, 2018, a true and correct copy of the foregoing was served as follows:

Seth Johnson                              [x] Email
Attorney for Defendant                    [x] U.S. Mail
Box 1309                                  [ ] Hand Delivery
Saratoga, WY 82331

Lea Colasuonno
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497
Wyoming State Bar No. 7-5155
lcolasuonno@jacksonwy.gov

*Town of Jackson v. William A. Frey*
Docket No. 18-03-0226
Motion to Amend Citation
Page 2 of 2

EXHIBIT A

000101

IN THE MUNICIPAL COURT

TOWN OF JACKSON, STATE OF WYOMING

**FILED**
MUNICIPAL COURT
TOWN OF JACKSON

Received by. _____ SMA

Date. _____ 8/30/18

| | |
|---|---|
| TOWN OF JACKSON | ) |
| *Plaintiff,* | ) |
| *v.* | ) |
| WILLIAM A. FREY, | ) |
| *Defendant.* | ) |

Docket No. _____

COMES NOW, Lea Colasuonno, Prosecuting Attorney of the Town of Jackson, County of Teton, State of Wyoming, and in the name and by authority of the Town of Jackson informs the Court and gives the Court to understand that William A. Frey, on or about March 12, 2018, at the Jackson Hole Airport in the state of Wyoming, did unlawfully commit the following act:

### COUNT 1: Compliance With Security Requirements
### Jackson Municipal Code § 12.16.170(A)

On or about March 12, 2018 William A. Frey was at the Jackson Hole Airport, and therein subject to the Jackson Municipal Code of Jackson, Wyoming and interfered with and/or compromised any security system, measure, or procedure implemented at the Airport. *Aff.* Nathan Karnes.

As more particularly set forth in the affidavit filed herewith, and incorporated herein by reference, said acts are contrary to the Town of Jackson ordinance in such case made and provided, and against the peace and the dignity of the Town of Jackson, State of Wyoming.

Respectfully Submitted,

Lea Colasuonno
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497
Wyoming State Bar No. 7-5155
lcolasuonno@townofjackson.com

I, Lea Colasuonno, Prosecuting Attorney, Town of Jackson, State of Wyoming, do solemnly swear that I have read the above and foregoing Criminal Information by me subscribed,

*Town of Jackson v. William A. Frey*
CRIMINAL INFORMATION
Page 1 of 2

**000102**

EXHIBIT B

that I know the contents thereof, and that the facts therein stated are true or that I have been reliably informed and verily believe the facts therein stated to be true.

Lea Colasuonno
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497
Wyoming State Bar No. 7-5155
lcolasuonno@townofjackson.com

STATE OF WYOMING    )
                    ) ss.
COUNTY OF TETON     )

Sworn to before me and signed in my presence this 30th day of August, 2018, and I do hereby so certify.

Carl R. Pelletier
_____
Notary Public

Carl R. Pelletier - Notary Public
County of Teton    State of Wyoming
My Commission Expires 11/06/21

My commission expires: 11/06/2021

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 30th day of August, 2018, a true and correct copy of the foregoing was served as follows:

Seth Johnson                    [x] Email
Attorney for Defendant          [x] U.S. Mail
Box 1309                        [ ] Hand Delivery
Saratoga, WY 82331

Lea Colasuonno
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497
Wyoming State Bar No. 7-5155
lcolasuonno@jacksonwy.gov

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, WYOMING

PDP180300050

TOWN OF JACKSON

    Plaintiff,

vs.

**PROBABLE CAUSE**

8/28
Corrected
PC.
Affidavit

FREY, WILLIAM A

    Defendant,

VICTIM(S) NAME _____

AFFIANT _Nathan Karnes_____

States that the Defendant,   FREY, WILLIAM A

By (NAME OF ARRESTING OFFICER)   726 – NATHAN KARNES

at __1300__ this __Tuesday, March 13, 2018__
  (TIME)    (DAY)   (DATE)

at (LOCATION)   1250 EAST AIRPORT ROAD

for (CHARGE(S))   AIRPORT: COMPLIANCE WITH SECURITY REQUIREMENTS

in violation of (STATUTE(S))   JMC 12.16.170 (A)

## NARRATIVE   (SET FORTH SUFFICIENT DETAIL TO PERMIT INFORMED JUDICIAL REVIEW AND PROBABLE CAUSE DETERMINATION):

While on scheduled patrol at Jackson Hole Airport when the Screening Supervisor Martha Preston called Officer Nathan Karnes and requested that he respond to screening. Officer Karnes spoke with Supervisor Preston and was informed that William Frey went through a screening device that showed that Frey had an area on his groin and upper inner thigh that needed additional screening. Frey stated he was willing to be rescanned but, "I am not willing to have someone feel my balls". Supervisor Preston stated the SOP, standard operating procedure, states they are not allowed to re-screen someone. Officer Karnes told Frey that he once he started the screening process that he is required to finish the process as the screeners have directed. Frey stated he was not going to be sexually assaulted and refused to complete the screening process. Frey stated he would walk through a screening device again but would not submit to a physical search of his person.

Officer Karnes arrested Frey for interfering with the security procedure implemented at the airport as Frey refused to be searched and thus compromised a security procedure implemented at the airport.

The above facts constitute probable cause for the Defendant's warrantless arrest
Dated this __28th__ day of __August 2018__ ,

_____
AFFIANT SIGNATURE

State of Wyoming  )
           ) ss
County of Teton   )

SUBSCRIBED AND SWORN TO BEFORE ME BY _Nathan Karnes_____
                          PRINT OR TYPE NAME OF AFFIANT

this __28__ day of __August__ , 20 __18__

WITNESS my hand and official seal.

_Cynthia G Riedel_____
☐ Municipal Court Judge ☐ Clerk of the Court ☑ Notary Public

Cynthia A. Riedel - Notary Public
County of Teton
State of Wyoming
My Commission Expires May 30, 2022

000104

PDP180300050

EXHIBIT B

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, WYOMING

TOWN OF JACKSON )

       Plaintiff, )

vs. )

FREY, WILLIAM A )

       Defendant, )

**PROBABLE CAUSE**

AFFIDAVIT IN SUPPORT OF
WARRANTLESS ARREST
(Rule 5, W.R.Cr.P)

PDPI80300050
1803-1156

VICTIM(S) NAME   {victims.name}

AFFIANT    Nathan Karnes        , being duly sworn,

States that the Defendant,  FREY, WILLIAM A      , was arrested

By (NAME OF ARRESTING OFFICER)   726 - Karnes, Nathan

on  03/12/18 13:00

at (LOCATION)   1250 E AIRPORT ROAD

in violation of (STATUTE(S))  JMC 12.16.170 - AIRPORT: COMPLIANCE WITH SECURITY REQUIREMENTS

**NARRATIVE**   (SET FORTH SUFFICIENT DETAIL TO PERMIT INFORMED JUDICIAL REVIEW AND PROBABLE CAUSE DETERMINATION):

While on scheduled patrol at Jackson Hole Airport when the Screening Supervisor Martha Preston called Officer Nathan Karnes and requested that he respond to screening. Officer Karnes spoke with Supervisor Preston and was informed that William Frey went through a screening device that showed that Frey had an area on his groin and upper inner thigh that needed additional screening. Frey stated he was willing to be rescanned but, "I am not willing to have someone feel my balls". Supervisor Preston stated the SOP, standard operating procedure, states they are not allowed to re-screen someone. Officer Karnes told Frey that he once he started the screening process that he is required to finish the process as the screeners have directed. Frey stated he was not going to be sexually assaulted and refused to complete the screening process. Officer Karnes arrested Frey for being in a restricted area at the airport and failing to comply with the screening being applied to that area.

The above facts constitute probable cause for the Defendant's warrantless arrest
Dated this  _12th_  day of _March_  _2018_   ,

                                AFFIANT SIGNATURE

State of Wyoming  )
                ) ss
County of Teton  )

SUBSCRIBED AND SWORN TO BEFORE ME BY _Nathan Karnes_
                                     PRINT OR TYPE NAME OF AFFIANT

this _12th_ day of _March_ , 20 _18_

WITNESS my hand and official seal.

                             _Lynda Kaye Rudolph_
                  ☐ Circuit Court Judge ☐ Clerk of the Court ☒ Notary Public

LYNDA KAYE RUDOLPH - NOTARY PUBLIC
County of      State of
Teton         Wyoming
My Commission Expires _2-2-20_

000105

EXHIBIT C



# Jackson Police Department
Todd Smith Chief of Police

*"We enhance the quality of life and provide for the safety and security of residents and visitors through professional police services."*
P.O. Box 1687 • 150 E. Pearl Avenue • Jackson, Wyoming 83001 • 307-733-1430 • FAX 307-733-3241 • www.jacksonholepolice.com

Primary Narrative                                                    Printed on March 27, 2018

## Primary Report By Nathan Karnes, 03/12/18 14:04
Case #PDP180300050
Typed By Nathan Karnes

INFORMATION:
While on scheduled patrol at Jackson Hole Airport on 3/12/2018 the Screening Supervisor Martha Preston called me on the Airport Law Enforcement cell phone and requested I respond to screening.

INTERACTION WITH WILLIAM FREY:
Upon arrival in the security checkpoint I spoke with Supervisor Preston and was informed a passenger, later identified as William Frey, went through the AIT body scanner (a millimeter wave screening device which resembles a large phone booth). The AIT indicated Frey's groin, upper inner thigh, and down the side of his leg needed additional screening. From my experience I knew areas which alarmed in the AIT required a physical pat down of the areas in question, per TSA protocols. Frey told me he was willing to be rescanned but said "I am not willing to have someone feel my balls". Supervisor Preston explained their SOP (standard operating procedure) states they are "not allowed to re-scan somebody" under these circumstances and Frey needed to submit to the pat down.

At first I attempted to explain the process screening process to Frey but he interrupted and stated, "I'm not gonna...If they wont let me on the plane then I'm going to leave". I again attempted to explain the process and Frey interrupted again asking "Do you want me to feel your balls?" I essentially explained to Frey because he purchased an airline ticket, he is required to go through screening, and when he enters the doors for screening and hands his boarding pass and identification to the screener then he is required to complete the screening process.

Frey stated in an angry tone while raising his voice he believed the pat down amounted to a sexual assault. At the same time he stepped toward me so he was less than an arms length away and gestured with his hand in an angry manner, almost touching me. I placed my hand on Frey's chest and gently pushed him back and told him to stay back, Frey hesitated and looked around briefly before exclaiming "Don't touch me!". Frey reiterated, "I'm not completing that screening". I informed Frey failure to complete the screening process would constitute a misdemeanor and is an arrest-able offense. Frey said, "Fire me, arrest me then, for not being willing to be sexually assaulted. Arrest me for that, try it!". Frey said if anyone touches him, "I'm gonna scream so fucking loud...". It was obvious to me Frey was becoming a serious distraction, so I instructed Frey to follow me out of the screening line to the back of the screening area. While walking to this location Frey stated, "It is not happening!"

Frey continued to talk, explaining "I'm not doing it. I'm not doing it, it's not a negotiation, I'm not doing it. I will not be sexually assaulted by these people". I informed Frey if I arrested him I would perform a more invasive search than the one he was being required to submit to for screening. Frey waived his arms several times while stepping closer to me as he threatened to litigate. I put up my hand and told him to stay back from me. I did this for my safety as Frey was extremely irritable.

ARREST:
I again told Frey that he once he started the screening process that he is required to finish the process as the screeners have directed. Frey emphatically stated he was not going to be sexually assaulted and refused to complete the screening process. Knowing Frey was required to complete the screening process once started and that re-screening was not an option; I felt I had no other option given his continued refusal to comply, but to arrest him so I could search him incident to a lawful arrest and clear the areas of his person which alarmed in the AIT. I arrested Frey

EXHIBIT D

000106

for being in a restricted area at the airport and failing to comply with the screening being applied to that area. Frey was cooperative when I told him to turn around and put his hands behind his back. I placed handcuffs on him, I checked for proper fit and tightness and double locked them. Frey refused to answer my questions regarding any weapons or sharp objects he might have on his person. Frey told me, "You figure it out".

I searched Frey incident to arrest paying special attention to the areas which alarmed in the AIT since they had not been cleared yet. I did not locate any foreign objects or suspicious items in those areas during my search. I collected Frey's driver's license and Frey's shoes before taking him to the PD office in the airport. Frey requested his wife be allowed to come with him, a request I denied because she was not under arrest. As I began to walk Frey to the PD office he became rigid and starting pushing back into me. He also started turning his body back around toward me. I regained control of Frey by utilizing a wrist lock and ordered him to stop resisting. Frey stated he was not resisting. Once Frey and I made it to the office, Frey asked if I could loosen the handcuff on his left wrist. I rechecked and loosened both cuffs at his request.

