IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING



**FILED**

*1:00 pm, 6/11/20*

**U.S. Magistrate Judge**

WILLIAM FREY,

Plaintiff,

vs.

JACKSON WYOMING, TETON COUNTY,
JACKSON HOLE AIRPORT, JACKSON
HOLE AIRPORT BOARD, NATHAN
KARNES, and JAMES WHALEN,

Defendants.

Case No.  19-CV-50-F

---

## ORDER IMPOSING COST BOND

This matter is before the Court on Municpal Defendants' Motion to impose a cost bond under Rule 7 of the Federal Rules of Appellate Procedure [Doc. 122]. The Municipal Defendants request the Court order Frey to post a bond in the amount of $224,297.41 for anticipated costs on appeal, including the estimated cost of attorneys' fees, printing, and interest, and a doubling-sanction for frivolity under Rule 38 of the Federal Rules of Appellate Procedure. The Court grants the Motion in part and hereby orders Frey to post a cost bond in the amount of $75,947.20 to cover estimated attorneys' fees under § 1988 and printing costs under Rule 39. The Court denies Defendants' Motion with respect to  the inclusion of  interest and sanctions under Rule 38.

### BACKGROUND

Frey, a Connecticut citizen, owns a $15 million vacation home in Jackson, Wyoming. In March 2018, Frey planned to return to Connecticut by way of the Jackson Hole Airport. At the Airport, Frey voluntarily proceeded through a TSA body scanner with his belt on. When the body scanner indicated further screening was necessary, a TSA officer asked Frey to step to the side for

secondary screening of his groin area, which would consist of a pat-down. Frey, insistent that his belt set the alarm off, volunteered to remove his belt and walk through the scanner again. TSA informed Frey this was not an option and again requested he consent to a pat-down. Frey refused, apparently believing the pat-down would equate to a sexual assault. This exchange escalated quickly. At times, Frey loudly expressed his refusal to consent to the pat-down and vehemently averred he would sue anyone who touched him without his consent. This disrupted the entire security screening process.

Frey was arrested for refusing to comply with the Airport's security measures in violation of Jackson's Municipal Code. Frey spent forty-five minutes in the Airport's holding area before he was transported to and detained in the Teton County Jail for three hours. During this time, Frey claims he repeatedly requested an attorney but that an officer attempted to intimidate him into waiving his constitutional right to counsel.

Frey filed suit against the Town of Jackson, Teton County, the Jackson Hole Airport, and the Jackson Hole Airport Board (collectively "Municipal Defendants"), as well as two officers who were involved in his transportation to and detention in the county jail. Among other things, the Complaint alleged the Municipal Defendants were liable for First Amendment retaliation because he was arrested after verbally protesting their actions, and for violating his Fourth Amendment rights by prolonging his detention and interrogating him without an attorney, and for falsely imprisoning, assaulting, battering, and maliciously prosecuting him.[1] Frey also alleged the Municipal Defendants were vicariously liable for the actions of the two individual officers under § 1983.

---

[1] There were a number of causes of action alleged against Officer Karnes and Sheriff Whalen in their individual and official capacities, but these theories are not material for purposes of this Motion.

All of the Defendants filed Motions to Dismiss for failure to state a claim upon which relief can be granted. These motions were granted with respect to the claims against the individual officers, which the trial court dismissed with prejudice. Regarding the Municipal Defendants, however, the trial court concluded that many of Frey's claims lacked legal foundation as pled, but dismissed the claims without prejudice and afforded him a *limited* opportunity to file an amended complaint to cure the deficiencies.

Frey filed an Amended Complaint that largely ignored the trial court's instruction as to the scope of the permitted amendment, re-pled claims that were dismissed with prejudice, and added several claims. Much like the original Complaint, the Amended Complaint was met with multiple Motions to Dismiss. A week after the Motions to Dismiss were ripe for decision but before the trial court entered a ruling, Frey filed a Motion to Amend seeking leave to file a fifty-nine-page proposed second amended complaint that added several claims, legal theories, and defendants.

The trial court dismissed Frey's Amended Complaint with prejudice, denied his Motion to Amend on the basis of futility, and entered judgment in favor of Defendants. Frey then noticed and filed an appeal of the trial court's first and second dismissal orders and the denial of his Motion to Amend.

The Municipal Defendants then filed a Motion for Fees and Sanctions, which requested attorneys' fees incurred in defending the entire lawsuit under § 1988 and sanctions against Frey's counsel under § 1927. The trial court found Frey's suit became frivolous, unreasonable, and groundless when he filed the Amended Complaint because his claims were "entirely unsubstantiated in law and fact." (ECF No. 112, at 11). The Court awarded the Municipal Defendants $35,985.50 in attorneys' fees incurred in moving to dismiss Frey's Amended Complaint and in responding to his Motion to Amend. Frey's counsel were ordered to jointly pay

$8,420 of this amount for their role in "vexatiously multiplying the proceedings," and the remaining $27,565.50 was to be paid by Frey individually. (ECF No. 114, at 14). From this Order, Defendants filed a Motion for Reconsideration as to the Court's exclusion of fees incurred in preparing the Motion for Fees and Sanctions. On reconsideration, Frey was ordered to pay $44,575.00 in attorneys' fees, and Frey's attorneys were ordered to jointly pay $10,765.00, for a total amount of $55,340.