TRANSPORT:
I arranged to transport Frey to the jail which is our standard practice following any arrest. Corporal Kevin Jones arrived at the airport so I could transport Frey to the TCSO Jail. I placed Frey into the rear cabin portion of my patrol car, fastened his seatbelt, and transported him without incident.

CHARGES:
Frey was in clear violation of, and subsequently charged with, Jackson Municipal Code (J.M.C.) 12.16.170 (B) which states, "No person shall enter or be present in a Restricted Area without complying with the systems, measures, procedures, screening and/or inspection being applied to control access to or presence in such areas". Frey entered the Restricted Area after walked from the unsecured terminal area into the security checkpoint, which is a restricted area. Frey was allowed to enter the restricted area after he voluntarily provided his boarding pass and identification to the screener who was standing at the entrance of the restricted area.

JAIL:
Once at the jail, Frey was extremely uncooperative. Deputy Rudd informed me as they were attempting to book Frey he refused to answer questions, slammed his fists on the counter of the booking room, and demanded to speak to his lawyer. Deputies then escorted Frey to a cell until he was cooperative and agreed to complete the booking process. I returned to the jail to issue and explain the citation. While speaking with Frey he continued to yell at and threaten litigation against the Deputies and myself.

Deputies informed me that Frey later calmed down and agreed to complete the booking process. Prior to his release Deputies asked Frey if he was in need of any medical attention I was informed that Frey responded that he was not injured and did not need medical attention. Following completion of the booking process Frye was released.

BACK AT THE AIRPORT:
I returned to the airport to complete my shift after writing the Probable Cause Affidavit. While walking by baggage services, Frey was there collecting his luggage. Before I was able to activate my body camera, Frey stated he was sexually assaulted by screening personnel. Frey told me he looked up the definition of sexual assault, and I should too.

Frey told me that I should have de-escalated the situation with him. Frey stated, "You should not have twisted my arm, you know you twisted my arm, asshole!", he was pointing his finger at me before he reacquired his luggage cart and briskly walked away. Although Frey complained about the technique I used to get him to comply, he did not complain of any pain or injury.


BODY CAMERA FOOTAGE OBSERVATIONS:
Upon arrival in the screening area my body camera shows the screening lanes 1 & 2 had completely stopped and the

screeners had stopped screening presumably due to Frey's behavior.

At the beginning of my interaction with Frey TSO (Transportation Screening Officer) Stan Karichner can be seen standing behind Frey. While Frey is raising his voice, stepping toward me, and gesturing toward me, TSO Karichner was clearly distracted and can be seen turning his head to observe the disturbance Frey was making.  Another time TSO Karichner can be observed screening a passenger (NFI) and the passenger is obviously not focusing on being screened but turning his head to his left to look at Frey and me as we were talking.  Later on, just after Frey says "I'm gonna scream so fucking loud..." another female passenger (NFI) is distracted from TSO Ginger Eva, who is attempting to instruct and direct the passenger; and can be seen turning to look at Frey and away from TSO Eva.

ADDITIONAL CHARGES:
Based upon a review of my body camera footage I believe Frey also violated J.M.C. 12.16.160 (A) which states: "No Person shall interfere with any security screener, Airport employee, or flight crew member engaged in the performance of his or her duties." Frey violated this ordinance by interfering with screeners through his refusal to comply with the screening process, by distracting screeners from performing their duties, and by disrupting the continuity of the screening by being loud, threatening, and uncooperative. Frey should be charged with this, but I was unable to issue him a citation for this charge before he was released from jail.


EVIDENCE:
I entered my Prima Facie body camera footage from my camera and from camera 704 into evidence and burned a copy for the Municipal Court.  I entered my Coban footage into evidence from transporting Frey to the Jail.  I collected airport CCTV footage, Jail CCTV footage, and Jail staff body cameras and entered them all into evidence.

I reviewed the CCTV airport camera footage and noticed that screening personnel never touched Frey. Based on this, Frey could not have been sexually assaulted.  Even if they had conducted the pat down search of the alarmed areas of Frey's person, based on my observations of the process, the pat down would not have met the elements of sexual assault under Wyoming State Statute.


ADDITIONAL INFORMATION:

Frey had a coach class boarding pass for United Airlines flight 2402 which was traveling to Newark, New Jersey, and was not signed up for TSA Pre.

TSA PROTOCOLS:
Sergeant Phillips contacted TSA and learned their protocols require persons to complete the screening process once they begin the screening process.  He also confirmed persons are not allowed to be re-screened following an alarm from the AIT, but are required to submit to a pat down of the alarmed area of their person.  Re-screening is apparently allowed only under two very specific circumstances, which the TSA supervisor (NFI) would not elaborate on, but to say Frey's circumstances did NOT fit the protocol for re-screening.

UNITED AIRLINE INC. CONTRACT OF CARRIAGE:
United Airlines' website   *https://www.united.com/web/en-US/content/contract-of-carriage.aspx#sec20*   informs passengers of it's Contract of Carriage (the contract passengers enter into when they purchase a ticket).  The opening statement says, "...By purchasing a ticket or accepting transportation, the passenger agrees to be bound by these controlling terms of this Contract of Carriage...".

Rule 20 Screening of Passengers and Baggage of the Contract of Carriage states:
"Passengers and/or their baggage are subject to security screening, including but not limited to, security profiling, physical pat-downs and inspections, x-ray screening, manual bag searches, questioning of Passengers, and use of electronic or other detectors or screening or security devices, in the sole discretion of the government, airport or UA,

EXHIBIT D

and with or without the Passenger's presence, consent or knowledge. Neither UA nor its employees or agents is liable for any damage, loss, delay (including refusal to transport), confiscation of property, injury or other harm relating to or arising out of security screening conducted by an agent of the airport or any local, state, or federal agency or a Passenger's failure to submit to or comply with such security screening."

Report taken by Officer Nathan Karnes #726

CASE CLOSED WITH ARREST, NOTHING FURTHER.

EXHIBIT D



# Jackson Police Department
### Todd Smith Chief of Police

*"We enhance the quality of life and provide for the safety and security of residents and visitors through professional police services."*
P.O. Box 1687 • 150 E. Pearl Avenue • Jackson, Wyoming 83001 • 307-733-1430 • FAX 307-733-3241 • www.jacksonholepolice.com

---

Supplemental Narrative                                          Printed on March 27, 2018

## Supplemental Report By Rob Andazola, 03/27/18 11:07
**Case #PDP180300050**
**Typed By Rob Andazola**

On 03/27/2018 at 9:00 a.m., myself and Detective Jason Figueroa responded the Jackson Hole Airport to interview Martha Preston regarding the incident. During the interview she stated the following:

Martha told me Mr. Frey went through the AIT body scanner which alerted to his groin, hip and ankle areas. The Scanner was being manned by Stan Karichner and Ginger Eva. Karichner showed Frey the screen and where it alerted on him. Karichner told Frey that he would have to do a "Pat down search." Frey responded something to the effect, "No ones going to touch me". Employee Stephanie Walker told Preston that Karichner needed her at the AIT scanner.

Karichner told Preston the scanner had alerted on areas of Frey's body. Frey stated to Preston, "No one is going to fondle my balls." Preston stated she believed she offered a private screening to him, but he interrupted her when she tried explaining, stating, "Nobody's going to touch me." She told me she called the Operations Supervisor, Dallas Buschow to their location. She stated Buschow did not talk to Frey.

Preston stated she called Officer Nate Karns by radio and by cell phone. After Karns arrived she explained that Frey needed a "Pat down" search then told Frey you can tell him "Karns", what you told me. Preston stated that the screening line had become backed up due to Frey and she left Frey with Karns, to open the lanes and get people moving.

Preston stated that after Karns arrested Frey she assisted in getting his ID to him. Frey's wife, actually got his ID from their bags and provided it to Preston who then gave it to Karns. Frey stated he wanted his cell phone, but before that could be provided he was taken away by Karns.

Preston stated she then assisted Frey's wife, who did not continue on her flight due to the incident.

Preston told me Frey's actions interfered with screening process and she has never witnessed anything like this in her four years working for TSA.

I asked her if there was anything else she could think of? She told me that Frey did offer to take off his belt and be re-screened. According to Preston, this is not their procedure. In addition, she told me Frey's wife complained about the process and seemed to support the position her husband took about the search. Nothing follows.

Cpl. Rob Andazola
Jackson Police Department

---

EXHIBIT E

000110

IN THE MUNICIPAL COURT

TOWN OF JACKSON, STATE OF WYOMING

FILED
MUNICIPAL COURT
TOWN OF JACKSON
Received by. _Emily B. Clark_
Date. _9-9-2018    3:25 pm_

TOWN OF JACKSON                    )
                                   )
                 *Plaintiff,*      )
                                   )
v.                                 )      Docket No. 18-03-0226
                                   )
WILLIAM A. FREY,                   )
                                   )
                 *Defendant.*      )

<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>

COMES NOW Plaintiff, Town of Jackson, by and through counsel undersigned, and responds Defendant's *Motion to Dismiss* as follows:

**Statement of Facts**

Bill Frey entered the Jackson Hole Airport ("Airport") on March 12, 2018 to take a commercial flight – a United Airlines flight – to the east coast. He willingly approached the x-ray conveyor belt, placing bags on the conveyor belt to be x-rayed, taking off his shoes, disrobing. Jackson Hole Airport Video, 0:00:00 – 0:03:20 (hereinafter "Pl.'s. Ex.1"). Of his own accord, willingly, and with knowledge that security procedures were being applied to him – evident from the fact that video shows him performing the security process – he undertook the security process. *Id.* He proceeds orderly through the security process, following procedures as set up: placing his belongings on the conveyor belt, waiting when necessary, walking through the Advanced Imaging Technology ("AIT")[1] body scan machine when necessary, stopping when directed by a Transportation Security Administration ("TSA") screener. Pl.'s. Ex.1, 0:00:00 – 0:03:20.

Once Defendant walks through the AIT machine – now in the middle of, if not toward the end, of the security process – he is asked to stop by a TSA screener (Stan Karichner). *Id.* Defendant does so, following the security process. *Id.* Stan tells Defendant that the AIT machine alerted to something on his person, something that the machine broadly identified as being in the area of his hip, groin, and leg. *Id.* Stan shows Defendant the AIT-machine monitor that depicts where the object is, *Id.*, and tells Defendant that he needs to do a pat-down search of those limited areas. Supp. Report Andazola (hereinafter "Pl.'s Ex.2"). Defendant replies that no one is going to touch him. *Id.* After some further conversation about the security process and Defendant's refusal to complete it, Stan calls a supervisor over and the security process is stopped for passengers waiting in this line. Pl.'s. Ex.1, 0:00:00 – 0:03:20. There are then four (4) TSA screening personnel attending to Defendant at this time, two (2) of which are supervisors. Nate Karnes Body Camera 0:00:50-0:01:10 (hereinafter "Pl.'s Ex.3"); Pl.'s. Ex.1, 0:06:00 – 0:07:00. After more time of

---

[1] These machines are the updated version of metal detectors that were the standard for airport (and all transportation) security processes since the 1970s. *See* https://en.wikipedia.org/wiki/Metal_detector ("A series of aircraft hijackings led the United States in 1972 to adopt metal detector technology to screen airline passengers, initially using magnetometers that were originally designed for logging operations to detect spikes in trees.") (last visited September 7, 2018). AIT machines began supplementing the metal detectors for the airport security process throughout the United States and internationally in 2007 *See* https://en.wikipedia.org/wiki/Full_body_scanner (last visited September 7, 2018); *Redfern v. Napolitano*, 727 F.3d 77, 79 (1st Cir. 2013) (general discussion).

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page 1 of 17
000111

Defendant refusing to complete the security process her began, a Jackson Police Department officer, the law enforcement personnel for the Airport, is called over and the security process remains stopped still. Pl.'s. Ex.1, 0:05:00 – 0:07:00; Pl.'s Ex.3, 0:00:00.