Frey separately noticed and filed an appeal as to the award of attorneys' fees and sanctions and the court's recalculation following reconsideration. The entry and execution of the awarded fees and sanctions are currently stayed pending disposition of Frey's appeals, and the parties stipulated to the posting of a supersedeas bond to cover the amount of the judgment.[2]

Now pending before the Court is the Municipal Defendants' Joint Motion to impose a cost bond under Federal Rule of Appellate Procedure 7. [Doc. 122]. Defendants request the Court order Frey to post bond in an amount to ensure payment of the Municipal Defendants' estimated costs on appeal, which includes their estimated appellate attorneys' fees, nominal estimates for printing and interest, and a double award for filing a frivolous appeal.

RELEVANT LAW

A district court may order an appellant to provide some form of security that will prospectively protect the appellee from nonpayment of costs by the appellant should the appellee succeed on appeal. FED. R. APP. P. 7. Though similar to a supersedeas bond, which a court can impose to preserve a money judgment pending an appeal, a Rule 7 cost bond relates to the potential expenses of litigating an appeal. *Tennille v. Western Union Company*, 774 F.3d 1249, 1255 n.3 (10th Cir. 2014). The proper amount of a Rule 7 appeal or "cost" bond is limited to the "amount

---

[2] Frey and his counsel missed the deadline imposed by the Clerk of Court for posting their respective bonds.

necessary to ensure payment of costs on appeal." FED. R. APP. P. 7. "Costs on appeal" is not defined

by the Federal Rules of Appellate Procedure. *See id.* However, interpretive circuit decisions have

consistently held the phrase encompasses appellate costs authorized by rule or statute, despite there

being some disagreement "as to precisely what costs a Rule 7 appeal bond can cover."[3] *Tennille*,

774 F.3d at 1254. Within these parameters,  the Tenth Circuit Court of Appeals has defined "costs

on appeal" to mean those which "the appellee stands to have reimbursed should he prevail on

appeal[.]" *Id.* The district court is afforded wide discretion in determining whether to impose a

cost bound and if so, in what amount. *Id.* at 1255.

### RULING OF THE COURT

Consideration of Defendants' Motion requires determination of three separate but related

issues: First, whether appellate attorneys' fees are recoverable under § 1988. Second, if § 1988

permits recovery of appellate attorneys' fees, whether a cost bond should be imposed in this case.

And third, if a cost bond should be imposed, what amount is necessary to ensure payment should

the Municipal Defendants prevail on appeal.

**Appellate Attorneys' Fees under § 1988**

Appellate attorneys' fees may be considered "costs on appeal," and included as part of a

Rule 7 cost bond, if such fees are expressly awardable under an applicable rule or statute. *Tennille*,

774 F.3d at 1255. Section 1988(b) of the Civil Rights Attorney's Fees Award Act permits a

---

[3] *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) (holding that if "[a] statute includes attorney's fees 'as part of the costs' which may be taxed upon appeal, the district court may factor these fees into its imposition of the bond for costs"); *In re Cardizem CD Antitrust Litigation*, 391 F.3d 812, 817 (6th Cir. 2004) (holding that attorneys' fees can be included under a Rule 7 cost bond if such fees are "properly awardable under the relevant substantive statute or other authority") (quoting *Marek v. Chesny*, 473 U.S. 1, 9 (1985)); *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 957 (9th Cir. 2007) (holding that "costs on appeal" includes all expenses defined as "costs" by an applicable fee-shifting statute, including attorney's fees); *Young v. New Process Steel, LP*, 419 F.3d 1201, 1204 (11th Cir. 2005) (holding a Rule 7 bond may include appellate attorney's fees if the appellee could recover the fees under an applicable statute).

prevailing party in a civil rights suit to recover reasonable attorneys' fees "as part of the costs." 42 U.S.C. 1988(b); *Hughes v. Row*e, 449 U.S. 5, 15 (1980). If the prevailing party is a civil rights *plaintiff*, he or she "should ordinarily recover" attorneys' fees, unless "special circumstances" would render such an award unjust. *Chicano Police Officer's Ass'n v. Stover*, 624 F.2d 127, 130 (10th Cir. 1980). The purpose behind this fee-shifting statute is to reimburse a plaintiff for the costs expended to vindicate his or her civil rights. *Riverside v. Rivera*, 477 U.S. 561, 577–78 (1986). Under much different equitable principles, § 1988 permits a prevailing *defendant* to recover costs from the civil rights plaintiff if the action is frivolous, unreasonable, or without foundation. *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 418 (1978). But even if a civil rights defendant is awarded attorneys' fees, the award is limited to those incurred from frivolous, unreasonable, or unfounded conduct, and it may not include those fees expended in defense of non-frivolous, reasonable, or founded actions. *Fox v. Vice*, 563 U.S. 826, 835 (2011).