Defendant becomes aggressive and hostile. Pl.'s Ex.3, 0:00:00 – 0:01:00. The TSA screeners begin trying to move other passengers that have been stopped through the security process while Defendant scolds the police officer. *Id.* Defendant is increasingly belligerent over time – cursing and yelling. Both the TSA screeners and passengers are distracted from the security process, instead focused on Defendant's behavior and loudness, comprising the security process implemented at the Airport. Pl.'s. Ex.1, 0:00:00 – 0:06:00; Pl.'s Ex.3, 0:00:00 – 0:03:00.

Defendant interferes with the screening process he undertook, yelling "I am not completing that screening!," *Id.* at 0:01:35; "It's not happening!" *Id.* at 0:02:10; "It is not happening!" *Id.* at 0:02:10; "I'm not doing it. I'm not doing it. It's not a negotiation. I'm not doing it.," *Id.* at 0:02:40. Defendant further tries to circumvent the security process, saying "the choice is either I go through, rescreen, or I leave or you arrest me, take your choice," *Id.* at 0:01:55, "option a) arrest me, option b) I leave, option c) I get rescreened, *Id.* at 0:03:00, "no, I'm not doing it! No. Period." *Id.* at 0:03:30; I'm not letting 'em do that," *Id.* at 0:04:20; "I've explained it. The answer's no. I will not let you do that!," *Id.* at 0:04:25.

Defendant attempts to circumvent the screening process, threatening that "if someone touches me I will scream so fucking loud and there's no one that's going to want to do this!." Pl.'s Ex.3, 0:02:10; "I will file a police complaint and I will start litigation if they try and do this!," *Id.* at 0:01:20; "if they won't let me on the plane, then I am going to leave," *Id.* at 0:00:40, "I'm perfectly willing to get on another flight; I'm perfectly willing to go away," *Id.* at 0:02:35; "I will litigate this," *Id.* at 0:03:00; "I'm perfectly willing to leave, I am perfectly willing to be rescreened, I am perfectly willing to go on my way," *Id.* at 0:03:35, "I will sue." *Id.* at 0:04:40.

Defendant, after continually interrupting the police officer and interfering with and compromising the security process, as well as attempting to get around the security process with offers to leave, offers to get on a different flight, offers to do some self-developed security process he deems appropriate to a problem he has self-diagnosed as a belt buckle, and threatening lawsuits, Defendant yells at the officer "arrest me!," *Id.* at 0:02:55; "arrest me because I won't let you assault me," *Id.* at 0:04:05; "we're wasting time, we're wasting time, get on with it! Get on with it! Get on with it!" *Id.* at 0:04:15; "then arrest me, arrest me" *Id.* at 0:04:30. The officer arrested Defendant and cited him into Jackson Municipal Court.[2]

## Summary of Argument

### I: Jackson Hole Police Department Jurisdiction

The Jackson Hole Airport operates under a slate of federal, state and local authorities, in combination with a slew of federal, state and local agreements and laws. The authority and jurisdiction of this Court and the Jackson Police Department are established thereunder.

---

[2] The initial citation, 186004756AA, has since been amended via the Town's unopposed *Motion to Amend Citation* and a second charge has been added, a violation of Jackson Municipal Code §12.16.170(A), via the Town's Criminal Information filed with this Court.

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page 2 of 17

000112

## II: The Fourth Amendment

The Fourth Amendment authorizes warrantless, suspicionless airport security searches and has since, at least, the 1970s. It is inconceivable, implausible and invalid to posit that Defendant was unaware of the security process at airports. Defendant's challenge to the Fourth Amendment fails uniformly. Critically, this is the constitutional lens from which this case is to be decided: Defendant voluntarily and intentionally undertook the lawful security process and, in the middle of that process, the evidence shows Defendant interfering with it by preventing it from continuing and from being carried out properly as applied to him and other passengers. The evidence shows Defendant compromised that security process by lowering and weakening the security standards being applied to him and other passengers. And the videos show Defendant attempting to circumvent the security process by trying to find a way around them with all kinds of offers and threats. Defendant's effort to avoid liability by arguing that the pat-down part of the security process was some separate, discrete "process or procedure" divorced form the whole he voluntarily and intentionally undertook that he was not on notice of is a red herring. And one that has failed nationwide in a variety of airline and airport safety contexts and cases, as it should in this Court.

## III: The Due Process Clause

Defendant's Due Process challenge fails principally and definitively because he cites general authority for the allegation that "interfere" is vague, when in fact, the relevant persuasive authority comes from cases and rules in the airport security context. Those rules – such as the Federal Register – and federal circuit cases on point have long deemed "interfere" unambiguous in the airport security context.

Jackson Municipal Code §§ 12.16.170(A) and (B) provide fair notice of what conduct is prohibited, where it is prohibited and what harm the ordinances take aim at reducing. Defendant's attempt to deconstruct the security process into individual subparts and then suggest that the individual subparts of the TSA protocol is what's at issue is an illusion and is erroneous: the *whole of the process is at issue*, not a subpart divorced from the whole.

Both specific intent and general intent crimes can give rise to criminal liability. Courts must read into ordinances *only* that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct. The Jackson Municipal Code provisions at issue were written as general intent crimes requiring that a defendant's conduct be voluntary and deliberate, and that level satisfies both the Wyoming and the United States Supreme Court's *mens rea* standard.

## IV: The First Amendment

Defendant's First Amendment retaliation claim fails because his speech is not protected speech; because, even if his speech was protected, there was no retaliatory action that adversely affected it; and because there is no viable evidence, aside from blanket legal assertions and bald conclusory statements that there was a causal relationship between his speech and his arrest.

Defendant's facial First Amendment challenge also fails because the ordinances are content and viewpoint neutral regulations: they regulate conduct unrelated to viewpoint or content. They

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page 3 of 17

000113

advance the irrefutably substantial government interest in airline and airport safety, and they are narrowly tailored to that interest via limitations on their time, place and manner.

<u>V: Probable Cause</u>

Probable cause is the fair probability upon which reasonable and prudent people make decisions and exists when the facts available to the relevant officer warrant a person of reasonable caution to believe that a crime is being committed. The facts available to the arresting officer in this case at the time of the arrest warranted concluding that there was a fair probability that Defendant violated the Jackson Municipal Code.

**Discussion**

<u>I: The Town of Jackson Municipal Court has jurisdiction and the Jackson Police Department has the police power authority to cite and arrest at the Jackson Hole Airport.</u>

Through a variety and combination of federal laws, state statutes, operating agreements, and Jackson Municipal Code provisions the Jackson Police Department has jurisdiction and arrest authority at the Jackson Hole Airport.

The Airport was initially established in the 1930s, prior to the property being a national park, and its existence, and the Town of Jackson's police power authority therein, has since been formalized over the course of nearly ninety years. *Town of Jackson v. Kent W. Spence*, No. 07-01-39 (Jack. Muni. Crt. 2007) (setting forth historical background of the Airport). Overlaying this federal enabling legislation and agreement structure, is 49 CFR § 1542.217, titled "law enforcement personnel," enacted November 3, 2001 and providing that

> (a) Each airport operator must ensure that **law enforcement personnel used to meet the requirements of § 1542.215, meet the following qualifications** while on duty at the airport -
> > (1) **Have arrest authority** described in paragraph (b) of this section;
> > (b) Each **airport operator must ensure that each individual used to meet the requirements of § 1542.215 have the authority to arrest, with or without a warrant, while on duty at the airport for the following violations of the criminal laws of the State and local jurisdictions in which the airport is located**:
> > > (1) A **crime committed in the presence of the individual**; and
> > > (2) A felony, when the individual has reason to believe that the suspect has committed it.

(emphasis added).

The Airport, as it must, satisfies CFR § 1542.217 and is a lawfully operating commercial airport within the United States. Affidavit Michael Morgan (hereinafter "Pl.'s Ex.4").

The Jackson Hole Airport and the Town of Jackson have a Memorandum of Understanding for the provision of law enforcement services at the Airport setting forth the duties and obligations of each party. Memorandum of Understanding between the Town of Jackson and the Jackson Hole Airport Board for Provision of Law Enforcement Services at the Jackson Hole Airport (hereinafter "Pl.'s Ex. 5). Paramount among those, predictably given the federal government's directive to airports in 49 CFR § 1542.217, is that

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page **4** of 17
000114

The Town will provide law enforcement services at the Airport. This will be done by providing Jackson Police Department police officers to be present at and/or patrol the Airport at times when the security screening checkpoint is in operation and during flight departures. **All services will be in accordance with the requirements of 49 U.S.C. §44903(C) and the regulations and standards of the United States Transportation Security Administration promulgated pursuant thereto.**
*Id.*

Second, Wyo. Stat. Ann. § 10-5-101(b) provides that "[t]he municipal court of the city or town has jurisdiction to punish any violator of the ordinances of the city or town governing an airport whether the airport is within or without the city limits." The Jackson Municipal Code provides the framework for the Jackson Police Department's duties and jurisdiction. § 2.32.050 mandates that it is the "duty" of the Jackson Police Department to "see to the enforcement of all the ordinances of the Town of Jackson and all statutes applicable therein; and to preserve order and prevent infractions of the law and arrest violators thereof." Police officers in Wyoming may arrest "a person without a warrant when . . . [a]ny criminal offense is being committed in the officer's presence by the person to be arrested." Wyo. Stat. Ann. § 7-2-102(b)(i).

Thus, the ordinance in Title 12 noting the Jackson Police Department power to enforce certain portions of the Jackson Municipal Code at the Airport is not the only authority it has to enforce laws on the Airport, and it is subsumed by this broader authority, especially in light of the *Memorandum of Understanding between the parties thereto that demands compliance with federal statutes, without which the Airport cannot operate*. Moreover, it is illogical to postulate that the only code title in which ordinances of the Town relate to the Airport, which in fact exclusively exists in order to regulate the Airport, would prohibit the Jackson Police Department from enforcing ordinances there. Pl.'s Ex.4.

    II: The security process at the Jackson Hole Airport is a valid administrative search under the Fourth Amendment, the process of which Defendant voluntarily undertook, and Defendant's attempts to distract from this threshold issue fail.

The Transportation Security Administration's authorization act, the Aviation and Transportation Security Act (P.L. 107-71), requires "the screening of all passengers and property" that will be carried aboard an aircraft, 49 U.S.C. § 44901(a) "a uniform procedure for searching and detaining passengers and property," *Id.* § 44903(b)(3), at all airports to ensure passenger safety, "counter the risk of criminal violence, . . . aircraft piracy at the airport, the risk to . . . aircraft operations at the airport, [and] meet national security concerns," *Id.* § 44901(h)(1). To meet these Congressional directives, Transportation Security Administration ("TSA") regulations mandate that "each airport operator . . . provide [u]niformed law enforcement personnel in the number and manner adequate to support each system for screening persons and accessible property." *Id.* at § 1542.215(a). No commercial airport in the United States may operate unless it carries out a security screening process for persons and accessible property that is approved by the TSA. *Id.* at § 1542.101(a)(1). The Jackson Hole Airport is subject to these federal laws and regulations, Pl.'s Ex.4, and meets them, as is evidenced by the security screening process at the Airport, Pl.'s Ex.1 (showing an aerial view of the entire security screening process and area).

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page 5 of 17
000115

While the Fourth Amendment prohibits unreasonable searches and seizures and the Supreme Court commands that "[a] search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing," there are exceptions to this general rule. *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). Chief among the exceptions are searches and seizures carried out for the airport security process. *Chandler v. Miller*, 520 U.S. 305, 323 (1997) (citing another source) ("[W]here the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk [] rank as 'reasonable' – for example, searches now routine at airports and at entrances to courts and other official buildings."). These "administrative" or "special needs" searches have been widely upheld under the Fourth Amendment throughout the federal court system. *United States v. Aukai*, 497 F.3d 955 (9th Cir. 2007) (en banc); *United States v. Hartwell*, 436 F.3d 174 (3d Cir. 2006) (Alito, J.), *cert. denied*, 549 U.S. 945 (2006); *Cassidy v. Chertoff*, 471 F.3d 67 (2d Cir.2006) (Sotomayor, J.); *United States v. De Los Santos Ferrer*, 999 F.2d 7 (1st Cir.1993); *Electronic Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1 (D.C.Cir. 2011). Indeed, federal courts have described the need for such searches in the strongest possible terms dating as far back as the 1970s, including that it is "hard to overestimate the need to search air travelers for weapons and explosives before they are allowed to board the aircraft . . . ," *United States v. Marquez*, 410 F.3d 612, 618 (9th Cir.2005), and that "[t]he government unquestionably has the most compelling reasons[—]the safety of hundreds of lives and millions of dollars worth of private property[—]for subjecting airline passengers to a search for weapons or explosives," *Singleton v. Comm'r of Internal Rev.*, 606 F.2d 50, 52 (3d Cir.1979). The validity of the uniform, standardized suspicionless airport security search process at the Jackson Hole Airport cannot be genuinely questioned under the law.[3]

Airport security procedures have been in existence since the 1970s and the public has been on notice of these procedures since then. *Singleton*, 606 F.2d at 52 (noting "FAA anti-hijacking screening requirements [were] in effect [since at least] 1972," that "a pat-down search of each passenger was virtually the only screening procedure . . . [and p]assengers were . . . given advance notice that the search was to be conducted, and could elect not to be searched" by not flying). Given the long-standing security process and system in the United States, courts hold that "[i]t is inconceivable that [a person is] unaware that he ha[s] to be searched before [] board[ing] a plane." *United States v. Hartwell*, 436 F.3d 174, 181 (3d Cir. 2006) (Alito, J.), *cert. denied*, 549 U.S. 945 (2006).