The trial court awarded the Municipal Defendants attorneys' fees under § 1988, finding Frey's suit against the Municipal Defendants became "frivolous, unreasonable, and groundless" when he filed his Amended Complaint.[4] Specifically, the trial court found Frey's amended claims were "entirely unsubstantiated in law or fact," and that "all of his claims against the Municipal Defendants were asserted contrary to well-established principles of constitutional law." (ECF No. 112, at 11).

The issue is whether the Defendants' *appellant* attorneys' fees are awardable under § 1988. The statute's language does not expressly limit attorneys' fees to trial-level proceedings. *See* §

---

[4] The trial court also levied sanctions against Frey's counsel under § 1927, but Defendants' Motion merely "left open the question" as to whether the cost bond should include a calculation for § 1927 sanctions. Absent cogent argument, the Court declines to address this issue.

1988(b). Instead, the plain language permits the recovery of attorneys' fees "in *any* action or proceeding. . . . " 42 U.S.C. 1988(b) (emphasis added). Moreover, the Tenth Circuit Court of Appeals has discretion to award appellate attorney fees, and has exercised its discretion to do so under § 1988. *In re Kansas Congressional Districts Reapportionment Cases*, 745 F.2d 610, 612 (10th Cir. 1984); *see also Hutto v. Finney*, 437 U.S. 678, 700 (1978) (affirming award of appellate attorneys' fees under § 1988). Because § 1988 authorizes a court to award reasonable appellate attorneys' fees to a prevailing party, such fees may be included as "costs on appeal" under Rule 7. *See Sierra Club v. El Paso Gold Mines, Inc.*, No. Civ. A.01 PC 2163 OES 2003 WL 25265871, at *12 (D. Colo. Apr. 21, 2003) (imposing cost bond to encompass anticipated appellate attorney fees under applicable statute).

Under § 1988, Defendants may be awarded appellate attorneys' fees only if they prevail on appeal *and* Frey's appeal is frivolous, unreasonable, or groundless. *Hughes*, 499 U.S. at 15. Thus, the Court believes the proper standard to determine whether the Defendants stand to have appellate attorneys' fees reimbursed on appeal is consideration of whether the Tenth Circuit is likely to deem Frey's appeals frivolous, unreasonable, or groundless. *See Tennille*, 774 F.3d at 1255; *Hughes*, 499 U.S. at 15.

The Court recognizes this standard inherently requires a prospective determination as to the merits of Frey's appeal. But many courts have considered this type of forecasting to be "part and parcel of Rule 7" determinations. *See e.g.*, *Adsani*, 139 F. 3d at 79. Indeed, the only way an appellant would be required to actually pay "costs on appeal" is if he or she loses at the appellate level. *See id.* By prospectively protecting an appellee's right to potential payment, a Rule 7 cost bond requires the court to make at least "an implicit finding that the appellant's appeal lacks merit[.]" *Id.* Moreover, a district court in this circuit considered the merits of an appellant's appeal

7

as one factor in determining whether to impose a cost bond under Rule 7. *See Hamstein Cumberland Music Grp. v. Williams*, 556 Fed. App'x 698, 702 (10th Cir. 2014) (upholding district court's consideration of factors, including the merits of appellant's appeal).

This standard has also been adopted by the Eleventh Circuit Court of Appeals, which is the only circuit court to decide this precise issue. *See Young v. New Process Steel, LP*, 419 F.3d 1201 (11th Cir. 2005). Specifically, the Eleventh Circuit held that a district court may impose a cost bond that encompasses anticipated appellate attorneys' fees under § 1988 because the statute permits recovery of fees as part of litigation costs. *See id.* at 1205. If the district court is to do so, however, the Eleventh Circuit requires a finding that the appeal is likely to be frivolous, unreasonable, or without foundation, since the very essence of § 1988 defendant-attorneys' fees is frivolity. *See id.* at 1208. This standard has since been applied by a number of district courts in the Eleventh Circuit. *See Vicker v. Cavalier Home Builders, LLC*, 405 F. Supp. 2d 1352 (N.D. Ala. Dec. 12, 2005) (finding plaintiff-appellant's appeal to be frivolous, unreasonable, and groundless because of failure to preserve issues on appeal); *Wakefield v. City of Miami-Dade*, No. 05-21792-CIV, 2005 WL 2891775 (S.D. Fla. Oct. 7, 2005) (imposing cost bond when appeal was likely frivolous, unreasonable, and without foundation).

Therefore, the Court believes this to be the proper standard. As such, the next determination is whether Frey's appeals are likely to be deemed frivolous, unreasonable, or groundless by the Tenth Circuit Court of Appeals. If the Court finds the Tenth Circuit is unlikely to do so, a cost bond covering anticipated appellate attorneys' fees under § 1988 would be inappropriate.