The canon that a person elects to begin the airport security process, at minimum, when s/he places luggage on the x-ray conveyor and cannot avoid the process after that point dates back to at least 1986. *United States v. Pulido-Baquerizo*, 800 F.2d 899, 902 (9th Cir. 1986), *overruled on other grounds by United States v. Aukai*, 497 F.3d 955 (9th Cir. 2007) ("[I]f a potential passenger chooses to avoid a search, he must elect not to fly before placing his baggage on the x-ray machine's conveyor belt."). This sensible, longstanding rule continues today. *Hartwell*, 436 F.3d at 181 (Alito, J.).

---

[3] Though the Wyoming Supreme Court has not decided an airport search case, it recognizes the special needs exception under Article I, § 4 of the Wyoming Constitution. *Hageman v. Goshen Cty. Sch. Dist. No. 1*, 256 P.3d 487, 495 (Wyo. 2011) (authorizing administrative searches without individualized suspicion in school setting); *Doles v. State*, 994 P.2d 315, 319 (Wyo. 1999) (recognizing special needs doctrine without deciding whether widescale DNA collection prohibited by state constitution).

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page 6 of 17
000116

The rationale for the airport security process under Fourth Amendment search principles has been refined over time, most succinctly and deftly explained by the Ninth Circuit recently:

> The constitutionality of an airport screening search . . . does not depend on consent, *see* [*United States v.*] *Biswell*, 406 U.S. [31,] 315 [1097], and **requiring that a potential passenger be allowed to revoke consent to an ongoing airport security search makes little sense in a post-9/11 world. Such a rule would afford terrorists multiple opportunities to attempt to penetrate airport security by "electing not to fly" on the cusp of detection until a vulnerable portal is found**. This rule would also allow terrorists a low-cost **method of detecting systematic vulnerabilities in airport security**, knowledge that could be extremely valuable in planning future attacks. Likewise, given that consent is not required, it makes little sense to predicate the reasonableness of an administrative airport screening search on an irrevocable implied consent theory.
>
> Rather, where an airport screening search is otherwise reasonable and conducted pursuant to statutory authority, 49 U.S.C. § 44901, **all that is required is the passenger's election to attempt entry into the secured area** of an airport. *See Biswell*, 406 U.S. at 315[]; 49 C.F.R. § 1540.107 . . . . [T]hat **election occurs when a prospective passenger walks through the magnetometer or places items on the conveyor belt of the x-ray machine**. The record establishes that Aukai elected to attempt entry into the posted secured area of Honolulu International Airport when he walked through the magnetometer, thereby subjecting himself to the **airport screening process**.

*Aukai*, 497 F.3d at 960-61 (emphasis added).

In *Hartwell*, now Supreme Court Justice Alito, decided the legality of a physical pat-down[4] as part of the administrative security search process after an AIT machine alarm is triggered – a strikingly analogous case to the one before this Court. First, then-Judge Alito analyzed the entire airport screening process as one administrative search and held without fanfare "that air passengers are on notice that they will be searched." 436 F.3d at 180. Next, he definitively *rejected* the defendant's argument that

> [O]nce the TSA agents identified the object in his pocket and he refused to reveal it, **he should have had the right to leave** rather than empty his pockets . . . [because] a right to leave once screening procedures begin would constitute a one-way street for the benefit of a party planning airport mischief, . . . and would encourage airline terrorism by providing a secure exit where detection was threatened.

*Id.* at FN 12 (internal citations omitted) (emphasis added).

The Eleventh Circuit summarized the legality and importance of the pat-down as part of the administrative search and highlighted the measures taken by the government that minimize privacy intrusion in *Corbett v. Transport. Sec. Admin.*, 767 F.3d 1171, 1182 (11th Cir. 2014):

> [The pat-down] procedure as a secondary screening technique is a reasonable administrative search. The pat-downs [] promote the governmental interest in airport security because security officers physically touch most areas of passengers' bodies. Corbett does not dispute that the pat-down procedures are effective, but argues that they are "extraordinarily intensive" and the "use of fingers to palpate the skin makes the TSA's pat-down procedure the most intensive search ever conducted." Undeniably, a full-body pat-down intrudes on privacy, but the security threat outweighs that invasion of privacy. And the [TSA] reduces the invasion of privacy through several measures: the pat-down is not a primary screening method; a member of the same sex [] conducts it; a passenger may opt to have a witness present during the search if he desires to have the security officer conduct the pat-down in private; and the procedure

---

[4] It is noteworthy that pat-down searches are not sexual assault under federal or state law. And that cases addressing allegations of sexual assault committed via a pat-down search are highly distinguishable from the facts and circumstances in this case. Moreover, it self-evidently inaccurate that every person that travels through every airport in the United States that undergoes a pat-down as part of the security screening process is being sexually assaulted.

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page 7 of 17
000117

requires a security officer to use the back of his hand while searching sensitive areas of
the body.

Importantly, a point not noted in *Corbett* but relevant in the case pending in this Court, is that the
Airport TSA screener limited the pat-down of Defendant even more than described above, noting
the AIT machine alarm indicated there was "an area that we need to pat on [Defendant's] upper
inner thigh, . . . groin area, and [] down the side of his leg." Pl.'s. Ex.3, 0:00:00 – 0:00:18. *Hartwell*
also highlighted privacy-minimization, noting "other factors make airport screening procedures
minimally intrusive [including that] . . . every air passenger is subjected to a search, [so there is]
no stigma attached to being subjected to search at a known, designated airport search point . . . the
public nature of the search . . . the[] searches are made under supervision and . . . scrutiny of the
traveling public . . . and passengers are on notice that they will be searched. 436 F.3d at 180-1.

The security process Defendant elected to undertake at the Airport on March 12, 2018 is
undeniably a lawful one under the Fourth Amendment that is implemented at the Airport and
Defendant interfered with the process, compromised the process, and attempted to circumvent the
process. The record shows:

1.  Defendant undertaking the security process voluntarily, including placing his belongings on
    the x-ray machine conveyor belt, taking off clothing, taking off his shoes, taking things out of
    his pockets, and advancing orderly through the security process and procedures, Pl.'s. Ex.1,
    0:00:00 – 0:03:20; Def. Mot. Dismiss 3;

2.  Defendant voluntarily walking through the AIT machine, Pl.'s. Ex.1, 0:03:10 – 0:03:20;

3.  That midway through the security process, specifically as Defendant walked through the AIT
    machine, an AIT machine alarm was triggered, Pl.'s. Ex.3, 0:00:00 – 0:00:18;

4.  Defendant being shown by the TSA screener the AIT machine monitor showing the triggered
    alarm and specifically where on his body the AIT machine indicated something on his person,
    Pl.'s. Ex.1, 0:03:15-0:03:25; Pl.'s. Ex.3, 0:00:00 – 0:00:18;

5.  Defendant looking at the AIT machine monitor himself when shown by the TSA screener, *Id.;*

6.  That the AIT machine indicated the alarm around his hip, groin and leg, Pl.'s. Ex.3, 0:00:00 –
    0:00:18;

7.  That the security process called for a pat-down search through his clothing only where the AIT
    machine indicated, *Id.;*

8.  Defendant, at this point in the middle of the security process he voluntarily engaged in,
    objected to this particular part of the process, Pl.'s. Ex.3, 0:00:00 – 0:29:43;

9.  That Defendant's conduct and outbursts midway through the security process required at least
    five (5) TSA staff to initially attend to him, Pl.'s. Ex.3, 0:00:50-0:01:10; Pl.'s. Ex.1, 0:06:00 –
    0:07:00;

10. That, on an ongoing basis because of Defendant's conduct and outbursts at least four (4) TSA
    staff were required to attend to the screening area Defendant was in, including two (2)
    supervisors, Pl.'s. Ex.3, 0:00:00 – 0:29:43;

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page 8 of 17
000118

11. That an interference with and delay in the security process was caused by Defendant, to include the distraction of other passengers and TSA screeners; Pl.'s. Ex.1, 0:06:00 – 0:15:00; Pl.'s. Ex.3, 0:01:10 – 0:02:30;

12. That the airport Operations Supervisor was called and came, Pl.'s. Ex.1, 0:12:45 – 0:16:00;

13. Defendant compromises the security process by shouting, cursing, being hostile and abusive to TSA screeners and a Jackson Police Office, conduct which distracts TSA screeners and passengers from the security process, Pl.'s. Ex.3, 0:0:00 – 0:05:00;

14. Defendant compromises and interferes with the screening processing by refusing to undergo the security process he began by threating to "scream so fucking loud and there's no one that's going to want to do this," wherein a passenger being screened and the TSA screener therewith are visibly and objectively distracted from the security process, Pl.'s. Ex.3, 0:1:00 – 0:02:25;

15. Defendant interferes with the security process he undertook, yelling "I am not completing that screening!," Pl.'s. Ex.3, 0:01:35; "It's not happening!" Pl.'s. Ex.3, 0:02:10; "It is not happening!" Pl.'s. Ex.3, 0:02:10; "I'm not doing it. I'm not doing it. It's not a negotiation. I'm not doing it.," Pl.'s. Ex.3, 0:02:40.

16. Defendant attempts to circumvent the security process, saying "I am perfectly willing to be rescanned," Pl.'s. Ex.3, 0:00:15, "if they won't let me on the plane, then I am going to leave," *Id.* at 0:00:40, "I will file a police complaint and I will start litigation if they try and do this," *Id.* at 0:01:20, "the choice is either I go through, rescreen, or I leave or you arrest, take your choice," *Id.* at 0:01:55, "I will sit here and if someone touches me I will scream so fucking loud and there's no one that's going to want to do this," *Id.* at 0:02:10; "It's not happening!," *Id*; "I'm perfectly willing to get on another flight; I'm perfectly willing to go away," *Id.* at 0:02:35, "option a) arrest me, option b) I leave, option c) I go get rescreened, *Id.* at 0:03:00, "I will litigate this," *Id.* at 0:03:00, "I'm willing to get rescreened," *Id.* at 0:03:30, "I'm perfectly willing to leave, I am perfectly willing to be rescreened, I am perfectly willing to go on my way," *Id.* at 0:03:35, "I will sue." *Id.* at 0:04:40.

Defendant cannot legitimately claim that he did not know he was undergoing the security process, that he was not on notice of the security process: he is on video *undertaking and orderly following* the security process. "[I]t is inconceivable," *Hartwell*, 436 F.3d at 180, cannot be argued with a straight face, and knowledge of the security process must be imputed to Defendant. The videos then show Defendant "prevent[ing] (a process or activity) from continuing or being carried out properly,"[5] at the Airport being applied to him and other passengers. The videos show Defendant "lower[ed] or weaken[ed] standards" of the security process at the Airport being applied to him and other passengers.[6] The videos show Defendant attempted to "find a way around"[7] the security process being applied to him. Defendant's effort to avoid liability by arguing that the pat-

---

[5] https://www.google.com/search?q=defintiion+interfere&rlz=1C1CHBF_enUS762US762&oq=definitiion+interfere&aqs=chrome..69i57j0l5.3871j1lj7&sourceid=chrome&ie=UTF-8 (first definition available when search "definition interfere" on Google.com) (last visited September 7, 2018).

[6] https://dictionary.cambridge.org/us/dictionary/english/compromise (Cambridge.org definition when search "definition interfere" on Google.com) (last visited September 7, 2018).

[7] https://www.google.com/search?q=definition+circumvent&rlz=1C1CHBF_enUS762US762&oq=definition+circumvent&aqs=chrome..69i57j0l5.3112j1j7&sourceid=chrome&ie=UTF-8 ((first definition available when search "definition circumvent" on Google.com) (last visited September 7, 2018).