**The Merits of Frey's Appeals**

There are two appeals pending before the Tenth Circuit Court of Appeals: (1) the two dismissal orders and the denial of leave to amend; and (2) the award of attorneys' fees and

sanctions and the court's adjustment following reconsideration. The potential frivolousness of each appeal will be considered separately.

### The First Appeal: Orders of Dismissal

The first appeal encompasses two separate orders. First, the Order dismissing without prejudice Frey's claims against the Municipal Defendants and affording him leave to amend. Second, the Order dismissing the Amended Complaint with prejudice and denying Frey's Motion to Amend. For the following reasons, the Court finds this appeal is likely frivolous.

An appeal is frivolous if the result is obvious, the appellant's arguments of error are wholly without merit, or if the law being questioned on appeal is clearly established. *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987); *Dixon v. Okla. Bd. of Veterinary Med. Examiners*, No. CIV-06-1003-M, 2007 WL 9710984, at *1 (E.D. Okla. Nov. 27, 2007) (citing *Stewart v. Donges*, 915 F.2d 572, 583 n.14 (10th Cir. 1990)).

The appeal of the district court's first order is likely frivolous because the result is obvious. Frey's claims against the Municipal Defendants were dismissed without prejudice and he was afforded an opportunity to amend. While the order dismissed some claims with prejudice, it is axiomatic that a dismissal expressly authorizing leave to amend is not a final, appealable decision. *Phillips v. Humble*, 587 F.3d 1267, 1271 (10th Cir. 2009). Frey's appeal of this dismissal order fails to either qualify as a final judgment or to satisfy any of the criteria for a recognized exception to the final judgment rule. *See Utah v. Norton*, 396 F.3d 1281, 1287 (10th Cir. 2005) (stating a final appealable decision is one that terminates *all* matters as to *all* parties and causes of action). Absent proper certification, which has not been requested, this appeal is likely to get dismissed for lack of jurisdiction. *See* 28 U.S.C. § 1921 (granting circuit courts jurisdiction over appeals from final decisions of the district court); *See Dobson v. Waugh*, 131 F.3d 151, 1997 WL 758821 (10th

Cir. 1997) (table); *see* FED. R. CIV. P. 54(b) (certification of appealability by district court). This result is obvious, and therefore this appeal is likely frivolous. *Braley*, 832 F.2d at 1510.

The same conclusion is warranted for Frey's appeal of the second dismissal order and denial of leave to amend, albeit for different reasons. Specifically, Frey's appeal of these orders is likely frivolous because his substantive arguments are likely unmeritorious and the law being questioned is clearly established. While the Court is not certain what claims or arguments Frey will make on appeal, the Court believes the repeated transgressions of Frey and his counsel are indicative of what is likely to come.

In the first order of dismissal, the trial court spent seven pages explaining the "several reasons" why Frey's claims against the Municipal Defendants failed under the Rule 12(b)(6) standard. (ECF No. 51, at 23–30) (describing Frey's failure to accurately plead claims under *Monell v. Department Social Services*, 436 U.S. 658 (1958)). First, Frey's Complaint repeatedly discussed the actions of the individual officers as the basis for liability despite clear precedent establishing that § 1983 does not authorize recovery under vicarious liability principles. *See Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Second, the trial court set forth the well-known *Monell* standard for § 1983 municipal liability, which requires a plaintiff to prove (1) he was the victim of a constitutional violation and (2) that a municipal policy or custom was the "moving force" of the constitutional violation. *Zuniga v. City of Midwest City*, 68 Fed. App'x 160, 162–63 (10th Cir. 2003). The trial court then informed Frey that his Complaint contained only legal conclusions that the Municipal Defendants' actions "constituted" malicious prosecution and false imprisonment without setting forth supportive factual allegations, and therefore failed to satisfy the first prong of *Monell*. Moreover, the trial court discussed how other claims failed under the second *Monell* prong because of Frey's numerous references to "secret" TSA operating

10

procedures. Nevertheless, the trial court gave Frey an opportunity to amend if he could "allege facts regarding municipal policies or customs consistent with the Court's *Monell* analysis" that was extensively set forth in the order. (ECF No. 51, at 31).

Frey's Amended Complaint was dismissed with prejudice, largely for his failure to cure the deficiencies discussed at length in the first order of dismissal. (*See* ECF No. 89, 24–28). Frey's Motion to Amend was denied because, much like the original and Amended Complaints, his proposed claims failed under the two-part *Monell* test and exhibited a repeated failure to allege a cognizable First Amendment retaliation claim.[5] (ECF No. 89, 33–36). The trial court ultimately determined Frey's First Amended Complaint and the Motion to Amend were frivolous, unreasonable, and groundless, at least with respect to the claims asserted against the Municipal Defendants. (ECF No. 112, at 11).