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page 9 of 17

000119

down part of the security process was some separate, discrete "process or procedure" divorced form the whole he voluntarily and intentionally undertook is a red herring and fails.

> ### III: In the alternative, if this Court entertains a Due Process challenge to the ordinances at issue here, each and every of Defendant's assertions fail.

>> #### A: The term "interfere" is not unconstitutionally vague in the airport security context.

Defendant attempts to cloud the threshold Fourth Amendment analysis that sets the framework for this case by alleging "interfere" is vague under the Due Process Clause and citing general authorities for the proposition. Assuming *arguendo* the Due Process Clause is at issue, Defendant's challenge fails principally and definitively because his analysis is unsound in the airport security context. The persuasive authorities for a Due Process analysis in this case are federal court cases evaluating the term "interfere" in the airport security context and the limiting constructions from those cases it in this context. *State Dep't of Correct. v. Watts*, 177 P.3d 793, 796 (Wyo. 2008) "[S]tatutes must be construed in *pari materia*; . . . all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony."). In the airport security context – in which there are numerous statutes prohibiting "interfering" with security and workers – federal courts often reference 67 Fed. Reg. 8340-01 (Feb 22, 2002), the final rule by the federal agencies tasked with rulemaking authority for civil aviation, which states:

> Section 1540.109 . . . prohibit[s] any person from interfering with, assaulting, threatening, or intimidating screening personnel in the performance of their screening duties . . . . The rule prohibits interference that might distract or inhibit a screener from effectively performing his or her duties. This rule is necessary to emphasize the importance to safety and security of protecting screeners from undue distractions or attempts to intimidate. Previous instances of such distractions have **included verbal abuse** of screeners by passengers and certain air carrier employees.
> A screener encountering such a situation must turn away from his or her normal duties to deal with **the disruptive individual, which may affect the screening of other individuals**. The disruptive individual **may be attempting to discourage the screener from being as thorough as required**. The screener **may also need to summon a checkpoint screening supervisor and law enforcement officer**, taking them away from other duties. Checkpoint disruptions potentially can be dangerous in these situations. This rule supports screeners' efforts to be thorough and helps prevent individuals from **unduly interfering with the screening process** . . . .
> This rule **does not prevent good-faith questions from individuals seeking to understand the screening of their persons or their property. But [instead prevents] abusive, distracting behavior, and attempts to prevent screeners from performing required screening** . . . .

The Sixth Circuit used this rulemaking for guidance in tackling an analogous fact pattern to the one before this Court in *Rendon v. Transport. Sec Admin.*, 424 F.3d 475 (2005). There a passenger voluntarily began the screening process, setting off the metal-detector (the body scanning machine before the AIT). He self-diagnosed the problem, took it off, and sought to go back through the metal detector, but was denied because the TSA screener "informed him that, once he went through the metal detector, he could not go back through," at which point the passenger

> "[S]uggested that this was "bullshit;" . . . he became . . . more belligerent . . . [T]hree witnesses [] testified that Rendon loudly exclaimed, after being informed that he could not walk back through the metal-detector . . . that "this was fucking bullshit . . . ." To

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page 10 of 17

000120

> deal with Rendon's escalating loud and belligerent conduct, [the screener] had to stop his screening line and call over his supervisor. When [the] supervisor arrived, [the screener] informed him that Rendon was being uncooperative, unruly, and using loud profanities . . . . At this point, the police officer on duty at the screening area came over to the scene and removed Rendon from the screening area.

*Id.* at 477-8.

The Circuit, in interpreting the term "interfere" in the context of airport security, denied that it included asking good-faith questions of TSA screeners in light of the surrounding language and the Federal Register clarification. *Id.* at 479.

The Tenth Circuit has also addressed interference and disturbances within the context of the airport security process and

> Emphasize[d]] the uniquely sensitive setting we confront in this case. Order and security are of obvious importance at an airport security checkpoint. As a result, conduct that is relatively benign elsewhere might work to disturb the peace at these locations. Many travelers are tense, no one enjoys the screening process, and people are in various states of disrobing and adjusting clothing without a modicum of privacy.

*Mocek v. City of Albuquerque*, 813 F.3d 912, 924 (10th Cir. 2015).

The *Mocek* Court recognized a defendant was causing a disturbance and "raised the likelihood that . . . [he was] interfering with security systems" in violation of 49 C.F.R. §§ 1540.105(a) – which is nearly identical to the Jackson Municipal Code – when at least three TSA screeners were attending to the defendant, the defendant did not follow TSA screener instructions, and held that the arresting police officers were entitled to "rely in good faith on the [TSA screener's] representations of [his] earlier conduct." *Id.* at 923-4. More recently in February of this year, the Tenth Circuit decided *United States v. Lynch*, 881 F.3d 812 (10th Cir. 2018) and held the term "interfere" and phrase in which it sat was neither unconstitutionally overboard nor vague in the airline safety context. ("A person of ordinary intelligence could read [the law] and know what type of conduct is prohibited (assault or intimidation of flight crew or attendants), where it is prohibited (on a plane, in-flight), and what result the statute is intended to prevent (reduction in aircraft safety).").

Finally, the Ninth Circuit has also looked at this term in the airport security context, it, in a crisp affirmation of an order issued by a TSA Administrative Law Judge, said simply "[w]e have long recognized that "'interfere' has such a clear, specific and well-known meaning as not to require more than the use of the word[ ] . . . in a criminal statute." *Brennan v. U.S. Dep't of Homeland Sec.*, 691 F. App'x 332, 333 (9th Cir. 2017) (internal citation omitted).

### B: Jackson Municipal Code §§ 12.16.170(A) and (B) provide fair notice of the conduct that is prohibited.

"When reviewing a statute alleged to be vague, courts must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution." *Brecheisen v. Mondragon*, 833 F.2d 238, 241 (10th Cir.1987). When challenging a criminal law "in which First Amendment rights are *not* involved, it is not enough to show that the legislature *could have used more precise language* in drafting the statute." *United States v. Powell*, 423 U.S. 87, 94 (1975) (emphasis added). Moreover, "a defendant who establishes only that the statute is vague in the

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page 11 of 17

000121

sense that it requires a person to conform his or her conduct to *an imprecise but comprehensible standard cannot prevail on a vagueness challenge.*" *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7 (1982) (emphasis added). The Supreme Court describes that standard as the ordinance specifying *no comprehensible standard of conduct at all such that it has no core*. *Village of Hoffman*, 455 U.S. at 495, n. 7 (emphasis added). Finally, "[v]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand. One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.*

The Jackson Municipal Code provisions at issue do not involve First Amendment rights – i.e., neither regulates protesting or demonstrating – thus a higher burden is required of *Defendant* under Supreme Court precedent. Second, as far back 2006 Justice Alito's comment from when he was a Third Circuit Judge holds that it is inconceivable and absurd that a person does not know they are required to undergo a search prior to boarding an airplane. *Hartwell*, 436 F.3d at 180.

Thus, first and foremost, Defendant is "one to whose conduct [the] statute clearly applies," and therefore he cannot successfully challenge the statute for vagueness and he should be prohibited from doing so. *Lynch*, 881 F.3d 818 ("Screaming in flight attendants' faces, shouting vile insults at them, and refusing to calm down all combined to intimidate the flight attendants to a degree that interfered with the performance of their duties."). Defendant undertook and orderly followed the security process in the Airport, was in a Restricted Area, in the middle of the security process, yelled, cursed, caused a temporary but complete stoppage in the security process for all passengers waiting in line, distracted TSA screeners and passengers, and made offers and threats to try and get out of completing the security process. Pl.'s Ex. 3, 0:00:00 – 0:05:00; Pl.'s Ex. 1, 0:00:00 – 0:07:00. Defendant's conduct clearly falls within the behavior prohibited and there is no constitutional defect in applying the ordinances to him.

In the alternative, if this Court finds Defendant can challenge the ordinances under the Due Process Clause, his challenge fails. First, the statutory construction of prohibiting the interference, compromise or circumvention of security procedures, processes or systems is a common and standardized statutory structure that is understandable to "ordinary people." *See E.g.* Conn. Gen. Stat. Ann. § 15-69(a) ("Any person who *interferes or tampers* with any airport, heliport, landing field or airway or the equipment thereof or who *interferes or tampers with or circumvents, attempts to circumvent* or thwart any security device or equipment installed or who *circumvents, attempts to circumvent* or fails to comply with *security measures or procedures in operation at any airport* shall be guilty of a class D *felony*.) (emphasis added); Wash. Rev. Code Ann. § 19.345.020 ("A person may not: (a) Use software to *circumvent, thwart, interfere with, or evade a security measure, access control system, or other control or measure* on a ticket seller's internet web site[.]") (emphasis added). Notably a defendant was convicted for "interfering with or tampering with an airport or landing field [Connecticut] General Statutes § 15-69," and an appeal of his conviction was affirmed with "no error" found by the Appellate Court of Connecticut. *State v. Simmons*, 14 Conn. App. 803, 804, 539 A.2d 1041 (1988).

Second, when analyzed, under the archetypal model set forth by the Tenth Circuit's recent 2018 airline security case, the ordinance "define the criminal offense with sufficient definiteness

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page **12** of 17

000122

that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement." *Lynch,* 881 F.3d 818-19 (quotation marks omitted). A person of ordinary intelligence can read JMC § 12.16.170(A) and know the conduct prohibited (tampering with or interfering with or compromising or attempting to circumvent), to what the prohibition is aimed at (a security system, measure, or procedure), and where it is prohibited (at the Airport).   Likewise, a person of ordinary intelligence can read JMC § 12.16.170(B) and know where the law applies (in a Restricted Area at the Airport), the conduct prohibited (failing to comply), to what the prohibition is aimed at (systems, measures, procedures, screening and/or inspection controlling access). Defendant's attempt to deconstruct the security process into individual subparts and then suggest that the individual subparts of the TSA protocol is what's at issue is an illusion and is erroneous: the *whole of the process is at issue*; not a subpart divorced from the whole. Finally, even assuming *arguendo* this standard is <u>imprecise but comprehensible</u>, Defendant fails to carry his heavy burden that there <u>exists no comprehensible standard of conduct at all</u>, *Village of Hoffman*, 455 U.S. at 495, n. 7.

As for arbitrary enforcement, the Jackson Municipal Code does not encourage arbitrary because TSA screeners convey information to police officers who then cite individuals. Def. Mot. Dismiss 11-12. First, Defendant, as described above, is setting up a straw man to blow it over: attempting to break the security process into multiple parts and then argue he legitimately objected to a "security" process. Second, Defendant was not cited and arrested based *only on the information supplied by the TSA screener*, rather a police officer was requested at the scene by a non-anonymous, known source and, over the course of five (5) minutes amassed his own probable cause for the arrest. *United States v. Conner*, 699 F.3d 1225, 1229 (10th Cir. 2012) (discussing that even *anonymous* tips can provide reasonable suspicion for a contact); NATE NODY CAM 0:00:00 – 0:05:00.

<u>C: Jackson Municipal Code §§ 12.16.170(A) and (B) are general intent crimes: a heightened intent status is not required and the lack of one does not render the provisions violative of Due Process.</u>

At common law, the specific-intent crimes were the "infamous crimes" only: robbery, assault, larceny, burglary, forgery, false pretenses, embezzlement, attempt, solicitation, and conspiracy. Black's Law Dictionary (10th ed. 2014). Today federal and state statutes make other offenses "infamous," AKA specific intent, crimes with a heightened *mens rea* requirement, but the majority of criminal statutes, now as then, are general intent crimes. Jackson Municipal Code §§ 12.16.170 (A) and (B) are general intent crimes because the offenses are set out "only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence . . . ." *Mowery v. State*, 247 P.3d 866, 871 (Wyo. 2011). The Wyoming Supreme Court follows the "most common application of the concepts of general and specific intent" holding that "a specific intent crime is [] one that involves an intent to do some further act or achieve a future consequence in addition to the basic physical act of the crime." *Id.* at 871 (*citing* 22 C.J.S. Criminal Law § 40 (2010)). As the Supreme Court makes clear, general intent crimes do not fall short of Due Process:

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page **13** of 17

000123

> [We do not] say that a defendant must know that his conduct is illegal before he may
> be found guilty. The familiar maxim "ignorance of the law is no excuse" typically holds
> true. Instead, our cases have explained that a defendant generally must know the facts
> that make his conduct fit the definition of the offense, even if he does not know that
> those facts give rise to a crime.

*Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (citation omitted).

Instructively, a general intent crime involving air safety and interference therewith was evaluated in the Tenth Circuit this year. *United States v. Lynch,* 881 F.3d 812 (10th Cir. 2018). There an unruly passenger that, after touching a flight attendant numerous times on her lower back and being asked not to, was denied more alcohol, instigating yelling, cursing and "irate" behavior, necessitating another flight attendant in first-class while a third was left alone for in coach and the pilot calling ahead for security upon landing, meaning the co-pilot managed the radio, weather updates, and flight path solo. *Id.* at 814. The passenger was convicted under 49 U.S.C. § 46504, which provides, in relevant part, that an anyone "assaulting or intimidating a . . . flight attendant of the aircraft, interferes with the performance of the duties of the [] attendant or lessens the ability of the . . . attendant to perform those duties, or attempts or conspires to do such an act, shall be . . . imprisoned for not more than 20 years, or both." The defendant in *Lynch* made the ill-fated argument that the Supreme Court's *Elonis* case required specific intent for this statute. The Tenth Circuit, just like the Fifth in *United States v. Ziba*, 653 F.Appx. 809, 810 (5th Cir. 2016), *rejected* the argument, holding that

> To the extent *Elonis* addresses criminal statutory interpretation beyond [the statute at
> issue in that case], it **merely reiterates existing precedent** that [courts] "read into the
> statute **only that *mens rea* which is necessary to separate wrongful conduct from
> otherwise innocent conduct.**" *Elonis*, 135 S.Ct. at 2010. A **general intent reading of
> § 46504, which still requires that a defendant's conduct be voluntary and
> deliberate, readily satisfies *Elonis' mens rea* standard**.

*Lynch,* 881 F.3d 812

Notably, the case also pointed out this same statute had been applied in the Fourth, Eleventh, and Ninth in addition to the Fifth, all of which deemed the statue a general intent crime. *Id.* at 815-6.

Defendant in this Court, like the one in *Lynch*, is not charged with a specific intent crime, i.e. there is no allegation that he was interfering with or comprising or attempting to circumvent the Airport security process for some further reason or in furtherance of some act – for example getting contraband aboard a plane or past the security checkpoint. Rather, he is charged with the "voluntary and intentional[]" acts, *Lynch,* 881 F.3d at 815, of interfering with or comprising or attempting to circumvent the Airport security process, and entering or being in a Restricted Area without complying with the security process being applied there. This are plainly constitutional general intent crimes and this Court neither need no should insert a higher *mens rea* than deemed appropriate by the Town of Jackson legislature.

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page **14** of 17

000124

IV: Jackson Municipal Code §§ 12.16.170(A) and (B) are not overbroad and Defendant's First Amendment challenge fails.

    A: Legal standard.

    At the outset the Town notes it is unclear if Defendant is challenging the ordinances on a facial basis or as a First Amendment retaliation claim, or under both theories. Def. Mot. Dismiss 18-21. The Town will address each in turn and perform a brief analysis of each for the Court. However, under either theory Defendant's First Amendment challenge fails.

    A First Amendment retaliation claim requires Defendant to show that: "(1) [his] speech was protected; (2) [an] alleged retaliatory action adversely affected the [his] constitutionally protected speech; and (3) a causal relationship exists between [his] speech and the [Town's] retaliatory action." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013). These are conjunctive and each every element needs to be proven, but Defendant has not adequately alleged any of the elements. As for the first and second elements, Defendant has not shown that he was engaged in First Amendment protected speech, was demonstrably not engaged in such speech, and cites no authority for the allegation that the act of asking a TSA screener questions or alleging sexual assault are speech activities rising to the level of protected First Amendment speech. *Lynch*, 881 F.3d 818 (law prohibiting conduct causing interference with flight attendant's duties as "content-neutral prohibition on conduct in a specific time, place, and manner . . . serv[ing] the significant governmental interest of prohibiting conduct that . . . threat[ens] to public safety for airline passengers and employees . . . ."). As noted above, the act of asking TSA screeners questions has been addressed by TSA in its rulemaking, highly persuasive guidance given that agency's responsibility for airport and airline safety, presciently countering such a challenge before it was made and providing a reliable limiting construction for this Court. *See* 67 Fed. Reg. 8340-01. As for the second element specifically, the video evidence in this case conclusively refutes the allegation that asking TSA screeners questions was the basis for Defendant's arrest (i.e. the arrest was retaliatory). Defendant did not ask TSA screeners questions, rather his conduct that prevented, halted, compromised and tried to circumvent to the security process is well documented. Pl.'s. Ex.3, 0:00:00 – 0:05:00. Moreover, the videos show dozens of individuals having conversations with TSA screeners – which presumably include questions being lobed back and forth between the conversing parties – and none cited, arrested, or detained. *Id*.; Pl.'s. Ex.1, 0:00:00 – 0:07:00. Third, courts hold that "[t]he causation requirement [of a First Amendment retaliation claim] is rigorous; it is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [government official] would not have taken the alleged retaliatory action." *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir.1990). Defendant's *Motion* falls far short of this standard because he has only made blanket legal assertions and bald conclusory statements, neither of which meet the "rigorous" standard to show a nexus between his alleged protected conduct and his alleged retaliatory arrest. Finally, Defendant's own cited authority, *Tobey*, provides this Court with a valid First Amendment speech case, one presenting facts and circumstances vastly inconsistent to those before this Court. 706 F.3d at 384.

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page **15** of 17
000125

As for a facial First Amendment challenge, "a content-neutral regulation that has an incidental effect on speech is upheld so long as it is narrowly tailored to advance a substantial government interest." *Rendon*, 424 F.3d at 479. The party alleging an ordinance is overbroad has the burden "to demonstrate a realistic danger that the [regulation] will significantly compromise recognized First Amendment protections of individuals not before the Court." *City Council of Los Angeles v. Vincent*, 466 U.S. 789, 802 (1984). "The challenge will not succeed unless the law's overbreadth is shown to be substantial in relation to its legitimate scope." *Rendon*, 424 F.3d at 480 (*citing Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). The United States Supreme Court is clear that "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is *not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)*." *Virginia v. Hicks,* 539 U.S. 113, 124 (2003) (emphasis added).

The Jackson Municipal Code provisions at issue here are content-neutral prohibitions, as they regulate the time, place, and manner of conduct (AKA speech) but that regulation is irrespective of its content. The ordinances are also narrowly tailored to further that interest: they only when a security process is in place and the process is being applied. Finally, they serve the compelling interest of airline and airport safety. *See generally Lynch,* 881 F.3d at 818. Defendant has failed to meet the significant burden placed on him by an overbroad challenge.

<u>V: There was legally sufficient probable cause for the citation and arrest of Defendant and the search of Defendant thereafter was a proper search incident to that lawful arrest.</u>

The U.S. Supreme Court defines probable cause as comprised of the kind "fair probability" on which "reasonable and prudent [people,] not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). It clarifies that "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable cause] decision." *Id.* at 235. Instead probable cause exists when the "facts available to a police officer would warrant a person of reasonable caution to believe that a crime is being committed." *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013).

The facts available to the arresting officer in this case at the time of the arrest warranted the conclusion that there was a fair probability that Defendant violated the Jackson Municipal Code. See Sec. II, pgs. 8-9 above; Pl.'s Ex.3, 0:00:00 – 0:29:43; Pl.'s Ex.1, 0:06:00 – 0:15:00. Pl.'s Ex.2; Karnes Affidavit March 12, 2018 ("Pl.'s Ex.6"); Karnes Affidavit August 28, 2018 ("Pl.'s Ex.7"); Karnes Police Report ("Pl.'s Ex.8).

Police officers in Wyoming may arrest "a person without a warrant when . . . [a]ny criminal offense is being committed in the officer's presence by the person to be arrested. Wyo. Stat. Ann. § 7-2-102(b)(i). Once Defendant was lawfully arrested, as noted above, he was properly subject to a search incident to that lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 339 (2009) ([A] search incident to arrest . . . include[s] the arrestee's person and the area within his immediate control.") (citation omitted).

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page **16** of 17
000126

**Conclusion**

WHEREFORE, the Town respectfully requests this Court DENY *Defendant's Motion to Dismiss* the above-captioned case.

DATED this 7th day of September, 2018.

Lea M. Colasuonno
WSB No. 7-5155
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of September, 2018 a true and accurate copy of the foregoing *Response to Defendant's Motion to Dismiss* was served as indicated below and addressed to:

Seth Johnson, Attorney for the Defendant
P.O. Box 1309
Saratoga, WY 82331

| U.S. mail: | [X] |
| via Hand Delivery: | [ ] |
| Telefax: | [ ] |
| Email: | [X] |

Lea M. Colasuonno
WSB No. 7-5155
Prosecuting Attorney
Town of Jackson
P.O. Box 1687
Jackson, Wyoming 83001
307.734.3497

*Town of Jackson v. William A. Frey*
Plaintiff's Response to Defendant's Motion to Dismiss
Docket No. 18-03-0226
Page **17** of 17
000127

# IN THE MUNICIPAL COURT

## TOWN OF JACKSON, STATE OF WYOMING

TOWN OF JACKSON         )
                             )
             *Plaintiff*,       )
                             )
*v.*                            )     Docket No. 18-03-0226
                             )
WILLIAM A. FREY,       )
                             )
             *Defendant*.      )

## APPENDIX OF EXHIBITS TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff the Town of Jackson, by and through its undersigned attorney, submits the following Appendix of Exhibits to its *Response to Defendant's Motion to Dismiss.*

      Exhibit 1:      Jackson Hole Airport Video

      Exhibit 2:      Rob Andazola Supp Report

      Exhibit 3:      Nate Karnes Body Camera

      Exhibit 4:      Michael Morgan Affidavit

      Exhibit 5:      Memorandum of Understanding between the Town of Jackson and the Jackson Hole Airport Board for Provision of Law Enforcement Services at the Jackson Hole Airport

      Exhibit 6:      Karnes Affidavit Dated March 12, 2018

      Exhibit 7:      Karnes Affidavit Dated August 28, 2018

      Exhibit 8:      Karnes Police Report

EXHIBIT 1

Jackson Hole Airport Video

3-12-2018 ARREST FULL (DVD 004)

# EXHIBIT 2

Supplemental Narrative by Rob Andazola



# Jackson Police Department
Todd Smith Chief of Police

*"We enhance the quality of life and provide for the safety and security of residents and visitors through professional police services."*
P.O. Box 1687 • 150 E. Pearl Avenue • Jackson, Wyoming 83001 • 307-733-1430 • FAX 307-733-3241 • www.jacksonholepolice.com

Supplemental Narrative                                    Printed on March 27, 2018

## Supplemental Report By Rob Andazola, 03/27/18 11:07
**Case #PDP180300050**
**Typed By Rob Andazola**

On 03/27/2018 at 9:00 a.m., myself and Detective Jason Figueroa responded the Jackson Hole Airport to interview Martha Preston regarding the incident. During the interview she stated the following:

Martha told me Mr. Frey went through the AIT body scanner which alerted to his groin, hip and ankle areas. The Scanner was being manned by Stan Karichner and Ginger Eva. Karichner showed Frey the screen and where it alerted on him. Karichner told Frey that he would have to do a "Pat down search." Frey responded something to the effect, "No ones going to touch me". Employee Stephanie Walker told Preston that Karichner needed her at the AIT scanner.

Karichner told Preston the scanner had alerted on areas of Frey's body. Frey stated to Preston, "No one is going to fondle my balls." Preston stated she believed she offered a private screening to him, but he interrupted her when she tried explaining, stating, "Nobody's going to touch me." She told me she called the Operations Supervisor, Dallas Buschow to their location. She stated Buschow did not talk to Frey.

Preston stated she called Officer Nate Karns by radio and by cell phone. After Karns arrived she explained that Frey needed a "Pat down" search then told Frey you can tell him "Karns", what you told me. Preston stated that the screening line had become backed up due to Frey and she left Frey with Karns, to open the lanes and get people moving.

Preston stated that after Karns arrested Frey she assisted in getting his ID to him. Frey's wife, actually got his ID from their bags and provided it to Preston who then gave it to Karns. Frey stated he wanted his cell phone, but before that could be provided he was taken away by Karns.

Preston stated she then assisted Frey's wife, who did not continue on her flight due to the incident.

Preston told me Frey's actions interfered with screening process and she has never witnessed anything like this in her four years working for TSA.