Under the analogous standard for frivolousness set forth in Rule 11 of the Federal Rules of Civil Procedure, an appeal of these orders is likely frivolous. Rule 11 requires attorneys to ensure their legal contentions are either warranted by existing law or derived from a nonfrivolous argument for extending existing law or establishing new law. FED. R. CIV. P. 11(b)(2). Rule 11 is violated when an attorney "advances argument in the face of a well-established rule and contrary to the presiding court's prior ruling." *Fazzio v. Weber Cnty*, No. 1:17-cv-132, 2019 WL 3416289, at *3 (D. Utah July 29, 2019) (slip copy). Frey's briefing in opposition to Defendants' Motions to Dismiss the Amended Complaint attempted to advance argument in the face of well-established precedent and contrary to the trial court's prior ruling. (*See* ECF No. 89) (stating Frey's Amended Complaint re-pled claims that were dismissed with prejudice in the first order of dismissal and

---

[5] Though not the determinative reason for denying the motion, the trial court also discussed Frey's seemingly questionable motive for filing only after Defendants spent significant time and money moving to dismiss the Amended Complaint and the Motions to Dismiss were ripe for consideration.

failed to comply with *Monell* analysis). Based on Frey's briefing in opposition to the present Motion, the Court believes such arguments are likely to reappear on appeal.

Specifically, Frey filed an affidavit explaining to this Court his genuine disagreement with the trial court's legal analysis because he believes "the full extent of constitutional protections in airports is a matter of dispute amongst legal scholars and that different courts have applied a variety of different approaches." (*See* ECF No. 130-1, at 2). However, neither Frey nor his counsel offered the trial court any meritorious argument for extending existing law or establishing new law. Instead, the record reflects Frey merely provided the trial court with decisions from other circuits and argued for extensions by way of unsuccessful case comparisons.

For example, in support of his First Amendment retaliation claim, Frey argued the facts of his case are similar to those in *Tobey v. Jones*, 706 F.3d 379, 389 (4th Cir. 2013), where the Fourth Circuit Court of Appeals determined the complaint set forth a cognizable retaliation claim. *Id.* at 387. The plaintiff in *Tobey*, wishing to express his opinion that the TSA's enhanced screening procedures were unconstitutional, wrote the text of the Fourth Amendment on his chest prior to going through airport security. *Id.* at 384. When Tobey approached the security checkpoint, he removed his t-shirt and placed it on the conveyor belt. *Id.* When a TSA officer advised Tobey he was not required to remove his clothing, he calmly stated he wished to do so for expressive purposes. *Id.* At no point did Tobey refuse to undergo any required procedures or decline to do anything requested of him by TSA officers. *Id.* Instead, Tobey "remained quiet, composed, polite, cooperative, and compli[ant]" throughout the entire interaction. *Id.* Nevertheless, Tobey was arrested for public disturbance. *Id.* On appeal, the court determined Tobey's complaint set forth a cognizable First Amendment retaliation claim. *Id.* at 390.

In stark contrast, however, Frey adamantly refused to comply with the Airport's security protocol, and he was then arrested for his refusal. Furthermore, Frey's behavior has been described by Jackson's Municipal Court as aggressive, hostile, and increasingly belligerent over time. (*See* ECF No. 20-1, at 111) (describing how Frey said: "if someone touches me I will scream so [expletive] loud that there's no one that's going to want to do this!").

Frey also argued the search that occurred in his case was "significantly more invasive" than that in which occurred in *United States v. Aukai*, 497 F.3d 955, 958 (9th Cir. 2007). Much like Frey, the defendant in *Aukai* voluntarily went through a body scanner at a TSA checkpoint and was then asked to submit to secondary screening measures. *See id.* at 957. But the similarities end there. The secondary search in *Aukai* led to the defendant actually emptying his pants pocket to reveal an unidentifiable object wrapped in tissue paper. *Id.* at 958. A TSA officer unwrapped the object to discover it was a glass pipe used to smoke methamphetamine. *Id.* at 958. The defendant was arrested and a search incident to his arrest led police to discover several transparent bags of methamphetamine that later resulted in his conviction for possession with intent to distribute. *Id.* at 958. The Ninth Circuit found this search was reasonable because consent is not a predicate for airport searches to be reasonable. *Id.* at 961. Instead, "all that is required is the passenger's election to attempt entry into the secured area of an airport." *Id.* at 961–63.

Frey's "significantly more invasive" argument is disingenuous at best. Frey was never subjected to a secondary screening let alone an invasive or unreasonable search. Indeed, his apparent allegation is that the "threatened search" was unreasonable in violation of the Fourth Amendment. (*See* ECF No. 89, at 26). Looking past this factual comparison, Frey advanced this argument despite Supreme Court precedent establishing that air travelers may be subject to

searches "even in the absence of individualized suspicion or wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000).