I asked her if there was anything else she could think of? She told me that Frey did offer to take off his belt and be re-screened. According to Preston, this is not their procedure. In addition, she told me Frey's wife complained about the process and seemed to support the position her husband took about the search. Nothing follows.

Cpl. Rob Andazola
Jackson Police Department

TOWN EXHIBIT 2

000131

EXHIBIT 3

Nate Karnes Body Camera

20180312122828_JPD00726_100_PICT0008 (DVD 001)

EXHIBIT 4

Affidavit of J. Michael Morgan

000133

STATE OF COLORADO            )
                                             ) ss.

CITY AND COUNTY OF DENVER    )

## AFFIDAVIT OF J. MICHAEL MORGAN

The Affiant, J. Michael Morgan, first being sworn upon oath, based upon his personal knowledge and information, deposes and states as follows:

1.     I am over the age of 18, competent to testify herein, and make the following statements based on my personal knowledge.

2.     I am a member of the Wyoming State Bar, Attorney No. 5-1379.  I am the attorney for the Jackson Hole Airport Board (the "Board") and have served in that capacity since approximately 1986.

3.     In my capacity as attorney for the Board, I am called on from time to time to help ensure the Board's compliance with federal law, including Title 49 of the United States Code, and with Wyoming statutes applicable to the Jackson Hole Airport (the "Airport").

4.     The Board operates the Airport in Grand Teton National Park pursuant to an agreement between the United States Department of the Interior and the Jackson Hole Airport Board dated April 27, 1983, as amended (the "Interior Agreement").  Paragraph 4(b) of the Interior Agreement provides that the "Board is deemed the operator of the Airport as defined in the applicable Department of Transportation Regulations."  Paragraph 4(a) of the Interior Agreement furthers provides that "in the operation of the Airport, the Board shall comply with all applicable federal rules and regulations."

5.     The Airport is regularly served by air carriers holding certificates issued by the United States Secretary of Transportation.  These air carriers include United Airlines, American Airlines, and Delta Airlines.

6.     Because the Airport regularly serves certificated air carriers, the Board, as operator of the Airport, is required to adopt a transportation security program that provides for law enforcement presence and capability at the Airport, pursuant to 49 U.S.C. §44903(c)(1) (the "Security Program").

7.     Such a Security Program has been adopted by the Airport, and has been approved by the Transportation Security Administration of the Department of Homeland Security.  The Board implements the Security Program at the Airport.

8.     In furtherance of the Security Program, since 2009 the Board has entered into a series of agreements with the Town of Jackson titled "*Memorandum of Understanding between*

1

TOWN EXHIBIT 4

*the Town of Jackson and the Jackson Hole Airport Board for Provision of Law Enforcement services to the Jackson Hole Airport"* (the "MOU"). The current MOU became effective on July 1, 2017 and is for a term expiring June 30, 2020.

9.      Pursuant to the MOU, the Town has agreed to provide law enforcement services at the Airport, "in accordance with the requirements of 49 U.S.C. §44903(c) and the regulations and standards of the United States Transportation Security Administration promulgated pursuant to thereto ("TSA Requirements")." A true and correct copy of the MOU is attached to this Affidavit as **Exhibit 1**.

10.      The TSA Requirements referenced in the MOU include 49 CFR §1542.217 which, among other things, requires the Board to insure that law enforcement personnel "have the authority to arrest with or without a warrant, while on duty at the Airport for the following violations of the criminal laws of the state and local jurisdiction in which the Airport is located – (i) a crime committed in the presence of the individual; and (ii) a felony, when the individual has reason to believe that the suspect has committed it."

FURTHER AFFIANT SAYETH NAUGHT.

Dated this 5th day of September, 2018.

_____
J. Michael Morgan

**STATE OF COLORADO**              )
                                   ) ss.
**CITY AND COUNTY OF DENVER**      )

The foregoing document was acknowledged before me this 5th day of September, 2018, by J. Michael Morgan.

Witness my hand and official seal.

```
SHARON FOWLE
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19954003253
MY COMMISSION EXPIRES MARCH 5, 2019
```

_____
Notary Public

TOWN EXHIBIT 4

EXHIBIT 5

MOU TOJ and Airport

**MEMORANDUM OF UNDERSTANDING**
**Between Town of Jackson and Jackson Hole Airport Board**
**For Provision of Law Enforcement Services to the Jackson Hole Airport**

1. <u>Parties.</u> This Memorandum of understanding (MOU) is made and entered into by and between the Town of Jackson (Town), whose address is PO Box 1687, Jackson, WY 83001, and Jackson Hole Airport Board, whose address is PO Box 159, Jackson, WY 83001 (Board).

2. <u>Purpose.</u> The Town is providing certain law enforcement services at the Jackson Hole Airport (Airport) on a reimbursement basis. The purpose of this MOU is to establish the working relationship and responsibilities of the Town and the Board relative to the provision of such services.

3. <u>Term.</u> This MOU shall commence upon the day and date last signed and executed by the duly authorized representatives of the parties to this MOU and shall remain in full force and effective for three (3) years from the date of execution. This MOU may be terminated, without cause, by either of the parties upon one hundred and eighty (180) days written notice, and such notice shall be delivered by hand or by certified mail, return receipt requested.

4. <u>Responsibilities of Town.</u> The Town will provide law enforcement services at the Airport. This will be done by providing Jackson Police Department police officers to be present at and/or patrol the Airport at times when the security screening checkpoint is in operation and during flight departures. All services will be in accordance with the requirements of 49 U.S.C. §44903(C) and the regulations and standards of the United States Transportation Security Administration promulgated pursuant thereto. Officers providing service to the Airport are employees of the Town. All personnel matters including, but not limited to wage, paid time off, and disciplinary actions are the responsibility of the Town. Officers working at the airport will utilize the Airport's time clock to log in upon reporting for airport duty and shall use it to log out at the end of their shift. The Town understands that if it fails at any time to provide the services described in this paragraph, the security screening checkpoint cannot function, and departing airline passengers cannot be boarded at the Airport.

5. <u>Responsibilities of the Airport.</u> The Town is providing officers on a reimbursement basis. Provision of this service may require the Town to hire and train up to three (3) new officers. The Board will reimburse the Town for all costs associated with screening, hiring and training for up to three (3) new officers. In addition, the Town Finance Department will submit monthly invoices for all law enforcement services rendered at the Airport pursuant to this Agreement. The monthly billing will be for the fixed sum of $20,850 per month.  The Airport will convert the officers' time clock hours into the appropriate format for federal reimbursement purposes. Although the Town will do its utmost to preclude the use of overtime to cover shifts, if overtime is required as a result of an exigency at the Airport, the Airport agrees to reimburse the Town for actual expenses as the result of said overtime.

TOWN EXHIBIT 5

6. General Provisions.

    a. **Amendments.** Either party may request changes to this MOU. Any changes, modification, revisions or amendments to this MOU, which are mutually agreed upon by and between the parties to the MOU, shall be incorporated, in writing, and effective when executed and signed by all parties to this MOU.

**b. Applicable Law.** The construction, interpretation and enforcement of this MOU shall be governed by the laws of the State of Wyoming. The Courts of the State of Wyoming shall have jurisdiction over any action arising out of this MOU and over the parties, and the venue shall be the Ninth Judicial District, Teton County, State of Wyoming.

c. **Entirety of Agreement.** This MOU, consisting of three (3) pages, represents the entire and integrated agreement between the parties with respect to the matters set forth herein and supersedes all prior negotiations, representations and agreements, whether written or oral.

d. **Severability.** Should any portion of this MOU be judicially determined to the illegal or unenforceable, the remainder of the MOU shall continue in full force and effect, and either party may renegotiate the terms affected by the severance.

e. **Sovereign Immunity.** The Town does not wave its sovereign immunity by entering into this MOU and fully retains all immunities and defenses provided by law with respect to any action based on or occurring as a result of this MOU.

f. **Third Party Beneficiary Rights.** The parties do not intend to create in any other individual or entity the status of third party beneficiary, and this MOU shall not be construed so as to create such status. The rights, duties and obligations contained in this MOU shall operate only between the parties to this MOU, and shall inure solely to the benefit of the parties to this MOU. The provisions of this MOU are intended only to assist the parties in determining and performing their obligations under this MOU. The parties to this MOU intend and expressly agree that only parties signatory to this MOU shall have any legal or equitable right to seek to enforce this MOU, to seek any remedy arising out of a party's performance or failure to perform any term or condition of this MOU, or to bring an action for the breach of this MOU.

**Signatures.** In witness whereof, the parties to this MOU through their duly authorized representatives have executed this MOU on the days and dates set out below, and certify that they have read, understood, and agreed to the terms and conditions of this MOU as set forth herein.

The effective date of this MOU is the date of the signature last affixed to this page.

TOWN EXHIBIT 5

TOWN OF JACKSON, WYOMING:

Mayor                                    Date 5/18/09

Print Name: Mark J. Barron

Attest:

Clerk                                    Date 5/19/09

Print Name: Roxanne DeVries Robinson


JACKSON HOLE AIRPORT BOARD:

Chairman                                 Date May 20, 2009

Print Name: Terry Blann

Attest:

Title: admin                             Date May 20, 2009

Print Name: Phyllis Koor

EXHIBIT 6

Probable Cause Affidavit by Karnes

March 12, 2018

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, WYOMING

TOWN OF JACKSON )   **PROBABLE CAUSE**
)
Plaintiff, )   AFFIDAVIT IN SUPPORT OF
)   WARRANTLESS ARREST
vs. )   (Rule 5, W.R.Cr.P)
)
)
FREY, WILLIAM A )
)
Defendant, )

PDP18030050
1803-1156

VICTIM(S) NAME    {victims.name}

AFFIANT    Nathan Karnes                                            , being duly sworn,

States that the Defendant,    FREY, WILLIAM A                              , was arrested

By (NAME OF ARRESTING OFFICER)    726 - Karnes, Nathan

on    03/12/18 13:00

at (LOCATION)    1250 E AIRPORT ROAD

in violation of (STATUTE(S))    JMC 12.16.170 - AIRPORT: COMPLIANCE WITH SECURITY REQUIREMENTS

**NARRATIVE**   (SET FORTH SUFFICIENT DETAIL TO PERMIT INFORMED JUDICIAL REVIEW AND
PROBABLE CAUSE DETERMINATION):

While on scheduled patrol at Jackson Hole Airport when the Screening Supervisor Martha Preston called
Officer Nathan Karnes and requested that he respond to screening. Officer Karnes spoke with Supervisor
Preston and was informed that William Frey went through a screening device that showed that Frey had an area
on his groin and upper inner thigh that needed additional screening. Frey stated he was willing to be rescanned
but, "I am not willing to have someone feel my balls". Supervisor Preston stated the SOP, standard operating
procedure, states they are not allowed to re-screen someone. Officer Karnes told Frey that he once he started
the screening process that he is required to finish the process as the screeners have directed. Frey stated he was
not going to be sexually assaulted and refused to complete the screening process. Officer Karnes arrested Frey
for being in a restricted area at the airport and failing to comply with the screening being applied to that area.

The above facts constitute probable cause for the Defendant's warrantless arrest
Dated this   12 th   day of   March   2018            .

_____
AFFIANT SIGNATURE

State of Wyoming )
) ss
County of Teton )

SUBSCRIBED AND SWORN TO BEFORE ME BY   Nathan Karnes
PRINT OR TYPE NAME OF AFFIANT

this   12 th   day of   March   , 20 18

WITNESS my hand and official seal.

_____
☐ Circuit Court Judge ☐ Clerk of the Court ☒ Notary Public

LYNDA KAYE RUDOLPH - NOTARY PUBLIC
County of          State of
Teton            Wyoming
My Commission Expires  2-2-20

000141            TOWN EXHIBIT 6

EXHIBIT 7

Corrected Probable Cause Affidavit by Karnes

August 28, 2018

IN THE MUNICIPAL COURT OF THE TOWN OF JACKSON
TETON COUNTY, WYOMING

TOWN OF JACKSON

Plaintiff,

vs.