Much like the trial court, this Court finds that Frey's appeal likely constitutes "burdensome litigation having no legal or factual basis." *Christiansburg*, 434 U.S. at 420; *See Stewart*, 915 F.2d at 583 n.14 (discussing whether argument contrary to clearly established law is frivolous). While the Court does not wish to chill novel arguments or challenges to constitutional precedent, the result of this appeal is obvious given "the comprehensive and decisive exposition of the law" by the trial court in its first order of dismissal and Frey's continued arguments in the face of clearly-established legal principles to the contrary. *See Coghlan v. Starkey*, 852 F.2d 806, 810 (5th Cir. 1988) (citing *Martinez v. Internal Revenue Service*, 744 F.2d 71, 72 (10th Cir. 1984) (per curium) (finding appeal from district court's dismissal for failure to provide any information from which liability could arise to be frivolous); *See also Hunt v. Lamb*, 220 F. App'x 887, 890 (10th Cir. 2007) (unpublished) (finding § 1983 appeal frivolous for failure to cite any legal authority, even when plaintiff-appellant was proceeding pro se). Accordingly, the Court may impose a cost bond for purposes of Defendants' anticipated appellate attorneys' fees to litigate this appeal.

### The Second Appeal: Attorneys' Fees and Sanctions

The second appeal encompasses three orders: (1) the Order granting in part and denying in part the Municipal Defendants' Joint Motion for Fees and Sanctions [Doc. 112]; (2)  the Order determining the proper amount and scope of the fees and sanctions to be awarded [Doc. 114]; and (3) the court's Order granting in part and denying in part the Defendants' Joint Motion for Reconsideration [Doc. 118].

Similar to the first appeal, this Court is unaware of precisely what arguments Frey will raise on appeal. But considering the legal landscape that lies ahead, the Court believes the Tenth

14

Circuit is likely to find the appeal is frivolous. In one illustrative case, the Tenth Circuit affirmed a district court's award of fees and imposed appellate sanctions, finding the appeal to be devoid of merit because any "reasonable attorney could have identified that under the abuse of discretion standard the award of attorney fees and costs [under Rule 37(b)] was so clearly within the district court's discretion that there was no chance of success on appeal." *Beliue v. Int'l Broth. of Teamsters, Local No. 492*, 13 Fed. App'x 810, 2001 WL 744966, at *6 (10th Cir. 2001).

The Court finds a similar result is likely to occur in this case. Much like the standard of review for attorneys' fees under Rule 37, an award of fees under § 1988 is reviewed for an abuse of discretion. *Sinajini v. Bd. of Educ. of San Juan Sch. Dist.*, 233 F.3d 1236, 1239 (10th Cir. 2000). While a reasonable attorney would understand that success under such a discretionary standard of review is difficult, even a non-reasonable attorney would know that success is nearly impossible when—as is the case here—he *concedes* the award at issue was "well within the 'wide discretion afforded to the Court when applying § 1988.'" (ECF No. 116, at 8). Given this concession, there is no conceivable meritorious argument on appeal that the district court's orders were in error. Therefore, this appeal is likely frivolous.

Because Frey's appeals are likely to meet the standard of frivolousness, Defendants will likely be awarded attorneys' fees as "costs on appeal" under § 1988.

**A cost bond is appropriate under these circumstances:**

Even if a cost bond may be imposed for the costs requested, the decision as to whether to impose the bond is within the sound discretion of the district court. *See Westinghouse Credit Corp. v. Bader & Dufty*, 627 F.2d 221, 224 (10th Cir. 1980). In exercising its discretion, the Court may consider the following factors: (1) whether the appellant has the ability to pay the bond; (2) the risk the appellant will not pay costs assessed on appeal; (3) the merits of appellant's appeal; (4)

the costs expected to be incurred by the appellees; (5) appellant's compliance with court orders; and (6) whether appellant has demonstrated bad faith or vexatious conduct. *Hamstein Cumberland Music Grp*, 556 Fed. App'x at 702 (upholding these considerations by the trial court).

The Court has already addressed the merits of Frey's appeal at length. Though tangentially discussed above, the trial court specifically found that Frey and his counsel ignored its guidance set forth in the first dismissal order and that the Amended Complaint and Motion to Amend were brought for the purpose of vexatiously multiplying the proceedings. Accordingly, the remaining and material factors to be considered are whether Frey has the ability to pay the requested bond and the risk Frey will not pay the costs assessed on appeal.

### *Frey's ability to pay the bond:*

Frey's ability to pay the bond is undisputed: he is a wealthy hedge fund manager whose vacation home is valued at more than $15 million. Not only is Frey more than capable of paying a cost bond, but doing so appears to be of little to no concern to him. (ECF No. 112, at 6) ("None of [Frey's] concerns are monetary," and he "cares little about attorneys' fees); (*Id.* at 15) (finding Frey's Motion to Amend was brought without regard for costs). Accordingly, this factor weighs in favor of imposing a cost bond.

Frey argues a cost bond in this case would discourage other § 1983 plaintiffs from appealing their cases. The Tenth Circuit has recognized an appeal bond may, in some circumstances, erect a barrier to appeal such that it violates constitutional notions of equal protection and due process. *Tenille*, 774. F.3d at 1257 (citing *Adsani*, 139 F.3d at 78 (noting cost requirement, while facially valid, may still be unconstitutional as applied in some circumstances)). However, an appeal bond does not violate an appellant's constitutional rights if it covers only those costs the appellant would have to pay if he or she is unsuccessful on appeal. *Tennille*, 774 F.3d at

16

1257–58. The most significant aspect of Defendants' requested amount is appellate attorneys' fees, and it has already been established that § 1988 permits a defendant-appellee to recover such fees if the appeal is frivolous. Moreover, Defendants' requested amount is less than 1.5% of Frey's vacation home and is therefore unlikely to erect a barrier to Frey's appeals.