FREY, WILLIAM A

Defendant,

**PROBABLE CAUSE**

PDP180300050

8/28

Corrected

PC

Affidavit

VICTIM(S) NAME _____

AFFIANT _Nathan Karnes_

States that the Defendant, **FREY, WILLIAM A**

By (NAME OF ARRESTING OFFICER) **726 – NATHAN KARNES**

at **1300** this **Tuesday, March 13, 2018**
(TIME)          (DAY)          (DATE)

at (LOCATION) **1250 EAST AIRPORT ROAD**

for (CHARGE(S)) **AIRPORT: COMPLIANCE WITH SECURITY REQUIREMENTS**

in violation of (STATUTE(S)) **JMC 12.16.170 (A)**

## NARRATIVE (SET FORTH SUFFICIENT DETAIL TO PERMIT INFORMED JUDICIAL REVIEW AND PROBABLE CAUSE DETERMINATION):

While on scheduled patrol at Jackson Hole Airport when the Screening Supervisor Martha Preston called Officer Nathan Karnes and requested that he respond to screening. Officer Karnes spoke with Supervisor Preston and was informed that William Frey went through a screening device that showed that Frey had an area on his groin and upper inner thigh that needed additional screening. Frey stated he was willing to be rescanned but, "I am not willing to have someone feel my balls". Supervisor Preston stated the SOP, standard operating procedure, states they are not allowed to re-screen someone. Officer Karnes told Frey that he once he started the screening process that he is required to finish the process as the screeners have directed. Frey stated he was not going to be sexually assaulted and refused to complete the screening process. Frey stated he would walk through a screening device again but would not submit to a physical search of his person.

Officer Karnes arrested Frey for interfering with the security procedure implemented at the airport as Frey refused to be searched and thus compromised a security procedure implemented at the airport.

The above facts constitute probable cause for the Defendant's warrantless arrest
Dated this _28th_ day of _August 2018_.

_____
AFFIANT SIGNATURE

State of Wyoming     )
                     ) ss
County of Teton      )

SUBSCRIBED AND SWORN TO BEFORE ME BY _Nathan Karnes_
                                       PRINT OR TYPE NAME OF AFFIANT

this _28_ day of _August_, 20 _18_

WITNESS my hand and official seal.

_Cynthia A. Riedel_

☐ Municipal Court Judge  ☐ Clerk of the Court  ☒ Notary Public

Cynthia A. Riedel • Notary Public
County of Teton    State of Wyoming
My Commission Expires May 30, 2022

PDP180300050

TOWN EXHIBIT 7

EXHIBIT 8

Primary Narrative by Karnes



# Jackson Police Department
## Todd Smith Chief of Police

*"We enhance the quality of life and provide for the safety and security of residents and visitors through professional police services."*
P.O. Box 1687 • 150 E. Pearl Avenue • Jackson, Wyoming 83001 • 307-733-1430 • FAX 307-733-3241 • www.jacksonholepolice.com

Primary Narrative | Printed on March 27, 2018

# Primary Report By Nathan Karnes, 03/12/18 14:04
**Case #PDP180300050**
**Typed By Nathan Karnes**

INFORMATION:
While on scheduled patrol at Jackson Hole Airport on 3/12/2018 the Screening Supervisor Martha Preston called me on the Airport Law Enforcement cell phone and requested I respond to screening.

INTERACTION WITH WILLIAM FREY:
Upon arrival in the security checkpoint I spoke with Supervisor Preston and was informed a passenger, later identified as William Frey, went through the AIT body scanner (a millimeter wave screening device which resembles a large phone booth). The AIT indicated Frey's groin, upper inner thigh, and down the side of his leg needed additional screening.  From my experience I knew areas which alarmed in the AIT required a physical pat down of the areas in question, per TSA protocols. Frey told me he was willing to be rescanned but said "I am not willing to have someone feel my balls".  Supervisor Preston explained their SOP (standard operating procedure) states they are "not allowed to re-scan somebody" under these circumstances and Frey needed to submit to the pat down.

At first I attempted to explain the process screening process to Frey but he interrupted and stated, "I'm not gonna...If they wont let me on the plane then I'm going to leave".  I again attempted to explain the process and Frey interrupted again asking "Do you want me to feel your balls?"  I essentially explained to Frey because he purchased an airline ticket, he is required to go through screening, and when he enters the doors for screening and hands his boarding pass and identification to the screener then he is required to complete the screening process.

Frey stated in an angry tone while raising his voice he believed the pat down amounted to a sexual assault.  At the same time he stepped toward me so he was less than an arms length away and gestured with his hand in an angry manner, almost touching me.  I placed my hand on Frey's chest and gently pushed him back and told him to stay back, Frey hesitated and looked around briefly before exclaiming "Don't touch me!".  Frey reiterated, "I'm not completing that screening".  I informed Frey failure to complete the screening process would constitute a misdemeanor and is an arrest-able offense.  Frey said, "Fire me, arrest me then, for not being willing to be sexually assaulted. Arrest me for that, try it!".  Frey said if anyone touches him, "I'm gonna scream so fucking loud...".  It was obvious to me Frey was becoming a serious distraction, so I instructed Frey to follow me out of the screening line to the back of the screening area.  While walking to this location Frey stated, "It is not happening!"

Frey continued to talk, explaining "I'm not doing it. I'm not doing it, it's not a negotiation, I'm not doing it. I will not be sexually assaulted by these people".  I informed Frey if I arrested him I would perform a more invasive search than the one he was being required to submit to for screening.  Frey waived his arms several times while stepping closer to me as he threatened to litigate.  I put up my hand and told him to stay back from me.  I did this for my safety as Frey was extremely irritable.

ARREST:
I again told Frey that he once he started the screening process that he is required to finish the process as the screeners have directed.  Frey emphatically stated he was not going to be sexually assaulted and refused to complete the screening process.  Knowing Frey was required to complete the screening process once started and that re-screening was not an option; I felt I had no other option given his continued refusal to comply, but to arrest him so I could search him incident to a lawful arrest and clear the areas of his person which alarmed in the AIT.  I arrested Frey

Made by **ZUERCHER** | Case PDP180300050 | Page 1 of 4

TOWN EXHIBIT 8

for being in a restricted area at the airport and failing to comply with the screening being applied to that area. Frey was cooperative when I told him to turn around and put his hands behind his back. I placed handcuffs on him, I checked for proper fit and tightness and double locked them. Frey refused to answer my questions regarding any weapons or sharp objects he might have on his person. Frey told me, "You figure it out".

I searched Frey incident to arrest paying special attention to the areas which alarmed in the AIT since they had not been cleared yet. I did not locate any foreign objects or suspicious items in those areas during my search. I collected Frey's driver's license and Frey's shoes before taking him to the PD office in the airport. Frey requested his wife be allowed to come with him, a request I denied because she was not under arrest. As I began to walk Frey to the PD office he became rigid and starting pushing back into me. He also started turning his body back around toward me. I regained control of Frey by utilizing a wrist lock and ordered him to stop resisting. Frey stated he was not resisting. Once Frey and I made it to the office, Frey asked if I could loosen the handcuff on his left wrist. I rechecked and loosened both cuffs at his request.

TRANSPORT:
I arranged to transport Frey to the jail which is our standard practice following any arrest. Corporal Kevin Jones arrived at the airport so I could transport Frey to the TCSO Jail. I placed Frey into the rear cabin portion of my patrol car, fastened his seatbelt, and transported him without incident.

CHARGES:
Frey was in clear violation of, and subsequently charged with, Jackson Municipal Code (J.M.C.) 12.16.170 (B) which states, "No person shall enter or be present in a Restricted Area without complying with the systems, measures, procedures, screening and/or inspection being applied to control access to or presence in such areas". Frey entered the Restricted Area after walked from the unsecured terminal area into the security checkpoint, which is a restricted area. Frey was allowed to enter the restricted area after he voluntarily provided his boarding pass and identification to the screener who was standing at the entrance of the restricted area.

JAIL:
Once at the jail, Frey was extremely uncooperative. Deputy Rudd informed me as they were attempting to book Frey he refused to answer questions, slammed his fists on the counter of the booking room, and demanded to speak to his lawyer. Deputies then escorted Frey to a cell until he was cooperative and agreed to complete the booking process. I returned to the jail to issue and explain the citation. While speaking with Frey he continued to yell at and threaten litigation against the Deputies and myself.

Deputies informed me that Frey later calmed down and agreed to complete the booking process. Prior to his release Deputies asked Frey if he was in need of any medical attention I was informed that Frey responded that he was not injured and did not need medical attention. Following completion of the booking process Frye was released.

BACK AT THE AIRPORT:
I returned to the airport to complete my shift after writing the Probable Cause Affidavit. While walking by baggage services, Frey was there collecting his luggage. Before I was able to activate my body camera, Frey stated he was sexually assaulted by screening personnel. Frey told me he looked up the definition of sexual assault, and I should too.

Frey told me that I should have de-escalated the situation with him. Frey stated, "You should not have twisted my arm, you know you twisted my arm, asshole!", he was pointing his finger at me before he reacquired his luggage cart and briskly walked away. Although Frey complained about the technique I used to get him to comply, he did not complain of any pain or injury.

BODY CAMERA FOOTAGE OBSERVATIONS:
Upon arrival in the screening area my body camera shows the screening lanes 1 & 2 had completely stopped and the

TOWN EXHIBIT 8

screeners had stopped screening presumably due to Frey's behavior.

At the beginning of my interaction with Frey TSO (Transportation Screening Officer) Stan Karichner can be seen standing behind Frey. While Frey is raising his voice, stepping toward me, and gesturing toward me, TSO Karichner was clearly distracted and can be seen turning his head to observe the disturbance Frey was making. Another time TSO Karichner can be observed screening a passenger (NFI) and the passenger is obviously not focusing on being screened but turning his head to his left to look at Frey and me as we were talking. Later on, just after Frey says "I'm gonna scream so fucking loud..." another female passenger (NFI) is distracted from TSO Ginger Eva, who is attempting to instruct and direct the passenger; and can be seen turning to look at Frey and away from TSO Eva.

ADDITIONAL CHARGES:
Based upon a review of my body camera footage I believe Frey also violated J.M.C. 12.16.160 (A) which states: "No Person shall interfere with any security screener, Airport employee, or flight crew member engaged in the performance of his or her duties." Frey violated this ordinance by interfering with screeners through his refusal to comply with the screening process, by distracting screeners from performing their duties, and by disrupting the continuity of the screening by being loud, threatening, and uncooperative. Frey should be charged with this, but I was unable to issue him a citation for this charge before he was released from jail.


EVIDENCE:
I entered my Prima Facie body camera footage from my camera and from camera 704 into evidence and burned a copy for the Municipal Court. I entered my Coban footage into evidence from transporting Frey to the Jail. I collected airport CCTV footage, Jail CCTV footage, and Jail staff body cameras and entered them all into evidence.

I reviewed the CCTV airport camera footage and noticed that screening personnel never touched Frey. Based on this, Frey could not have been sexually assaulted. Even if they had conducted the pat down search of the alarmed areas of Frey's person, based on my observations of the process, the pat down would not have met the elements of sexual assault under Wyoming State Statute.


ADDITIONAL INFORMATION:

Frey had a coach class boarding pass for United Airlines flight 2402 which was traveling to Newark, New Jersey, and was not signed up for TSA Pre.

TSA PROTOCOLS:
Sergeant Phillips contacted TSA and learned their protocols require persons to complete the screening process once they begin the screening process. He also confirmed persons are not allowed to be re-screened following an alarm from the AIT, but are required to submit to a pat down of the alarmed area of their person. Re-screening is apparently allowed only under two very specific circumstances, which the TSA supervisor (NFI) would not elaborate on, but to say Frey's circumstances did NOT fit the protocol for re-screening.

UNITED AIRLINE INC. CONTRACT OF CARRIAGE:
United Airlines' website   https://www.united.com/web/en-US/content/contract-of-carriage.aspx#sec20   informs passengers of it's Contract of Carriage (the contract passengers enter into when they purchase a ticket). The opening statement says, "...By purchasing a ticket or accepting transportation, the passenger agrees to be bound by these controlling terms of this Contract of Carriage...".

Rule 20 Screening of Passengers and Baggage of the Contract of Carriage states:
"Passengers and/or their baggage are subject to security screening, including but not limited to, security profiling, physical pat-downs and inspections, x-ray screening, manual bag searches, questioning of Passengers, and use of electronic or other detectors or screening or security devices, in the sole discretion of the government, airport or UA,

and with or without the Passenger's presence, consent or knowledge. Neither UA nor its employees or agents is liable for any damage, loss, delay (including refusal to transport), confiscation of property, injury or other harm relating to or arising out of security screening conducted by an agent of the airport or any local, state, or federal agency or a Passenger's failure to submit to or comply with such security screening."

Report taken by Officer Nathan Karnes #726

CASE CLOSED WITH ARREST, NOTHING FURTHER.

TOWN EXHIBIT 8

000148