*The risk Frey will not pay costs on appeal:*

Defendants contend there is a substantial risk Frey will not pay costs on appeal, primarily citing Frey's out-of-state residency and the potential of him evading in-state collections attempts. Frey argues the risk of non-payment is extremely remote based on his assets and public profile, and he promises he is able and willing to pay a *valid* judgment against him.

The Court finds Frey poses some risk of non-payment for three reasons. First, Frey's out-of-state residency weighs in favor of imposing a cost bond given the potential difficulty of initiating and enforcing collections actions against him. *See Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270 (W.D. Wash. 2013). While Frey does have a vacation home in Wyoming, it is a *vacation* home, and the current COVID-19 landscape makes the state of travel unpredictable at this juncture. Second, Frey's own statements qualify his willingness to pay only *valid* judgments against him, as if to suggest the judgment of the trial court is invalid. And third, this entire litigation demonstrates Frey's unyielding opposition to rules, regulations, laws, and court orders. Indeed, Frey has informed the Court he will comply with court orders *once* he exhausts his right to appeal. The Court reminds Frey and his counsel that compliance with court orders is neither optional nor contingent. *See, e.g.*, *Johnson v. Mammoth Recreations*, 975 F.2d 604, 610 (9th Cir. 1992) (stating that a pretrial order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril"). Based on the above, this factor also weighs in favor of imposing a cost bond.

**The amount of the cost bond:**

Having determined that a cost bond is appropriate in this case, the next consideration is of the appropriate amount. Defendants request a total of $224,297.41, which encompasses four categories of costs: (1) $111,850 in estimated appellate attorneys' fees for both appeals; (2) $97.20 for estimated costs of printing response briefs; (3) $201.50 for estimated interest at 0.18% for 18 months; and (4) a doubling of the sum of the first three categories as a sanction for frivolity under Rule 38 of the Federal Rules of Appellate Procedure. Each category will be considered separately.

### *Attorneys' Fees*

The Defendants estimate their attorneys will spend 342 hours on the appeals. In support of this number, Defendants contend the number of hours is appropriate considering that the two appeals will address six substantive issues, and that the Municipal Defendants will file separate briefs because of the different claims against them. The Court agrees with Defendants that these considerations render the estimated hours of work to be reasonable, and will therefore impose a cost bond to cover 342 hours of work on appeal.

However, the Court declines to calculate the total amount of the cost bond by using Defendants' requested hourly rate. Defendants request rates ranging from $150-per-hour for paralegals and $525-per-hour for a senior partner. These hourly rates were also requested by Defendants in their Joint Motion for Fees at the trial level. The trial court adjusted the hourly rate to mirror the prevailing market rate for Wyoming attorneys, and calculated the proper amount of awardable fees with the following fee structure:

| Name | Requested Rate | Adjusted Rate |
|---|---|---|
| B. Godfrey (Senior Partner) | $475 | $325 |
| J. Cross (Senior Partner) | $525 | $350 |
| J. Bowers (Senior Partner) | $425 | $325 |
| B. McGill (Of-counsel) | $500 | $350 |
| J. Vail (Partner) | $375 | $275 |
| Associates | $275 | $175 |
| Paralegals | $150 | $100 |

Despite the trial court's hourly-rate adjustment, Defendants argue the inflated rates are appropriate on appeal because the prevailing market rate for Denver and the Tenth Circuit is significantly higher than in Wyoming. Defendants failed to provide support for the proposition that an appeal from the District of Wyoming automatically moves the market by which attorneys' fees are calculated or that an appeal justifies an increased hourly rate. Therefore, the Court declines to increase the hourly rate used by the district court for purposes of calculating the proper and reasonable amount of the cost bond. *See Suncor Energy (USA) Pipeline Co. v. Saddle Ridge, LLC*, No. 07-cv-169-J, 2010 WL 11583512, at *4 (D. Wyo. May 27, 2010) ("This litigation began in Wyoming, and is ultimately a Wyoming case. [Plaintiff] provides no authority suggesting that the Court should view the reasonable rate differently for appellate fees than in the district court proceedings."); *See also Wolf v. Petrock*, No. 08-cv-02749-PAB-KMT, 2011 WL 550105, at *1 (D. Colo. Feb. 8, 2011) (finding $140 per hour rate on appeal reasonable for the Denver legal market, albeit from the District of Colorado); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1215 (9th Cir. 1986) (stating the hourly rate on appeal should generally reflect the hourly rate used at trial).

Based on the district court's calculation, the following anticipated attorneys' fees are reasonable and will be imposed by way of a Rule 7 cost bond:

| Name | Adjusted Rate | Estimated Hours | Estimated Fee |
|---|---|---|---|
| B. Godfrey (Senior Partner) | $325 | 6 | $1,950 |
| J. Cross (Senior Partner) | $350 | 12 | $4,200 |
| J. Bowers (Senior Partner) | $325 | 60 | $19,500 |
| B. McGill (Of-counsel) | $350 | 24 | $8,400 |
| J. Vail (Partner) | $275 | 16 | $4,400 |
| Associates | $175 | 200 | $35,000 |
| Paralegals | $100 | 24 | $2,400 |
| | | Total | $75,850 |

*Printing costs:*

Defendants request $97.20 to cover the cost of printing response briefs.[6] It is undisputed that the costs of printing are recoverable and authorized "costs on appeal." *Tennille*, 774 F.3d at 1257 (citing FED. R. APP. P. 39(e)). Frey does not dispute the propriety of including this amount in a cost bond generally or the specific amount requested by Defendants. The Court finds the amount requested is reasonable. *See Tennille*, 774 F.3d at 1257 (reducing $25,000 request for printing, copying, and preparing appellate record to $5,000). Therefore, Defendants' request is granted.

*Interest charge:*

Defendants further request the Court include $201.50 to account for inflation during the pendency of the appeals. The Court declines to do so for two reasons. First, Defendants have failed to direct the Court to a rule or statute that authorizes the inclusion of interest in a Rule 7 appeal bond. The proper procedural mechanism for recovery of interest due is through a supersedeas bond, which encompasses "the full amount of the money judgment, together with costs, interest, and damages for delay." *Id*. at 1254 n.3. Second, even if Defendants offered cogent argument on this issue, the amount is negligible at best and, under the circumstances of this case, its exclusion

---

[6] To reach this calculation, Defendants estimate they will need six copies of their 45-page briefs, and that printing these copies will cost $0.18 per-page. The Defendants then doubled this amount to account for the two sets of Municipal Defendants.

in the bonded amount is unnecessary to ensure payment on appeal. *See Stockmar v. Colo. Sch. of Traditional Chinese Med., Inc.*, No. 13-cv-02906-CMJ-MJW, 2015 WL 4456207, at *2 (D. Colo. July 21, 2015) (rejecting a request to include interest in a bond because the "interest amount would be relatively negligible").

### *Double cost for frivolity:*

Defendants request the Court double the bond amount to account for the likelihood the Tenth Circuit will impose further sanctions for frivolity under Rule 38 of the Federal Rules of Appellate Procedure. The Court declines to do so.

Rule 38 permits the court of appeals to impose just damages, including attorneys' fees and single or double costs for frivolous appeals. FED. R. APP. P. 38. Whether Rule 38 damages can be included under a Rule 7 cost bond is an issue that has yet to be decided by the Tenth Circuit. In *Tennille*—the Tenth Circuit's leading case on what "costs on appeal" include under Rule 7—the court noted that several circuits do not consider Rule 38 costs to be appropriately included under a Rule 7 analysis. *Tennille*, 774 F.3d at 1255 (stating the First Circuit is "contrary to several other circuits" in permitting an appeal bond to cover attorney's fees potentially recoverable under Rule 38); *See also In re Am. President Lines*, 779 F.2d 714, 717 (D.C. Cir. 1995) ("[It] is for the Court of Appeals, not the district court, to decide whether Rule 38 costs and damages should be allowed in any give case."); *Murphy v. Housing Authority & Urban Redevelopment Agency of the City of Atlantic City*, 51 Fed. App'x 82, 2002 WL 31313861, at *1 (3d Cir. Oct. 16, 2002); *Azizian*, 499 F.3d at 960–61 (9th Cir. 2007) (holding "a district court may not include in a Rule 7 bond appellate attorney's fees that might be awarded by the court of appeals if that court holds that the appeal is frivolous" under Rule 38). *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 298–99 (5th Cir. 2007) (per curium) (holding an appeal bond cannot cover Rule 38 attorneys' fees).

Absent specific guidance from the Tenth Circuit, the Court declines to apply the minority approach and calculate potential Rule 38 damages in the cost bond. Therefore, Defendants' request is denied.

### CONCLUSION

If history repeats itself, as it often does, Frey's appeals are likely to contain unmeritorious arguments that contradict well-established legal principles and controlling precedent. As such, the Court finds it appropriate to order Frey to post bond covering the reasonable amount of Defendants' estimated attorneys' fees on appeal under § 1988 and the cost of printing their response briefs under Rule 39. Accordingly, the Court orders Frey to post bond in the amount of $75,947.20.

NOW, THEREFORE, IT IS ORDERED Defendants' Joint Motion for Imposition of a Cost Bond Pursuant to Federal Rule of Appellate Procedure No. 7 [Doc. 122] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED Plaintiff shall deposit a Bond with the Clerk of Court in the amount of $75,947.20 no later than 5:00 p.m. on June 18, 2020.

DATED this 11th day of June, 2020.

Kelly H. Rankin
United States Magistrate Judge